IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CARL G. SIMPSON, *et al.*, | : | Case No. 1:00cv00014-SJD |
| | : | (Judge Susan J. Dlott) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **DEFENDANT CMI'S** |
| | : | **MEMORANDUM IN SUPPORT** |
| | : | **OF ITS MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| | : | |
| INTERMET CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

Defendant Hayes Lemmerz International - Equipment & Engineering, Inc., d/b/a CMI-Equipment & Engineering, Inc. ("CMI"), submits this Memorandum in Support of its Motion for Summary Judgment.

## I. INTRODUCTION

Plaintiffs Carl G. Simpson and Bonnie Reed Simpson (collectively "Plaintiffs"), co-administrators of the estate of Carl D. Simpson ("Simpson"), brought this strict products liability, negligence, and breach of express and implied warranties action on behalf of Simpson against CMI, the manufacturer of a Sutter machine (the "coring machine"), after Simpson suffered fatal injuries when he was crushed by the moving parts of the coring machine. Plaintiffs also seek to recover from CMI on their own behalf for the alleged wrongful death of Simpson.[1]

---

[1] Plaintiffs also brought negligence, wrongful death, and intentional tort claims against Simpson's employer, Intermet Corporation, and Intermet asserted cross-claims against CMI. CMI's entitlement to summary judgment on Plaintiffs' claims effectively extinguishes any and all of Intermet's cross-claims.

CMI was deeply troubled to hear of the tragic death of Mr. Simpson. Simpson's death was all the more tragic because it was wholly preventable. Had Simpson and his fellow employees operated the coring machine according to CMI's instructions and safety warnings, the accident would never have happened. Unfortunately, Simpson's employer, Intermet Corporation ("Intermet"), did not require its employees to strictly adhere to CMI's instructions and warnings, but instead allowed them to substantially alter the machine by operating it in a manner that was neither contemplated nor sanctioned by CMI. As shown below, the uncontroverted evidence establishes that it was Intermet's substantial alteration of the coring machine, and not any defect in the machine or any failure to warn on the part of CMI, that caused Simpson's untimely death. For that reason, CMI is entitled to summary judgment on all of Plaintiffs' claims, and all of Intermet's cross-claims.

## II. FACTS

**A.     Brief Description of the Coring Machine.**

In 1992, CMI sold to Intermet the coring machine that is at issue in this case. CMI designed and manufactured the coring machine. Deposition of Al Gould, pp. 27-28 (the "Gould Dep." All references to Gould's deposition are attached as Exh. A)[2]; Deposition of Thomas Wuepper, p. 47 (the "Wuepper Dep." All references to Wuepper's deposition are attached as Exh. B). The coring machine met all required manufacturing specifications. Deposition of John Allread, pp. 17, 76 (the "Allread Dep." All references to Allread's deposition are attached as Exh. C). See also Gould Dep., pp. 27-28, 81.

---

[2] All transcripts of depositions will be filed separately.

2

A coring machine is a very large piece of manufacturing equipment; its 34 ½" by 40" capacity is large enough that a person can crawl inside the machine. Gould Dep., pp. 49-50. Intermet used the coring machine to build I-beam molds for Ford Motor Company. Deposition of Thomas Dershem, p. 119 (the "Dershem Dep." All references to Dershem's deposition are attached as Exh. D). During the mold-making process, sand can sometimes accumulate in the machine, and the sand must be cleared out of the machine in order to prevent "soft spots" – defects — from forming on the I-beam molds. Wuepper Dep., p. 31; Allread Dep., p. 110. On such occasions, an operator crawls into the machine to remove the sand. Deposition of James Brammer, p. 39 (the "Brammer Dep." All references to Brammer's deposition are attached as Exh. E).

**B.  CMI Issued Express Warnings Regarding Safe Operation Of The Coring Machine.**

    **1.  CMI Warning #1: Coring machine to be operated at control panel only.**

The coring machine has moving internal parts, and the parts come together with such force that a person who is inside the machine when it is running will be crushed by the parts. Brammer Dep, pp. 44-50. There is one location on the machine – the control panel, located at the front of the machine -- from which an operator can look inside the machine and ensure nobody is inside before the operator starts the machine. Dershem Dep., pp. 63, 111-112; Gould Dep., pp. 62, 64, 67-69, 101-102; Wuepper Dep., pp. 17-18. No other areas of the machine provide a view of the inside and, therefore, an operator who runs the machine at any other location has no means of checking whether someone is inside the machine before running it. Deposition of Robert McMillan, pp. 35-37 (the "McMillan Dep." All references to McMillan's deposition are attached as Exh. F). For that reason, CMI designed and built the machine to be

3

operated **only at** the control panel. Dershem Dep., pp. 63, 111-112; Gould Dep., pp. 62, 64, 67-69, 101-102; Wuepper Dep., pp 17-18, 52.

In addition, CMI printed an express warning in its Instruction Manual that the machine was not to be overridden at any area other than the control panel. McMillan Dep., pp. 35-37. One possible location for override is the location of the solenoid valves, which are located at the back of the machine and can be used to turn the machine on. Brammer Dep., pp. 44-50. CMI strictly forbade such use of the solenoid valves in the absence of supervision. Section 11.4 of the Instruction Manual states:

> **"Do not cycle the machine by manual overrides of solenoid valves, unless operation is properly supervised."** (all references to the Instruction Manual are attached as Exh. G)

When it sold the coring machine to Intermet in 1992, CMI gave Intermet a copy of the Instruction Manual. Gould Dep., pp. 81, 92-93.

### 2. CMI Warning #2: "Lockout/tagout" procedure to be used with coring machine.

CMI also expressly warned in its Instruction Manual that the well-known and OSHA-required "lockout/tagout" procedure should be followed by coring machine operators. Dershem Dep., pp. 55-58; Gould Dep., p. 81. The "lockout/tagout" procedure requires operators to completely shut off a machine before entering it, to ensure that no one turns the machine on while someone is inside. Dershem Dep., pp. 55-58. When the procedure is followed, anyone who approaches the machine while the operator is inside will see the operator's key in the locks, will immediately realize that someone is inside and will refrain from starting the machine until the operator exits the machine and removes his key from the locks. Dershem Dep., pp. 55-58;

Gould Dep., p. 81; CMI Instruction Manual § 11.6. CMI expressly warned of the need for the "lockout/tagout" procedure in connection with the coring machine. Section 11.6 of CMI's Instruction Manual states:

> **"Do not get inside machine to make any adjustments until the manual lockout valve is locked out."**

In issuing this warning, CMI complied with the American National Standard Safety Requirements ("ANSI") for sand preparation, molding and core-making in the sand foundry industry. Section 4.1.1.1 of the ANSI Requirements states, "It shall be the responsibility of the manufacturer to furnish operating and maintenance instructions with equipment covered by this standard. This shall include recommendations for OSHA Lockout/Tagout." ANSI Requirement 4.1.1.1. (Exh. H).

### 3. Intermet's failure to follow CMI warnings.

At some point after Intermet acquired the coring machine from CMI, Intermet's employees began ignoring CMI's warnings described above. **First,** Intermet employees operated the machine from the back instead of from the control panel. Brammer Dep., pp. 44-50. When CMI sold the coring machine to Intermet in 1992, the machine could be run only at the control panel. Gould Dep., pp. 62, 64, 67-69. CMI **and Intermet** managers testified that from 1992 through 1994, the coring machine's "programmable logic" provided for the operator to run the coring machine from the control panel. Gould Dep. pp. 62, 64, 67-69; Dershem Dep., pp. 72-73, 111-112, 202; McMillan Dep., pp. 35-37. Sometime in the late 1990s, Intermet's employees started to run the machine by overriding the "solenoid valves" on the back of the machine instead of running the machine from the control panel. Brammer Dep., pp. 44-50.

**Second,** as described below, Intermet employees - - including Simpson himself - - did not strictly adhere to the "lockout/tagout" warnings that CMI issued in its Instruction Manual. Id.

C.   **Simpson's Fatal Accident.**

On September 21, 1999, seven years after CMI sold the machine to Intermet, Simpson and Brammer were running the machine. Id., p. 43. Simpson entered the machine to clean out some sand. Id., pp. 43-50. In direct violation of the express warnings in CMI's Instruction Manual, Simpson failed to follow the "lockout/tagout" procedure before entering the machine. Id.

In further direct violation of the warnings in CMI's manual, instead of operating the machine from the control panel at the front, Brammer went to the back of the machine and used the solenoid valve to override the control panel and start the machine. Id., pp. 46-50. Because there is no way to see inside the machine from the back, Brammer was unable to see that Simpson had climbed into the machine. Id., pp. 44-50. When Brammer turned the machine on, the heavy internal parts came together and crushed Simpson between them, causing Simpson to suffer injuries that eventually led to his death. Id.

### III.  ARGUMENT

A.   **Summary Judgment Standard.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if it can be established that: (1) there are no genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to only one conclusion. Mickler v. Nimishillen, 13 F.3d 184, 186 (6th Cir. 1993). The moving party "bears the initial burden of informing the district court of the basis of its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Once the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden to "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Where the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which it has the burden of proof, summary judgment is appropriate. Celotex, 477 U.S. at 324.

**B.     Product Liability Law.**

   **1.     A Manufacturer Is Not Liable For Harm Caused By A Machine That Was Free Of Defects When It Left The Manufacturer's Hands.**

To maintain actions against CMI for wrongful death, negligence, strict products liability or breach of express or implied warranty, plaintiffs must show that the coring machine was defective as manufactured by CMI. See, e.g., Oiler v. Willke, 642 N.E.2d 667, 670 (Ohio Ct. App. 1994) (for wrongful death action, plaintiff must show that the machine was defective in order to demonstrate both the existence of a duty to the decedent and a breach of that duty was the proximate cause of the death); O.R.C. § 2307.73(A)(1) (under Ohio law[3], a manufacturer is liable for damages only if a plaintiff establishes that a product was one of the following: (a) defective in manufacturing or construction, (b) defective in design or formulation, (c) defective due to inadequate warning or instruction, or (d) defective because the product does not conform

---

[3] Ohio law applies because the accident occurred in Ohio. Charash v. Oberlin Coll., 14 F.3d 291, 296 (6th Cir. 1994). Case law from other states serves as persuasive authority. Managed Health Care Ass., Inc. v. Kethan, 209 F.3d 923, 929 (6th Cir. 2000).

7

to a representation made by the manufacturer); York v. American Med. Sys., Inc., No. 97-4306, 1998 WL 863790, at * 7 (6th Cir. Nov. 23, 1998) (attached as Exh. I) (if a product is not defective, a manufacturer cannot be liable for breach of express warranty).

Where a manufacturer complies with all federal, state, and local manufacturing regulations, its product is not defective as a matter of law. Temple v. Wean United, Inc., 364 N.E.2d 267, 273 (Ohio 1977) (where manufacturer complied with an Industrial Commission regulation, manufacturer was not negligent as a matter of law); Mark v. Mellott Mfg. Co., 666 N.E.2d 631, 640 (Ohio Ct. App. 1995) (noting in a design defect case that O.R.C. § 2307.75 requires consideration of extent to which product "conformed to *any* applicable public or private product standard that was in effect when the product left the control of its manufacturer").

As a matter of law, CMI's coring machine was not defective. The testimony of both CMI and Intermet representatives establishes that the machine met all applicable design and manufacturing specifications and that CMI provided warnings for the machine. See Allread Dep., pp. 17, 76; Gould Dep., pp. 27-28, 81. The warnings also complied with the American National Standard Safety Requirements for sand preparation, molding and core-making in the sand foundry industry. ANSI Standards (Exh. J). Accordingly, summary judgment should be granted in favor of CMI on Plaintiffs' claims of strict products liability, negligence, breach of express and implied warranties, and wrongful death.

2. **A Manufacturer Is Relieved From Liability When An Employer Substantially Alters A Machine, Causing An Employee's Injuries.**

CMI is entitled to summary judgment on all of Plaintiffs' claims for the additional reason that Simpson's fatal injuries were proximately caused by Intermet's substantial alteration of the

coring machine after it left CMI's hands. Where a material alteration is made to a product after it leaves the manufacturer's control, and where such material alteration significantly contributes to the plaintiff's injury, the manufacturer will not be liable under strict liability, express and implied warranties, negligence or wrongful death claims. See, e.g., Temple, 364 N.E.2d at 270 (Ohio 1977) (no strict liability, negligence, or breach of implied warranty for manufacturer where material alteration causes plaintiff's injuries); King v. K.R. Wilson Co., 455 N.E.2d 1282, 1283 (Ohio 1983) (no strict liability for manufacturer where material alteration causes plaintiff's injuries); Kobza v. General Motors Corp., 580 N.E.2d 47, 48-49 (Ohio Ct. App. 1989); (no strict liability for manufacturer where material alteration causes plaintiff's injuries); Oiler v. Willke, 642 N.E.2d 667, 670 (Ohio Ct. App. 1994) (no supportable wrongful death action where a manufacturer cannot foresee a danger based upon an employer's substantial alteration of a machine).

  a. **Alteration of machine's activation mechanism.**

  A manufacturer will be relieved from liability for injuries incurred on a machine where the machine operator's employer changes the location of the activation mechanism of the machine, proximately causing harm to the operator. Temple, 364 N.E.2d at 271. In Temple, the plaintiff operated a punch press and her hands and forearms were crushed when objects fell onto the operating buttons. Id. at 269. The manufacturer designed the machine with the activation buttons at shoulder level, but the employer altered the machine by installing activation buttons located at waist level. Id. By changing the location of the activation buttons, the employer "altered the existing method of guarding," and the manufacturer was relieved from liability because such alteration was a substantial change. Id. at 271; See also King, 455 N.E.2d at 1283

(no liability for manufacturer where plaintiff's employer made substantial modifications to the machine by replacing the electrical system with an activation mechanism); Espinoza v. Napolean Spring Works, Inc., No. F-87-22, 1988 WL 84361, at *2 (Ohio Ct. App. Aug. 12, 1988) (attached as Exh. K) (no liability for manufacturer where plaintiff's employer altered the activation system of machine); Abbott v. U.S.I. Clearing Corp., 477 N.E.2d 638, 642 (Ohio Ct. App. 1984).

Intermet substantially altered the activation system of the machine by allowing its employees to turn the machine on from the back, by using the solenoid valves to override the control panel. Brammer, an Intermet employee, testified that this occurred. Brammer Dep., 44-50. This alteration permitted Intermet employees to operate the machine from a location that gave them no ability to check inside the machine to ensure nobody was inside before it was turned on. The alteration was a proximate cause of Simpson's fatal injuries; had Brammer been restricted to the control panel for machine operation, he would have been able to see that Simpson was inside, and he would not have turned the machine on. Id. For this reason, summary judgment for CMI is appropriate on Plaintiffs' claims of strict products liability, negligence, breach of express and implied warranties and wrongful death.

  **b.**  **Ignoring manufacturer's instructions.**

A manufacturer will also be relieved from liability under a theory of "substantial alteration" where a plaintiff's employer ignores the manufacturer's instructions. Zeek v. Taylor-Dunn, No. CA97-07-133, 1998 WL 372418, at *3-6 (attached as Exh. L). In Zeek, the plaintiff was injured when his foot became stuck between pedals on a motorized cart. Id. The manufacturer was relieved from liability because the plaintiff's employer substantially altered the

10

cart by failing to follow the manufacturer's manual's instructions for the repair and replacement of pedals. Id.

Intermet substantially altered the machine when its employees ignored CMI's manual's warning instructions by operating the machine from the back instead of from the control panel and entering the machine without following the lockout/tagout procedures. Brammer Dep., pp. 44-50. This, too, supports summary judgment for CMI Plaintiffs' claims of strict products liability, negligence, breach of express and implied warranties and wrongful death.

## IV. CONCLUSION

For the reasons stated above, CMI respectfully requests that this Court grant summary judgment in favor of CMI on all of Plaintiffs' claims and all of Intermet's cross-claims, and grant CMI such further relief to which it may be justly entitled.

Respectfully submitted,

s/Mark T. Hayden
Mark T. Hayden (0066162)
Nancy J. Bride (0068559)
GREENEBAUM DOLL & McDONALD PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 455-7600
Facsimile: (513) 455-8500

Attorneys for Defendant Hayes Lemmerz
International - Equipment & Engineering, Inc.,
d/b/a/ CMI- Equipment and Engineering, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel who have participated in the system.

I hereby certify that I have mailed by regular U.S. mail, postage prepaid the foregoing to counsel whom are not participating in the CM/ECF system.

s/Mark T. Hayden
Attorney for Defendant Hayes Lemmerz
International - Equipment & Engineering, Inc.,
d/b/a/ CMI- Equipment and Engineering, Inc.

CIN:596259.1