# EXHIBIT K

**Westlaw.**

Not Reported in N.E.2d
(Cite as: 1988 WL 84361 (Ohio App. 6 Dist.))

C
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Sixth District, Fulton County.

Hortencia ESPINOZA, et al., Appellants,
v.
NAPOLEON SPRING WORKS, INC. et al., Appellees.

No. F-87-22.

Aug. 12, 1988.

Appeal from Fulton County Common Pleas Court No. 23403.

DECISION AND JOURNAL ENTRY

*1 This cause is before this court on appeal from a judgment of the Fulton County Common Pleas Court, wherein said court granted summary judgment in favor of appellee E.W. Bliss Co. [FN1]

Plaintiff-appellant Hortencia Espinoza originally brought suit only against her employer Napoleon Spring Works, Inc. Apparently, she injured her left hand at work while operating a metal forming system, often referred to as a punch press. In an amended complaint, Espinoza added E.W. Bliss Co. (hereinafter Bliss) to the action. The allegations against Bliss were based on a products liability theory, claiming that the press was defectively designed as not being equipped with point of operation guards. Bliss filed a motion for summary judgment, arguing that the 1951 press, manufactured by Bliss, had been substantially altered and that Napoleon Spring Works, Inc. had the primary duty to provide a guarding system.

The trial court granted Bliss's motion for summary judgment. It is from this order that appellant timely appeals asserting the following as her sole assignment of error:

"The trial court erred in granting Defendant's Motion for Summary Judgment as reasonable minds could differ as to whether Defendant's failure to provide point of operation guards at the time of manufacture was a design defect rendering Defendant liable to Plaintiffs on a theory of strict product liability."

Essentially, appellant argues that whether Bliss's failure to provide the punch press with point of operation guards is a design defect and therefore is a question for the jury. In support, appellant states that there is expert testimony and evidence upon which reasonable minds could differ. Consequently, appellant asserts the granting of a motion for summary judgment is erroneous.

Well-established case law in Ohio provides useful insight to the case *sub judice.* In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, and again in *King v. K.R. Wilson Co.* (1983), 8 Ohio St.3d 9, the Ohio Supreme Court ruled upon fact patterns strikingly similar to the present appeal. In *Temple, supra,* the court considered the granting of summary judgment in favor of the manufacturer of a punch press. The court affirmed summary judgment for the manufacturer, stating at 322:

"Under Section 402A, as well as under our case law, a plaintiff must prove that the product was defective at the time it left the seller's hands. *Lonzrick* [v. *Republic Steel Corp.* (1966), 6 Ohio St.2d 227], at page 237; Section 402A, *supra,* at Comment G. In addition, Section 402A(1)(b) imposes strict liability only where the defective product reaches 'the user or consumer without substantial change in the condition in which it is sold.' "

The court went on to conclude that the employer had substantially altered the punch press by changing the position of the dual activating buttons from shoulder to waist height. Therefore, summary judgment was properly granted where the punch press had been substantially changed after it was sold. In the case *sub judice,* evidence in the record reveals that the punch

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

press in question was sold in 1951. At that time, the machine was activated by a foot treadle requiring fifteen pounds of foot pressure in order to begin a cycle. [FN2] At some point, Napoleon Spring Works, Inc. (appellant's employer) or some other agency disconnected the mechanical foot treadle and replaced it with an electrical system which activated the press via dual palm buttons. By pushing down on these buttons simultaneously, the press was placed into operation.

Expert testimony given in deposition established that the cause of the accident was an "unactuated" cycling of the press due to the failure of the disengagement mechanism. Basically speaking, the press repeated even though Espinoza did not push the dual palm buttons. Appellant's expert witness described the cause of the repeated cycle in the following manner:

*2 "Q. Okay. Can you tell me what happened in this case?

* * *

"A. --and the injured Espinoza, Hortencia, it would appear based on the evidence that I have at this time, and these are going to be somewhat preliminary opinions, I'd say that we had a repeat of the press. *In other words, the press made a second, unactuated cycle after the first cycle.* After the first actuated cycle. And it would appear it's *caused by a tooth in the latch pinion breaking off* and probably sticking between the pinion and the latch operating rack holding the presss [*sic*] into engagement for a second stroke.

"Q. Can you tell me what the proximate cause of the repeat was?

"A. The fact that the clutch was not disengaged at the end of the first cycle as a result of the fact that the latch pinion would not move up and down the latch rack as a result of a tooth stuck in there." (Emphasis added.)

Furthermore, it is uncontroverted that the latch bracket and pinion gear was neither designed nor manufactured by Bliss. Again, according to appellant's own expert witness, the repeat was not caused by a part manufactured by Bliss. [FN3]

Given the above rule established by the Supreme Court of Ohio in *Temple, supra,* a plaintiff claiming under a strict liability theory must, as a threshold requirement, establish that the defective product was not substantially altered when it left the manufacturer's hand. The court in *Temple* ruled that changing the level of dual palm buttons from shoulder height to waist height was, as a matter of law, a substantial change entitling the manufacturer to summary judgment. The trial court in the case *sub judice* found that the appellant failed to show the product was not substantially altered in that the alteration significantly contributed to appellant's injuries. This court agrees.

Summary judgment is properly granted where a product has been substantially altered and " ' * * * reasonable minds could only conclude that the cause of the accident had to be connected in some way with the [substantially altered portion of the product].' " *King, supra,* at 10.

In a well-reasoned decision, this court in *Abbott v. U.S.I. Clearing Corp.* (1984), 17 Ohio App.3d 75, stated that " * * * [q]uite clearly, a malfunctioning activation mechanism caused appellant's injury, a mechanism that had undergone a 'substantial change, * * * ' so as to preclude a claim of strict liability in tort against the manufacturer. See *Temple v. Wean United, supra,* (paragraph 1[b] of the syllabus). * * * " *Id.* at 79.

In the case *sub judice,* it is uncontroverted that the activation and disengagement systems of the press were altered after the press was sold. Appellant's assertion is that the press was defective as originally manufactured for not being equipped with point of operation guards. However, as discussed above, appellant failed to meet the threshold requirement of demonstrating that the press was not substantially altered after it was sold. Furthermore, expert testimony showed that the substantial alteration significantly contributed to the injury. In accordance with established case law as enunciated by the Ohio Supreme Court, appellant's sole assignment of error is found not well-taken.

On consideration whereof, this court finds substantial justice has been done the party complaining. The judgment of the Fulton County Court of Common Pleas is hereby affirmed. It is ordered that appellant pay the court costs of this appeal.

RESNICK, P.J., and HANDWORK and GLASSER, JJ., concur.

FN1. The present appeal concerns only the dismissal of E.W. Bliss Co. All other claims and cross-claims remain pending final determination in the trial court. In a judgment entry *nunc pro tunc* filed on January 5,

1988, the trial court expressly found no just reason for delay. Therefore, this is a final appealable order properly before this court. See Civ.R. 54(B).

> FN2. From the record and briefs, this court has gleaned that a cycle begins by initially activating the press. The ram would come down, stamp out a piece of metal stock and then return to its original position and disengage.

> FN3. Appellant's expert testified as follows:
> "Q. Is it your understanding that the latch that was on the press in this case was not a latch that was of original Bliss manufacture?
> "A. It would appear through the photograph that I saw of the latch, certainly doesn't appear to be a Bliss latch, that's true.
>
> \* \* \*
>
> "Q. After taking a good look at that [close-up photograph of the latch on the press] and taking a look at Exhibit A [Bliss Rolling Key Clutch, Single Tripping Latch Bracket], is it pretty clear that this isn't a Bliss latch bracket?
> "A. It would appear to me that it is not.
>
> \* \* \*
>
> "Q. So if the pinion wasn't of Bliss manufacture, then the repeat wasn't initially caused by any product manufactured by Bliss?
> "A. Sure. I guess if it wasn't their pinion, you can't say it was--the repeat was caused by a part that they manufactured."

1988 WL 84361 (Ohio App. 6 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works