Westlaw.

202 F.3d 268 (Table)  
**Unpublished Disposition**

Page 1

**(Cite as: 202 F.3d 268, 2000 WL 32011 (6th Cir.(Ohio)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Beth E. JEFFERS, Individually, and as the Executrix of the Estate of Everett A. Jeffers, Plaintiffs-Appellants,  
v.  
FLOYD S. PIKE ELECTRICAL CONTRACTOR, INC., Defendant-Appellee,  
OHIO POWER COMPANY, and/or American Electric Power Company, Defendants.

No. 98-4466.

Jan. 4, 2000.

On Appeal from the United States District Court for the Southern District of Ohio.

Before BOGGS and DAUGHTREY, Circuit Judges, and MCKINLEY, [FN*] District Judge.

FN* The Honorable Joseph H. McKinley, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

PER CURIAM.

**\*1** The Plaintiffs filed this personal injury action to recover damages following a work accident which resulted in the death of Everett A. Jeffers. The District Court granted summary judgment in favor of all of the Defendants finding that no genuine issues of material fact existed to prove the employer Defendant liable for employer intentional tort under Ohio law. For the following reasons, we reverse the summary judgment with respect to the Defendants, Ohio Power Company and American Electric Power Company. However, we find summary judgment appropriate with respect to the claims asserted against Pike Electrical Company.

FACTS

Everett Jeffers (Decedent) worked as an electrical lineman for Floyd S. Pike Electrical Contractor, Inc. (Pike Electrical) replacing power line poles. Ohio Power Company (Ohio Power) [FN1] contracted with Pike Electrical to perform such replacement work. On April 17, 1995, the Decedent and three other Pike employees were assigned to replace utility poles and lines in Fairfield County, Ohio. The crew consisted of the Decedent; Dale Medford (Medford), the foreman; Donny Jarrell (Jarrell); and Ed Ellis (Ellis).

FN1. American Electrical Power Company is a public utility holding company which owns the outstanding shares of common stock of Ohio Power Company. Ohio Power Company is an Ohio public utility company. The Plaintiffs' complaint asserts the same allegations against both companies. Because the District Court and the parties treat these two separate companies together, we will likewise refer to these companies as Ohio Power throughout this opinion.

Upon arriving at the work site, Medford and Jarrell walked the line to mark where the crew would erect

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**(Cite as: 202 F.3d 268, 2000 WL 32011 (6th Cir.(Ohio)))**

the new utility poles. The power lines in this area consisted of a neutral line which hung below an energized primary line. The energized line carried 7200 volts of electricity. While walking the line, these men discovered that the power line hung uncharacteristically low in one area because of a broken utility pole. In this low area, the primary wire was between 6-8 feet off the ground and the neutral wire was approximately 5 feet off the ground. Nevertheless, Medford marked the location for the new utility pole approximately 3 feet out from underneath these wires.

After completing the marking, the men returned to the truck. There the crew discussed the potential dangers of the low power lines. In particular, Medford instructed the crew members to remain on the driver's side of the truck to avoid being thrown into the primary wire by the pole. He also instructed them not to do anything that would cause them to come in contact with the primary wire. While the crew could have de-energize the line, it was not done. Additionally, the crew could have placed a protective sheath over the energized line, but they elected not to do so. Medford felt this was dangerous because it required them to stand on a ladder, the ground was wet, and there was a danger of touching the neutral line. The crew decided that they would maintain an arm's length from the lines, and, therefore, concluded that protective gloves and clothing need not be worn. Following this meeting, the crew members set out to dig the holes in the marked areas.

After digging the holes, the crew went to work setting the poles. When the crew set the pole near the low lines, Medford backed the truck carrying the pole up near the hole. Jarrell provided directions to Medford and held a stabilization rope connected to the top of the pole. Ellis held the other end of the rope and used a cant hook to guide the pole into the hole. Jeffers was at the end of the pole to observe its placement into the hole. The crew encountered some difficulty while attempting to set the pole when it lodged into the ground without falling into the hole. From the driver's side of the truck, the Decedent used an eight-foot metal tamp to strike the base of the pole in an attempt to jar it loose and into the hole. The crew had used the tamp in this manner on previous occasions. When his initial strikes from the driver's side proved to no avail, the Decedent quickly jumped to the other side and began tapping on the base from that direction. On about the second or third strike, the tamp came in contact with the primary wire and the Decedent electrocuted himself. Subsequent attempts to revive the Decedent failed.

**2 Following his death, the Plaintiff, Beth Jeffers, filed suit in her personal capacity and as the representative of the Decedent's estate in the Ohio Court of Common Pleas. Pike Electrical removed this action to federal court pursuant to 28 U.S.C. § 1441, and 28 U.S .C. § 1332. The Plaintiffs' complaint alleged claims against Pike Electrical for intentional tort and Ohio Power for negligence. J.A. at 18. Subsequently, the District Court dismissed this action "in favor of defendants, against plaintiff," following Pike Electrical's motion for summary judgment. J.A. at 29.

STANDARD OF REVIEW

We review the decision granting the motion for summary judgment de novo. *Brooks v. American Broadcast Co.,* 932 F.2d 495, 500 (6 th Cir.1991). In ruling on a motion for summary judgment, we must determine whether there is a genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472 (6th Cir.1989). A genuine dispute of a material fact exists when the evidence is of such a nature that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When examining the evidence on a motion for summary judgment, we must consider the evidence in a light most favorable to the nonmoving party. *Matsushita,* 475 U.S. at 587; *Hartsel v. Keys,* 87 F.3d 795, 799 (6 th Cir.1996), *cert. denied* 519 U .S. 1055 (1997). Because this case arises under our diversity jurisdiction, we must apply the relevant substantive law of the state of Ohio. *Jandro v. Ohio Edison Co.,* 167 F.3d 309, 313 (6 th Cir.1999).

DISCUSSION

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The District Court found that the evidence, even when viewed in light most favorable to the Plaintiffs, failed to establish that the Defendants were certain or substantially certain that the Decedent would suffer injury or death while working around energized power lines. J.A. at 29. We agree with this conclusion to the extent it applies to the claims against Pike Electrical, but not to the claims against Ohio Power.

Like most states, Ohio's workers' compensation laws prevent employees who are injured on the job from suing their employer to recover for the injuries incurred. Ohio Rev.Code Ann. § 4123.74. However, Ohio's employer intentional tort exception permits an employee to recover damages in excess of the exclusive remedies provided by the workers compensation statute. Ohio Rev.Code Ann. § 2745.01; *Blankenship v. Cincinnati Milacron Chemicals, Inc*., 433 N.E.2d 572 (Ohio), *cert. denied,* 459 U.S. 857 (1982). To establish a claim under the intentional tort exception, the plaintiff must prove the following:

1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

**3 2) knowledge by the employer that if the employee is subjected by his employment to such a dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and

3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Fyffe v. Jeno,* 570 N.E.2d 1108, 1112 (Ohio 1991). [FN2] Evidence showing that the employer was negligent or even reckless is insufficient to satisfy these factors. *Jandro v. Ohio Edison Co.,* 167 F.3d 309, 313 (6 th Cir.1999). "[I]t must be shown that the employer '(1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded." ' *Id.* (quoting *Mitchell v. Lawson Milk Co.,* 532 N.E.2d 753, 756 (Ohio 1988)). It is not enough to show that the harm was likely to occur or had a high risk of occurring. *Id.*

FN2. The Ohio legislature superseded the Ohio Supreme Court's ruling in *Fyffe* altering the elements for the employer intentional tort exception. Ohio Rev.Code Ann. § 2745.01. "Employment intentional tort means an act committed by an employer in which the employer deliberately and intentionally injures, causes an occupational disease of, or causes the death of an employee" *Id* However, this statute does not apply to the case before the Court because the conduct at issue occurred on April 17, 1995 and the statute did not become effective until November 1, 1995. The parties agree that *Fyffe,* and it progeny, provide the controlling law for this case.

The risk of injury or death is definitely greater in this line of work when compared to many other occupations, simply because of the nature of the business. However, this fact alone does not prove that Pike Electrical knew or was substantially certain injury or death would occur when it dispatched its crew. *Bridges v. National Engineering & Contracting Co.,* 551 N.E.2d 163, 167 (Ohio 1990). The law imposes a harsh test, *Goodwin v. Karlshamns U.S.A., Inc.,* 619 N.E.2d 508, 513 (Ohio Ct.App.1993), and limits recovery for employer intentional tort to only egregious cases. *Richie v. Rogers Cartage Co.,* 626 N.E.2d 1012, 1016 (Ohio Ct.App.1993).

The District Court properly concluded that a rational jury would not find that Pike Electrical knew or was substantially certain that the Decedent would be injured by working around the energized lines. While Medford, and the rest of the crew, knew the risks and dangers of working around live power lines, as noted, such knowledge does not equate with knowledge that harm is substantially certain to result from the work. Medford could have requested Ohio Power to de- energize the line. He could have ordered the men to wear their protective gloves and other clothing. He could have used the protective sheathing, even though he considered installing it dangerous under the circumstances. The failure to do any of these, or all of them together, may constitute negligence or even reckless

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

behavior, but it does not prove Pike Electrical knew such injury was certain or substantially certain to occur.

Likewise, no evidence supports the conclusion that Pike Electrical engaged in any egregious conduct. The Ohio courts have found that the requirements of the employer intentional tort exception were not met under more flagrant conduct on the part of the employer than that present in the current case. *See, e.g., Pariseau v. Wedge Products, Inc.,* 522 N.E.2d 511 (Ohio 1988) (holding substantial certainty test not met where after another employee refused to operate press machine because it was repeating and foreman removed stick used to remove finished parts, employee assigned to machine had finger amputated).

**4 Because no evidence exists sufficient to prove the employer intentional tort exception, the District Court properly entered summary judgment with respect to the claims against Pike Electrical. However, the District Court erred in granting summary judgment in favor of Ohio Power. The Plaintiffs sued Ohio Power for its negligence in maintaining its electrical utility lines, in failing to de-energize the power line in the area under repair, and in monitoring the employees of Pike Electrical. Ohio Power neither filed a separate motion for summary judgment nor joined in Pike Electrical's motion. [FN3] The District Court's opinion focused entirely on the issue of employer intentional tort and never discussed the Plaintiff's allegations of negligence against Ohio Power.

> FN3. In a letter to the Court dated February 16, 1999, counsel for Ohio Power acknowledged that it did not file a motion for summary judgment and that the arguments advanced by Pike Electrical were not advanced by it. Ohio Power expressed their intention not to brief or argue this appeal, unless requested by the Court. It also moved to amend the caption to reflect that it was a defendant and not a defendant/appellee. The Court granted this motion and did not request Ohio Power to file a brief or appear at oral argument.

While a district court may sua sponte enter summary judgment against a party, under most circumstances the court must have placed the losing party on notice that he or she must come forward with all the evidence in support of his or her claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986); *Salehpour v. University of Tennessee,* 159 F.3d 199, 204 (6 th Cir.1998), *cert. denied,* 119 S.Ct. 1763 (1999). Here, the District Court never requested the Plaintiffs to come forward with their evidence and legal positions with respect to the negligence claims against Ohio Power. Therefore, we find that the District Court erred in entering summary judgment against the Plaintiffs on the claims against Ohio Power.

CONCLUSION

For the foregoing reasons, the decision of the District Court is AFFIRMED in part, and REVERSED in part. This case is REMANDED for further proceedings consistent with this opinion.

202 F.3d 268 (Table), 2000 WL 32011 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works