Not Reported in N.E.2d  
(Cite as: 1998 WL 964505 (Ohio App. 11 Dist.))

Page 1

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Trumbull County.

Patrick M. NEAL, Plaintiff-Appellant,  
v.  
McGILL SEPTIC TANK CO., et al., Defendant-Appellee.

No. 98-T-0022.

Dec. 4, 1998.

Civil Appeal from the Court of Common Pleas, Case No. 94 CV 976.

Dennis R. Lansdowne, Justin F. Madden, Cleveland, OH, for Plaintiff- Appellant.

Thomas E. Dover, Arthur E. Gibbs, III, Cleveland, OH, for Defendant- Appellee.

FORD, P.J., and CHRISTLEY and NADER, JJ.

NADER.

OPINION

*1 Appellant, Patrick M. Neal, was hired by appellee, McGill Septic Tank Co., to operate a cement mixer in appellee's plant. Appellant was trained to operate the mixer and was shown how to clean it at the end of each shift. Part of the cleaning process required him to clear out the dried cement that had accumulated in the four-inch drain pipe in the bottom of the mixing drum. After clearing the drain hole, appellant was supposed to chip away the bits of dried cement on the insides of the drum and on the blades, and to wash the bits down the drain while the mixing blades were spinning. Appellant admitted in his deposition that he was instructed to use a hammer and chisel to remove the dried cement that accumulated in the drain pipe.

On his third day operating the mixer, appellant cleaned the drain as per his instructions, but noticed that water he sprayed into the drum was not coming out of the pipe. He looked up the pipe and saw that a chunk of concrete was blocking the opening near the drum. Instead of reaching for the nearby hammer and chisel to remove the blockage, as he was instructed to do, appellant walked over to the power switches, depressed the "off" button, and inserted his arm into the pipe to grab the chunk of concrete with his hand. Appellant was severely injured when one of the mixing blades in the drum, which for some reason had not stopped turning, caught his arm.

The trial court granted appellee's motion for summary judgment on appellant's intentional tort claim. Appellant argues in his single assignment of error that summary judgment was inappropriate because there exists a genuine issue of material fact as to whether appellee knew injury to the operator of a cement mixer on its premises was substantially certain to occur.

In support, appellant says the "key issue" in this case is that he was not adequately trained on the proper procedure to clean the cement mixer and its drain because no McGill supervisor warned him to keep his hand out of the mixer's drain hole. Since the supervisor at McGill testified, by deposition, that he did warn appellant not to insert his hands into the drain hole, appellant concludes there is a dispute as to the facts which necessitates trial. We disagree for the following reasons.

"Article II, Section 35 of the Ohio Constitution created the Ohio Workers' Compensation system in order to provide compensation for injured workers and/or their dependants. R.C. 4123.74 establishes the Ohio workers' compensation system as the exclusive remedy for 'any injury, or

occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment,' or for any resulting death, provided that the employer is in compliance with the workers' compensation law. However, intentional torts committed by an employer '(do) not arise out of employment * * * (and do) not bestow upon employers immunity from civil liability(.)' *Blankenship v. Cincinnati Milacron Chemicals* (1982), 69 Ohio St.2d 608, 613, 433 N.E.2d 572, * * *. See, generally, *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100 * * *; *Fyffe v. Jeno's, Inc.* [ (1991) ], 59 Ohio St.3d 115 * * *. Thus, an employee who can prove the elements of a common law intentional tort by an employer will be permitted to sue for damages outside the workers' compensation system." *Trojan v. Ro-Mai Industries, Inc.* (Aug. 19, 1998), Summit App. No. 18778, unreported, 1998 Ohio App. LEXIS 3761, at *6-7.

*2 "In this context, 'intent' can be established by showing either that the employer 'specifically desired to injure the employee,' or that the employer 'knew that injury to an employee was certain or substantially certain to result' and required the employee to undertake the dangerous task despite such knowledge. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753, syllabus." *Bloom v. Woodline Products, Inc.* (June 26, 1998), Lake App. No. 97-L-051, unreported, at 5.

In an effort to define the situation where it can be said the employer has committed a "substantial certainty" tort, the Supreme Court provided the following remarks in the syllabus of *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108:

"1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, * * *, paragraph five of the syllabus, modified as set forth above and explained.)

"2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk--something short of substantial certainty--is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, * * * paragraph six of the syllabus, modified as set forth above and explained.)"

A tremendous amount of litigation has occurred since the Ohio Supreme Court first recognized the work-place intentional tort in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 433 N.E.2d 572. The situations in which the "substantial certainty" claim has been made are myriad. But some of the cases can be read as establishing the general rule that an employer is not liable for the injuries the employee suffered on an intentional tort theory where the employee voluntarily deviates from his employer's instructions or established operating procedure.

*3 In *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 539 N.E.2d 1114, the employee was operating an industrial mixer when he heard a "clapping" noise in an adjacent drum that was under the mixer. The employee assumed it was the propeller of the mixer hitting the side of the mixing drum. Usually, someone else fixed the problem by turning off the power to the mixer, but on this particular occasion, the employee decided to slap the rotating propeller shaft with his gloved right hand. His glove caught on the propeller, and the employee was severely injured. The Supreme Court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

held the employer's actions in the matter did not rise to the level of egregious misconduct so as to constitute an intentional tort. The critical fact was that the employer did not know its employees were trying to fix the drum that way, and that it "could hardly be expected to have anticipated the actions of [the employee] which led to his injury." Id. at 172. In Sanek, the employee failed to follow proper procedures to unjam the propeller, and the employer was not liable for his injuries as a matter of law.

In Breininger v. Harborside of Ohio Limited Partnership (Feb. 20, 1998), Williams App. No. WM-97-011, unreported, 1998 Ohio App. LEXIS 610, the plaintiff was a nurse's assistant working at the defendant's hospital. She admitted that she had been given training as to the proper manner in which to assist the nurses in lifting heavy patients. She was also trained to use her own best judgment, and if she felt a patient was too heavy for her to lift, she was supposed to tell the nurses so they could procure more help. On the day in question, the plaintiff assisted in lifting an extremely obese woman. Once the lifting crew had her to a standing position, the plaintiff admitted she knew the weight was too much for her. Instead of informing the nurses, the plaintiff kept quiet and tried to help move the patient again, whereupon she injured her back. The appellate court affirmed summary judgment for the hospital on these facts. In Breininger, the employee failed to follow proper procedures in lifting heavy patients, and the employer was not liable for her injuries as a matter of law.

In Ortiz v. Elyria Foundry Co. (Oct. 21, 1992), Lorain App. No. 92CA005302, unreported, 1992 Ohio App. LEXIS 5431, the plaintiff was assigned to clean an underground tunnel through which a conveyor belt ran. During the factory's operation, sand was shaken off the conveyor belt and onto a pan below. Some of the sand, however, fell onto the floor, and had to be shoveled back onto the conveyor belt. The employer instructed its employees to turn off the conveyor belt and wait for the motor to stop before entering the tunnel. On the day in question, the plaintiff turned off the motor but, because he was in a hurry, did not wait for the belt motor to stop before he rushed into the tunnel. He tripped and was injured when his hand slid into the moving parts of the belt motor. The appellate court affirmed summary judgment for the employer. In Ortiz, the employee failed to follow proper procedures for cleaning the tunnel, and the employer was not liable for his injuries as a matter of law.

*4 In Bader v. Therm-O-Disc, Inc. (Sept. 5, 1990), Richland App. No. CA- 2732, unreported, 1990 Ohio App. LEXIS 4231, a case very similar to the one at bar, the employee was assigned to operate what was essentially a crimping machine that connected wires to a thermostat. The employer removed a safety guard from the ends of a small trough where the press descended and crimped the wires. This guard interfered with the use to which the employer put this press. The employer provided a wire brush to the employee and instructed her to use the brush to clear out the bits of wire debris from inside the trough. On the day in question, the employee disregarded her instructions and used her left index finger to clear away the debris. She accidentally started the machine and her finger was amputated. The appellate court affirmed summary judgment for the employer because no other employee had been injured and because the employee failed to follow her employer's instructions to use the brush when cleaning the trough. In Bader, the employee failed to follow proper procedures to clean the punch-press, and the employer was not liable for her injuries as a matter of law.

Even viewing the evidence in this case in a light most favorable to appellant, reasonable minds could only conclude that he was instructed as to the proper way to clear the drain pipe. He admits he was instructed to use the hammer and chisel to clear the drain. Like the plaintiff in Bader, appellant spurned the cleaning tool provided by his employer and used a part of his body to clear the machine on which he was working. Under these circumstances, we hold that appellee is not liable for his injuries as a matter of law. Sanek; Breininger; Ortiz; Bader.

Translating our holding into the terms of the three-part Fyffe test, it can be said that no reasonable jury would find that McGill knew that an injury to the operator of the cement mixer was substantially certain to occur. If the operator followed his instructions and cleaned the mixer as he was told, there was only an insignificant probability that he would be injured. Appellee did not know, and was not required to anticipate, [FN1] that appellant would decide on his own to violate the established procedures.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

> FN1. *Sanek,* 43 Ohio St.3d at 172, 539 N.E.2d 1114; *Bader, supra,,* at *10.

Appellant's argument that he was not adequately trained in cleaning the cement mixer does not merit him a trial on his intentional tort claim. The courts have not been very receptive to the claims of employees that they were inadequately trained in those cases where the employee was explicitly told how to conduct the operation, and yet voluntarily deviated from established procedure, or where the facts of the case indicate that the employer was not substantially certain that an injury would occur.

*5 In *Kirk v. Colburn* (Dec. 31, 1997), Williams App. No. WM-97-002, unreported, 1997 Ohio App. LEXIS 5814, the plaintiff, a temporary employee, was injured when her hair was caught by the spinning parts of a drill press she was operating. She alleged that she was not adequately trained to keep her head clear of the rotating parts. That and her lack of experience made it substantially certain that she would be injured in that manner, she said. The appellate court disagreed, stating:
> "With respect to appellant's training, even assuming appellees [,the employers,] failed to instruct appellant to keep her head clear of the rotating spindles, it does not follow that knowing they failed to tell her this means that appellees were substantially certain that she would be injured in that manner." *Id.* at *10-11.

In *Thomas v. Barberton Steel & Iron Co.* (Apr. 1, 1998), Summit App. No. 18546, unreported, 1998 Ohio App. LEXIS 1360, the employee was assigned to operate a machine that made cores. Throughout the shift, a sand mixture built up along the inside trough of the core maker, and the employee was supposed to clean it after every shift. He was trained to turn both power switches off before entering the trough and chiseling away the dried sand mixture. Contrary to his training, the employee did not turn both power switches off. He kept the main power switched energized and used only the local on/off switch to de- activate the core maker while cleaning it. On the day in question, the employee had turned off the core maker at the local power switch and climbed into the trough to chip away the sand mixture. He dropped his chisel. Upon reaching into the core maker to retrieve his chisel, the machine somehow activated, and he was severely injured. The appellate court affirmed summary judgment for the employer on these facts. It rejected the employee's claim that he was inadequately trained to de-activate the core maker, noting only that he was instructed to use both power switches and he deviated from those instructions by using just one.

This case is like *Thomas,* in which the employee was told how to clean the machine on which he was working, but that he voluntarily deviated from the established cleaning procedure. In our view, the facts that appellant was instructed to use the hammer and chisel to clear the drain pipe but decided to disregard those instructions and use his hand instead are more important to the outcome than the dispute between the parties whether or not the supervisor told appellant to keep his hand out of the drain. The key issue here is that appellant failed to follow instructions. Whether he was specifically told, as part of his training not to deviate from the instructions, is immaterial to the summary judgment exercise.

*6 That appellee was cited by OSHA, after this accident, for not having a guard or screen over the drain pipe to prevent the operator from inserting a limb, is relevant but unpersuasive. "The fact that the company was in violation of relevant safety standards is of no consequence; the company's knowledge of those violations is the determinative factor." *Thomas, supra,* at *10. There is no evidence in the record that appellee knew about the violation before the accident. In addition, the owner of appellee testified that any screen on the drain would have to be removed during the cleaning process, so there was no showing that a screen would have prevented appellant's accident.

The assignment of error has no merit, and summary judgment for appellee is affirmed.

FORD, P.J., and CHRISTLEY, J., concur.

1998 WL 964505 (Ohio App. 11 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works