Westlaw.

Not Reported in N.E.2d                                                                                          Page 1
(Cite as: 1999 WL 279514 (Ohio App. 2 Dist.))

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Second District, Clark County.

Karen L. CRISSINGER, Plaintiff-Appellant,
v.
TURN-ALL MACHINE & GEAR CO., Defendant-Appellee.

No. 98-CA-108.

May 7, 1999.

Frank A. Ray, Atty. Reg. # 0007762 and Barbara A. Roubanes, Atty. Reg. # 0068210, Columbus, OH, for Plaintiff-Appellant.

Richard F. Heil, Jr., Atty. Reg. # 0033661, Springfield, OH, for Defendant-Appellee.

FAIN.

OPINION

*1 Plaintiff-appellant Karen Crissinger appeals from a summary judgment rendered against her upon her intentional tort complaint against her employer, defendant-appellee Turn-All Machine & Gear Company, for an injury she sustained to her right hand. Crissinger contends that the trial court erred in finding that there were no genuine issues of material fact and that Turn-All is entitled to judgment as a matter of law.

We conclude, from an examination of the record, that there are no genuine issues of material fact upon which reasonable minds could differ. We conclude that when the evidence is viewed in a light most favorable to Crissinger, no reasonable finder of fact could find that Turn-All required Crissinger to expose herself to the substantial certainty of harm. Accordingly, the judgment of the trial court is *Affirmed*.

I

Turn-All, located in Springfield, Ohio, is a machine shop engaged in the business of metal working. Karen Crissinger was employed as a drill-press operator at Turn-All from October, 1994 until May, 1995. On May 15, 1995, Crissinger was directed by her supervisor to finish parts, referred to as "hubs," on a machine called a "reamer." The reamer is a drill press machine consisting of a drill suspended from above with an attached reamer bit. In order to ream hubs, Crissinger was required to hold the hubs, which are small "donut-shaped" metal parts, and run them once up and down on the rotating reamer bit in order to remove any "burrs" or imperfections on the inside of the hubs.

While reaming the hubs, Crissinger was wearing a pair of rubber gloves that she wore for her regular job, as well as a pair of canvas gloves. After she had been reaming the hubs for "a couple of hours," Crissinger's right glove and hand became entangled in the machine. Crissinger was unable to reach the power switch to the machine because it was on the right side of the machine. She testified that she eventually was able to pull her hand out of the glove. Crissinger suffered injuries described as severe contusions and abrasions to her hand with a possible fracture of her index finger. Crissinger's index finger did not respond to treatment and was eventually amputated. She subsequently filed an action for Workers' Compensation. She also filed this intentional tort action in the Clark County Court of Common Pleas.

Turn-All filed a motion for summary judgment. The evidence in the record consists of the deposition testimony of Crissinger, her supervisor, two co-employees, and the owner of Turn-All. Crissinger also introduced the affidavit of her expert in opposition to the motion for summary judgment.

In her deposition, Crissinger testified that on the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

day of the accident, she was told to ream parts instead of doing her regular job. [FN1] She testified that she had previously reamed parts while working at Turn-All, but that she had only been trained and worked on a reamer other than the one she was injured on. She testified that she had been trained by Ed Silver on the use of the reamer the first time she performed reaming.

> FN1. The record reveals that whenever an employee was idle on their regular job due to any sort of slow down the employee would be assigned to ream parts until there was enough work for the employee to return to regular duties.

*2 Crissinger testified that on the day of the accident she had asked her supervisor for canvas gloves, and that he provided her with a pair. She stated that she told her supervisor that she could not ream without gloves. She testified that the gloves provided a better grip on the hubs and that they prevented her from getting cuts and scratches from the hubs. However, she also testified that another employee of Turn-All, Jim Law, had "suggested" that she not wear gloves while reaming. Crissinger testified that Law had told her that wearing gloves was dangerous because they might get caught in the machinery. She also admitted that Law had indicated that the owner of Turn-All did not want employees to wear gloves while reaming.

Crissinger testified that on the day of the accident, she had told a co-employee that she did not want to ream parts because she was "leery" of using the reamer since a co-employee had been hurt a few days prior when his hand was caught in the reamer. She also testified that she would have been required to ream parts even if she objected to doing so; she stated that the owner of Turn-All had previously told her that she would need to look for other employment if she could not do the job. She testified that she felt that she had to perform the reaming in order to keep her job. Finally, she testified that her pay was not dependent upon the volume of work performed.

Crissinger's supervisor, John Rehm, also testified by deposition. He testified that he is a plant manager at Turn-All, in charge of fifteen to twenty people. He testified that he assigned Crissinger to ream parts on the day of the accident. Rehm testified that had Crissinger refused to ream, he would have found her another job. He also testified that it was "suggested" that employees not wear gloves while reaming, and that the owner of Turn-All did not want employees to do so. However, Rehm also testified that he was aware that some employees wore gloves to ream, and that he did not stop them from doing so. He further testified that he would provide gloves to employees if they asked for them. Rehm also testified that the company policy required everyone to ream parts using their left hands to hold the hubs.

A co-employee of Crissinger, James Law, also testified by deposition. He testified that he had trained Crissinger, and others, to ream. He testified that he showed her that she should use her left hand to hold the hub because of the direction of the rotation of the machine. Law testified that Crissinger initially stated that she could not use her left hand to hold the hubs, but that she complied with directions after he informed her that it was dangerous to use the right hand. He testified that she demonstrated that she was able to use her left hand for reaming while he trained her. However, Law testified that "a couple times" he saw her using her right hand and he would warn her not to. Law also testified that the employees were not to use gloves while reaming, but that he did so, and hid the fact from management.

*3 The owner of Turn-All, Carl Powers, testified that he had seen Law use gloves to ream in the past, and told him not to do so. He also testified that there is no posting warning employees not to wear gloves and not to use their right hands while reaming. He further testified that he had never disciplined anyone for wearing gloves. Powers also submitted an affidavit stating that from 1990 to May 15, 1995, over three-quarter million hubs have been reamed by Turn-All employees without any reported accidents among employees who did not wear gloves. However, there were two reported accidents, both involving the same employee, that occurred because the operator was wearing gloves.

Another co-employee, Danny Dishon, testified that he had witnessed people using gloves to ream, but that he never had. He also testified that he was told not to use gloves.

The affidavit of Gerald Rennell was submitted by

Crissinger. In her brief in opposition to the motion for summary judgment, Crissinger touted Rennell as "an expert on workplace safety and machine guarding." Rennell's resume indicates that he had previously worked as a safety engineer and safety consultant. Rennell provided the following opinion:

> It is my opinion that an injury to the [sic] Karen Crissinger was substantially certain to occur while performing the reaming operation in the above-described manner. This use violates the two cardinal rules of safe drill press work; that is, the parts should NEVER be handheld. It should be clamped to the stationary table with a fixture or jig, and gloves should NEVER be worn while operating a drill press, even if the part is clamped and the operator's hands are away from the danger area.
>
> The danger of using gloves on a drill press was well known to the management of Turn-All Machine and Gear Company but management also knew that employees were wearing gloves because of the burrs on the parts and because it was very hard to hold parts that would stick on the reamer bit. In addition, management was aware of a previous injury to Charles Baker who was injured while wearing a glove and reaming. Mr. John Rehm, the plant manager, knew that employees were wearing gloves while reaming and it would appear that Mr. Powers was aware of the danger of wearing gloves.
>
> * * *
>
> In the final analysis, it is apparent that the employer, Turn-All Machine and Gear Company knew that wearing gloves while manually holding parts being reamed on a drill press, was substantially certain to cause injury and that employees were doing exactly that, and with this knowledge, the employer assigned Karen Crissinger to operate the drill press. A previous injury from the operators' gloves catching the reamer occurred just three days earlier and this injury required medical treatment, and the employer was aware of that injury.

Based upon the foregoing evidence, the trial court rendered summary judgment in favor of Turn-All. From the summary judgment rendered against her, Crissinger appeals.

II

*4 In her sole Assignment of Error, Crissinger asserts the following:

> WITH SUFFICIENT EVIDENCE OF RECORD TO PLACE AT ISSUE WHETHER APPELLANT SUFFERED PERMANENT INJURIES IN THE WORKPLACE AS A PROXIMATE RESULT OF APPELLEE'S COMMON LAW INTENTIONAL TORT, THE TRIAL COURT ERRED BY FINDING OTHERWISE AND SUSTAINING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

Crissinger contends that the trial court erred by rendering summary judgment in favor of Turn-All because the evidence supported a finding that the company had committed an intentional tort.

In order to prove an intentional tort, an employee must meet the three-part test set forth by the Ohio Supreme Court in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. The *Fyffe* **test requires an employee alleging an intentional tort to demonstrate the following:**

> (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
>
> (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
>
> (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
>
> * * * proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk--something short of a substantial certainty--is

not intent.
*Id.*, at 118, 570 N.E.2d 1108.

With this standard in mind, we must proceed to determine whether the trial court erred by granting summary judgment in favor of Turn-All. Our review of the trial court's decision is *de novo. Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.

*5 Crissinger contends that she demonstrated evidence sufficient to satisfy every prong of the *Fyffe* test. The trial court found that she failed to demonstrate evidence to satisfy the second and third prongs of *Fyffe*. **Crissinger established by her evidence that Turn-All knew that reaming while wearing gloves is a dangerous process, therefore satisfying the first prong of *Fyffe*.**

In our view, the evidence before the trial court, when viewed in a light most favorable to Crissinger, fails to create a genuine issue concerning the third prong of the intentional tort test set forth in *Fyffe, supra.* Crissinger argues that because she believed that she could not refuse to ream, the company therefore required her to perform a dangerous task. There is no evidence that Crissinger voiced her unwillingness to perform the task to anyone in management. Furthermore, the evidence suggests that her supervisor was willing to find her another job to perform other than reaming. But most importantly, the company did not require Crissinger to perform the task while wearing gloves or using her right hand; to the contrary, Crissinger was cautioned against doing so. There is no evidence to suggest that the accident would have occurred had she followed company policy and her training.

Because we conclude that Crissinger failed to establish a genuine issue of fact with respect to the third prong of the *Fyffe* **intentional tort test, we find it unnecessary to determine whether there was a genuine issue of fact with respect to the second prong of the test. Since a plaintiff must satisfy all three prongs, a failure of proof with respect to any one prong renders immaterial any disputes of fact with respect to the other prongs.**

Crissinger argues that the trial court ignored the opinion of her expert. The expert's opinion that injury was substantially certain to occur as a result of her wearing gloves while reaming cannot remedy Crissinger's failure to offer proof that her employer required her to expose herself to that risk.

Crissinger's sole Assignment of Error is overruled.

III

Crissinger's sole Assignment of Error having been overruled, the judgment of the trial court is *Affirmed*.

BROGAN and WOLFF, JJ., concur.

1999 WL 279514 (Ohio App. 2 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works