UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CARL G. SIMPSON, ET AL. | : | Case No. C-1-000014 |
| | : | |
| Plaintiffs, | : | Judge Dlott |
| v. | : | |
| | : | REPLY MEMORANDUM OF |
| INTERMET CORPORATION, ET AL. | : | DEFENDANTS INTERMET |
| | : | CORPORATION AND IRONTON IRON, |
| Defendants. | : | INC. IN SUPPORT OF THEIR MOTION |
| | : | FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Defendants Intermet Corporation and Ironton Iron, Inc. (collectively "Intermet") moved for summary judgment on May 3, 2004 on all of the claims of Plaintiffs and the cross claim of Defendant Hayes-Lemmerz. Plaintiffs' 27-page opposition to Intermet's motion for summary judgment fails to create a genuine issue of material fact.[1/] Plaintiffs attempt to create

---

[1/] Plaintiffs claimed they were filing a thick packet of attached exhibits in support of their opposition. To date, Intermet has not been served with these attachments, which Plaintiffs claimed they would manually file and serve. Because Intermet has not had the opportunity to see these exhibits and because Intermet presumes these documents are unauthenticated and contain inadmissible hearsay, Intermet opposes Plaintiffs' reliance on these exhibits. See White v. Wells Fargo Guard Services, 908 F. Supp. 1570, 1579 (N.D. Ala. 1995 (unauthenticated documentary exhibits could not be used at summary judgment stage); Smith v. Sentry, Inc., 674 F. Supp. 1459, 1463 n. 2. (N.D. Ga. 1987) (documents must satisfy hearsay rules and be properly authenticated to be considered on summary judgment). Moreover, the OSHA citations, which are believed to be included in this packet, are merely charges of noncompliance with OSHA regulations and have no probative value; these, after the fact citations, do not establish that harm was a substantial certainty. See Abbott v. Jarrett Reclamation Servs., 123 Ohio App. 3d 729, 748, 726 N.E.2d 511, 525 (1999) ("generally, a plaintiff cannot admit testimonial or documentary evidence of OSHA violations by the employer" as such evidence is irrelevant and hearsay); Thomas v. Barberton Steel & Iron, Inc., 1998 WL 150374 (Ohio Ct. App. 1998) (fact that
(continued...)

factual issues by mistorting the record evidence. However, even if Plaintiffs' mischaracterization of the evidence were true,[2/] these alleged facts are irrelevant and do not show that Intermet knew that harm was substantially certain to occur or that Intermet required Simpson to place his head or body into the machine after it was unlocked, the power was turned back on and he told his co-worker to re-start the machine. Summary judgment is appropriate on all of Plaintiffs' claims.

Hayes-Lemmerz did not oppose Intermet's motion for summary judgment so summary judgment is appropriate on its cross claims for that reason and for the reasons stated in Intermet's motion. See F.R.C.P. 56(e); Garcia v. ANR Freight Systems, Inc., 942 F. Supp. 351, 354 n. 1 (N.D. Ohio 1996) (claim abandoned when plaintiff failed to contest defendant's arguments in her opposition).

---

[1/]   (...continued)
company was in violation of relevant safety standards was of no consequence) (attached to MSJ); Cross v. Hydracrete Pumping Co., 133 Ohio App. 3d 501, 507 n. 1, 728 N.E.2d 1104, 1108 (1999) (an OSHA violation at best might present evidence of negligence not an international tort).

[2/]   For example, Plaintiffs claim that Jamie Brammer's testimony concerning the events surrounding the accident is disputed, citing Tom Stapleton's testimony. However, Stapleton admitted he did not know what happened. Stapleton saw one brief interchange between Brammer and Simpson. After that, he had his back to Simpson. (Stapleton Dep. 30) He does not know when Brammer went around the machine, whether there were any further conversations or whether Simpson exited the machine again. Brammer testified Simpson finished cleaning the stickers, put away his hammer and chisel and told Brammer to raise up the machine. (Brammer Dep. 44, 57) Brammer told Simpson he was going to go and "raise up the machine" and Simpson said "okay". (Id. at 44, 46, 73) Brammer looked through the machine and saw Simpson standing on the other side, not inside the machine, before he pressed the solenoid valve. (Id. 47-48, 52) Stapleton's testimony does not dispute any of this. He admitted he had turned away. Moreover, even if Brammer's testimony were disputed, it does create a genuine issue of fact about whether Intermet had knowledge prior to the accident that harm was a substantial certainty or about whether Intermet required Simpson to place his head and body into the machine after it was unlocked, the power was turned back on and he told his co-worker to re-start the machine.

## II. ARGUMENT

    A.    Counts One, Two And Three Of Plaintiffs' Amended Complaint Against Intermet Are Barred By Ohio Worker's Compensation Act.

Plaintiffs concede that in order to survive summary judgment they must produce sufficient evidence to establish (1) knowledge by Intermet of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by Intermet that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that Intermet under such circumstances and with such knowledge did act to require the employee to continue to perform the dangerous task. Fyffe v. Jeno's, Inc., 59 Ohio St. 3d 115, 570 N.E.2d 1108 (1991) (syllabus). Plaintiffs have failed to present evidence sufficient to establish genuine issues of material fact with regard to prongs two and three. Summary judgment is appropriate.

        1.    Plaintiffs Have Not Presented Evidence That Intermet Knew That Harm To An Employee Was A Substantial Certainty.

            a.    The Alleged Existence Of Other Dangers Or Other Alleged Negligent Acts By The Employer Does Not Establish That Intermet Had Actual Knowledge That Harm To An Employee Was Substantially Certain To Occur.

Plaintiffs do not satisfy the exacting standard for an intentional tort claim. As the Sixth Circuit has repeatedly recognized, the "Fyffe rule imposes a 'harsh test', a 'daunting standard.' Intentional tort liability for workplace injuries is 'limited to egregious cases.'" Rodriquez v. Sun Co., Inc., 99 F.3d 1139 (Table) (6th Cir. 1996) (attached). "It is not enough

that the harm was likely to occur.  Nor is it enough that there was a high risk of it occurring. Rather it must have been substantially certain to occur." Jandro v. Ohio Edison Co., 167 F.3d 309, 313 (6th Cir. 1999) (citations omitted).

Whether Intermet may have been negligent or even reckless is irrelevant.  More than negligence or even recklessness is required:

> "Even if it is true that there is 'a plethora of negligence'. . . this will not prove the requirements of an intentional tort by an employer.  Without evidence that the employer was substantially certain that harm would inure to his employees, the elements of intentional tort have not been proven."

Wehri v. Countrymark, Inc., 82 Ohio App. 3d 535, 538, 612 N.E.2d 791, 793 (1992).  As the Sixth Circuit stated in Jeffers v. Floyd S. Pike Electrical Contractor, Inc., 202 F.3d 268 (Table) (6th Cir. 2000) (attached to MSJ), where the foreman had engaged in at least three negligent acts (including choosing not to request that the lines be de-energized, choosing not to order employees to wear their protective gloves and clothing and choosing not to use protective sheathing):  "The failure to do any of these, or all of them together, may constitute negligence or even reckless behavior, but it does not prove Pike Electrical knew such injury was certain or substantially certain to occur." Id.

Plaintiffs cite one case, Logan v. Birmingham Steel, 2003 WL 21805631 (Ohio Ct. App.).  In Logan, the court concluded that "reasonable minds could conclude that the risk of harm to the appellant was substantially certain to occur given the testimony of [the general supervisor and operations manager] about how dangerous this area of the mill was if not locked out." Id. at *7.  In Logan, the General Supervisor had testified he knew someone could be seriously hurt or killed if the machine was not properly locked out.  Id. at *5, 7.  In addition, there

was evidence that the only way employees were trained to remove a cobble was to do it without any lockout. Id. at 7. In this case, in contrast, no manager has testified that they knew someone could be hurt or killed if the machine was not locked out or if the employees used the solenoid valve on the side of the machine to re-start the machine.

Instead, Plaintiffs claim that managers entered the Sutter machine without locking it out.[3] Rather than supporting Plaintiffs' claims, this alleged fact negates any intentional tort theory. It is illogical to believe that Intermet or its managers knew that an injury was substantially certain to occur when these managers were themselves placed in the zone of danger. See Rodriquez v. Sun Co., 99 F.3d 1139 (Table) (6th Cir. 1996) (attached); Wehri v. Country Mark, Inc., 82 Ohio App. 3d 535, 537-538, 612 N.E.2d 791. 793-94 (1992) ("It is illogical to assume that the highest ranking persons in the Lima facility were willing to intentionally subject themselves to substantially certain injury, possibly death").

Similar to the plaintiff in Jandro, Plaintiffs erroneously list a number of conditions which they believe to be unsafe or dangerous practices and claim that injury was a substantial certainty. Much of their alleged evidence of unsafe conditions relate to matters that did not even contribute to Simpson's injury. As was the situation in Jandro, the proximate cause of Simpson's injuries was his own act of re-entering the machine when it was not locked out, when the power was turned back on and when he had told his co-worker to re-energize the machine. Moreover,

---

[3] There was some testimony that employees and supervisors placed their hands in the machine, just enough where they could quickly pull them out if the machine moved, without it being fully locked out; but, no one testified that they placed their head or upper body into the machine as did Simpson unless the power was turned off. (Stapleton Dep. 15; Cole Dep. 32; Wilburn Dep. 69, 103)

regardless of whether, with hindsight, one could claim that injury was a substantial certainty, the issue is whether prior to the accident **Intermet** had knowledge that harm was a substantial certainty. There is no evidence that this was the case.

Although it is undisputed that employees had lock-out training at least twice per year (Ramey Dep. 13; Brammer Dep. 13-14; Cherry Dep. 71), Plaintiffs argue there was inadequate training. Regardless of whether it was machine specific, employees were trained not to enter any machine unless it was first locked out. They were also instructed on the job how to specifically lock out particular machines. (Wilburn Dep. 50, 57-58) Moreover, Simpson received machine specific lock out training and it is undisputed he knew how to lock out the Sutter machine, regardless of the inadequacy of training for other employees. (Howell Decl. ¶ 5; Lambert Dep. 32, 72; Brammer Dep. 41-43, 72) An alleged lack of training did not contribute to Simpson's accident. See Thomas v. Barberton Steel & Iron, Inc., 1998 WL 150374 (Ohio Ct. App. 1998) (inadequate safety training irrelevant when employee knew how to do proper procedure) (attached to MSJ).

Similarly, the failure to enforce the lock-out procedure even if true, was not a cause of Simpson's death. Other employees entering the machine without proper lock-out did not increase the danger to Simpson. It is undisputed he locked out. (Lambert Dep. 32, 72; Brammer Dep. 41-43, 72) Moreover, as the Sixth Circuit recognized, knowledge that employees engaged in unsafe practices "at most proves knowledge of the risk." Jandro, 167 F.3d at 315. See Thomas, 1998 WL 150374 at *3. It does not establish that harm was a substantial certainty.

Similarly, the erroneous argument that the machine, even when locked out, was not at a zero energy state, which is refuted, is irrelevant. Whether or not the machine was at a

complete zero energy state when locked out had nothing to do with Simpson's injury. His injury was the result of the powered-up machine being activated. It is undisputed that the machine was not locked out when he was injured; he had already unlocked it. (Brammer Dep. 44, 57)

Intermet's alleged failure to "take adequate steps to protect other employees from the pinch points created in the Sutter machines" (Pl. Mem., p. 19)[4] is not evidence that Intermet knew with substantial certainty that harm to an employee would occur.[5] Simpson's accident did not occur due to a lack of guarding. Guards prevent an employee from entering a machine during the operation/cycle. Simpson entered the machine when the machine was shut down. Even if the machine had been guarded, the guards would not be in use when an employee entered the machine to clean out a sticker. (Wilburn Dep. 62, 91)

All of this alleged evidence (failure to initiate and enforce safety procedures or devices or take corrective action), even if true, at most establishes negligence; it does not establish that Intermet knew that harm to an employee was a substantial certainty. As the Ohio Supreme Court has made clear:

> There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers Compensation Act, such conduct should not be classified as an "intentional tort". . . .

---

[4]     Plaintiff falsely state that no operational safety devices were placed on the Sutter machine to protect employees. It is undisputed that safety bars were instituted. (Roop Dep. 35; Cherry Dep. 18-20, 22)

[5]     The remedial measures, guards and changes that Intermet took after Simpson's injury are not admissible evidence. See F.R.E. 407.

VanFossen v. Babcock & Wilcox Co., 36 Ohio St. 3d 100, 117, 522 N.E.2d 489 (1988). See also Foust v. Magnum Restaurants, Inc., 97 Ohio App. 3d 451, 455, 646 N.E.2d 1150 (Ohio Ct. App. 1994) (failure to insure employees use available safety equipment might indicate negligence, or even recklessness, but fell short of the higher standard of substantial certainty).

    b.  Plaintiffs Must Establish More Than Mere Knowledge Of A Dangerous Condition.

Plaintiffs claim that Intermet management was aware that the location of the solenoid valve created a dangerous condition. (Pl. Mem., p. 5) However, Plaintiffs do not cite to the testimony of any managers who were at Intermet at or near the time of the injury.[6] Moreover, even if managers knew that the location of the valve created a dangerous condition, such knowledge only satisfies the first prong of the Fyffe test; it does not establish that Intermet had actual knowledge that harm to an employee was a substantial certainty. An employer's knowledge of a potential danger is not enough to establish that the employee's "awareness rose to a level of 'substantial certainty that the potential consequences would materialize'." Rodriquez v. Sun Co., 99 F.3d 1139 (Table) (6th Cir. 1996) (attached).

---

[6]  Ted Lambert was a union laborer, as was Paul Kelley. (Kelley Dep. 8; Lambert Dep. 13) Wilburn was a line supervisor, but he had no authority to hire, fire or even suspend. (Wilburn Dep. 46, 48) He was at best a low-level employee, not someone whose knowledge could be imputed to Intermet. Jim Allread had worked in Lynchburg, Virginia, not Ironton and he had left Intermet in 1995 (four years before the accident). Moreover, his cited testimony reveals only that he does not remember that employees had to walk around the machine, not that it was necessarily dangerous. He testified that regardless of where the valve was located it was important for employees to know what would happen on the other end before they press a button. (Allread Dep. 95-97)

       c.  Intermet Was Not Aware Of Any Similar Prior Injuries Or Near Injuries.

The alleged injuries or "new injuries" cited by Plaintiffs do not establish that Intermet had knowledge that harm to Simpson was a substantial certainty. Under <u>Sanek v. Duracote</u>, 43 Ohio St. 3d 169, 172, 539 N.E.2d 1114, 1116-17 (1989), an employer must have actual knowledge of the exact dangers which caused the employee's injury. There is no evidence that Intermet had actual knowledge of the exact dangers which caused Simpson's injury prior to his injury.

  Plaintiffs cite to a few injuries that occurred over the years in or near the Sutter machine. None of these injuries were related to the dangers which played a role in Simpson's injuries and do not establish that Intermet had actual knowledge that the exact dangers which caused Simpson's injury were substantially certain to cause harm.

  In 1998, the bolts holding the gas head of the Sutter machine up broke and gravity caused the gas head to fall injuring Grady Runyon's hand. Plaintiffs admit that this danger was corrected when Intermet added safety bars to prevent the gas head from falling again. (Pl. Mem., p. 8) Plaintiffs claim, however, that these safety bars did not prevent the cope from rising up to meet the gas head; however, the cope rising was not the danger in the Runyon incident. (Cherry Dep. 30) Gravity obviously would not cause a part to rise. Intermet's knowledge of a gas head falling because a bolt broke, which Intermet fixed and added safety bars to prevent the same accident again, in no way imputes knowledge that an employee would insert his head and body into the Sutter machine, after it was unlocked and the power was on and would be crushed by the cope being raised by hydraulic power after a co-worker had pressed the valve to re-start the

machine. As Ramey testified, it would be completely out of the ordinary for someone to climb back into a machine. (Ramey Dep. 107-108) Intermet was not aware that harm was substantially certain to occur.

Plaintiffs also cite other injuries or near injuries which do not even involve the same pinch point. Tom Slaughter was on the other side of the Sutter machine attempting to push the pattern into the machine when his finger was caught in the blow tube. (Ramey Dep. 19, 100) He was not injured in the pinch point created by the cope and the gas head as was Simpson, nor was he injured while cleaning out a sticker. Finally, he was not injured when someone pressed the solenoid valve. (Ramey Dep. 101) Slaughter's injury is wholly unrelated to this case.

The alleged core machine injury did not occur on the type of machine involved here and, therefore, is not sufficient to establish that Intermet had actual knowledge that harm was substantially certain to occur on Simpson's Sutter machine. The core machine was a smaller machine; employees could not place their head or body into the machine, as they could with the Sutter. (Mullins Dep. 10) Moreover, the evidence of this injury is inadmissible hearsay which cannot be considered on a motion for summary judgment. See Sperle v. Michigan Dept. of Corrections, 297 F.3d 483, 495 (6th Cir. 2002) ("A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact"). Gerald Wilburn, whose deposition is cited for this evidence, testified "I had heard somebody got smashed. I can't remember if it was their hand or arm or something that got caught. Now, whether it was true, I don't know, I mean, I heard that they had." (Wilburn Dep. 38)

The "near injuries" cited by Plaintiffs also do not establish that Intermet had knowledge that harm was a substantial certainty because Intermet did not even know of these "near injuries" until after Simpson's accident. Gerald Wilburn's alleged near injury was never reported to Intermet. (Wilburn Dep. 65-66) Nor was the alleged Adam Ainsworth/Jim Noble incident. Plaintiffs cite Wilburn's deposition as evidence that the Ainsworth/Noble incident was known throughout the plant. In fact, Wilburn testified that he was not aware of this incident. (Wilburn Dep. 27) Management did not hear of this alleged incident until after Simpson's death. (Cherry Dep. 56) Moreover, the Ainsworth/Noble incident occurred when Ainsworth re-started the machine from the control panel and then stopped it before Noble was injured. (Ramey Dep. 24-25, 110) It did not involve the same danger alleged in this case, the solenoid valve.

   2.  <u>Intermet Did Not Require Simpson To Perform The Dangerous Task, (Entering The Machine Without Locking It Out).</u>

Even if Plaintiffs could establish that Intermet had actual knowledge that harm to an employee was substantially certain to occur, Plaintiffs have not established that Simpson was required to place his body in an unlocked machine as part of his job. Simpson was required to remove stickers as part of his job, but he was not required to do so without utilizing Intermet's safety procedures, including lockout. Plaintiffs, without any record citation, state that Simpson "at the time of his death was performing a dangerous task in the manner he was trained and required to do purely to increase production for Intermet." (Pl. Mem., p. 21-22) There is no evidence that Simpson was ever instructed or trained not to lockout. In fact, all of the evidence supports that he was not only properly trained on the lockout procedures, but followed them.

(Ramey Dep. 13; Brammer Dep. 13-14, 41-43, 72; Cherry Dep. 71; Howell Decl., ¶ 5; Lambert Dep. 32, 72)

In fact, contrary to Plaintiffs' assertion, there is no evidence that Intermet required any employees to enter the Sutter machine without locking it out. Lambert is the only person who testified that he was in any way instructed not to lock out. Lambert testified only that when the pattern was pulled out of the machine (a different process than that involved in Simpson's accident), he was instructed to only lock out the air, which was the only relevant energy source at that time. (Lambert Dep. 25-26) He did not need to enter the machine when the pattern was pulled out of the machine. Moreover, regardless of what Lambert claims he was told to do, Lambert testified that for the nearly two years that he worked on the Sutters, he did not work on the machine if it was not locked out.[7] (Lambert Dep. 28-29) There is no evidence that Simpson or anyone else was ever instructed not to lock out. (Stapleton Dep. 26; Wilburn Dep. 48, 61) In fact, all of the evidence establishes that employees were never told not to lock out and were specifically instructed to lock out. (Stapleton Dep. 10-11, 16, 26; Wilburn Dep. 48, 61; Arthurs Dep. 17, 33, 34; Miller Dep. 26-27, 33; Ramey Dep. 96-97) Lambert himself testified that he was never told to climb into the machine without first turning off the power.[8] (Lambert Dep. 48)

---

[7] Contrary to Plaintiffs' assertion on page 7 of their memorandum, there is no evidence that Lambert was transferred for his alleged refusal to short-cut the lock out procedures. This was simply Lambert's speculation. He was transferred because he had lower production, which he admitted was true. (Lambert Dep. 18-19, 81-82)

[8] Had Simpson turned the power off prior to re-entering the machine (even if he had not placed a lock on the power), he would not have been injured. Even employees who testified they did not always lock out testified they always turned the power off before they wwould stick their head or upper body into the machine. (Stapleton Dep. 15; Cole Dep. 32; Wilburn Dep. 69, 103)

No one could have predicted that Simpson would re-enter the machine after it was unlocked, the power was on, and he had told his co-worker to re-energize the machine.

When, as here, an employer provides safety mechanisms which the employee does not follow, even if the employer has not enforced its safety procedures, courts have repeatedly held that the employer did not require the employee to perform the dangerous task, i.e., work without the safety procedures or equipment. See Jandro, 167 F.3d at 316 (employee was not required to perform job without safety equipment); Crissinger v. Turn-All Machine & Gear Co., 1999 WL 279514 (Ohio Ct. App. 1999) (company did not require plaintiff to wear gloves that caused injury and cautioned her against doing so; summary judgment appropriate where there was no evidence that accident would have occurred if plaintiff followed company policy) (attached to MSJ); Floyd v. Master Industries, Inc., 1999 WL 1127395 (Ohio Ct. App. 1999) ("there is no evidence in the record to indicate that Master Industries required Floyd to perform his job without taking the appropriate safety precautions; to the contrary, he was trained to use numerous safety precautions, but chose not to.") (attached to MSJ).

In King v. Hancock Mfg. Co., 1999 WL 1243313 (Ohio Ct. App. 1999) (attached to MSJ), the court granted summary judgment on an intentional tort claim where the plaintiff similarly claimed that management knew employees used their hands to dislodge scraps and that because production was such a priority, plaintiff did not feel comfortable shutting his machine off to safely remove the scrap. The court found that there was no evidence that harm was substantially certain to occur or that the employer required the employee to perform the job in a manner that was substantially certain to cause harm:

> It is apparent that appellant himself knew that he should have used his wooden stick to clear the metal from the chute. In fact, he

> trained his coworker to use said stick. Appellant was a fairly experienced operator who worker on a machine that contained a warning about cleaning the machine while it was running.
>
> Furthermore, no reasonable interpretation of the evidence would lead rational minds to conclude that Hancock required, instructed or encouraged appellant to clean scrap metal from the chute with his hands. There is no implied intent to injure merely because appellant used a dangerous method to perform one of his job duties, especially where safe alternative methods existed of which appellant was aware.

Id. (citations omitted). As in King, a safe, alternative method to remove stickers existed and Simpson undisputably was aware of that method.

Plaintiffs have failed to establish that Intermet had actual knowledge that harm was a substantial certainty (not just that there were dangers in the workplace) and that it then required Simpson to perform the dangerous task that was substantially certain to cause harm. Summary judgment is appropriate.

B.  Summary Judgment Is Appropriate On Reed's Loss Of Consortium Claim.

Summary judgment is also appropriate on Reed's loss of consortium claim. Bonnie Reed's loss of consortium claim fails for the same reason as the wrongful death claims fail. See Bevis v. Armco Steel Corp., 155 Ohio St. 295, 102 N.E.2d 444 (1951).

In addition, Simpson's death, whether instantaneous or maintained on life support for three hours, negated any loss of consortium claim. See DeWitt v. B&C Machine Co., 25 Ohio St. 2d 40, 266 N.E.2d 563 (syllabus) (1971). Plaintiffs cite no case that limits DeWitt. The rationale of DeWitt applies with just as much force in this case where Simpson never regained

consciousness and was maintained solely on life support for a mere three hours.  Moreover, Plaintiffs cite no record evidence to support their claim that Simpson "lived" for three hours.

Finally, Reed's claim fails for the additional reason that she has not presented sufficient evidence to establish that she was Simpson's wife at the time of his death.  Simpson filed a single tax return.  (Reed Dep. 25)  He listed Reed as a "friend" on his life insurance policy completed just one year before his death.  (Howell Dec. ¶ 7, Ex. 3)  He certified to Intermet that he was not married on his retirement beneficiary designation.  (Id. ¶ 6, Ex. 2)  In the Probate Court filings in connection with Simpson's estate, Reed and Carl G. Simpson (Simpson's father) signed a statement that "[t]here are minor children of the decedent and no surviving spouse."  (Reed Dep. Ex. 1, p. 9-10) (emphasis added).  On the deed to Simpson's property, which he obtained in 1997, he is listed as "unmarried."  (Reed Dep. Ex. 1, p. 111)  Similarly, on the deed to property he obtained in 1996, he is listed as "single."  (Reed Dep. Ex. 1, p. 121)  Reed's after the fact determination by the probate court in an uncontested[9] matter where the probate court did not have the above information before it, is not binding here and does not create a genuine issue of material fact in light of Simpson's own representations.  See Wallace v. Mamula, 30 F.3d 135 (Table) (6th Cir. 1994) (plaintiff could not offensively use prior decision from an action to which defendant was not a party) (attached).

---

[9]    Intermet was not a party to this proceeding.

### III. CONCLUSION

For each and all of the foregoing reasons and those expressed in Intermet's motion for summary judgment, Intermet respectfully requests that this Court grant its motion for summary judgment on all of the claims against it.

Respectfully submitted,

 s/ Patricia Anderson Pryor
Lawrence J. Barty (0016002)
barty@taftlaw.com
Patricia Anderson Pryor (0069545)
pryor@taftlaw.com
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957
(513) 381-2838
(513) 38l-0205 (fax)

Trial Attorneys For Intermet Corporation
and Ironton Iron, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Randall L. Lambert and D. Scott Bowling, Attorneys for Plaintiff, 215 South Fourth Street, P.O. Box 725, Ironton, Ohio 45638; and Nancy J. Bride, Greenbaum Doll & McDonald PLLC, 255 East Fifth Street, Suite 2800, Cincinnati, Ohio 45202-4728.

    /s Patricia Anderson Pryor
Patricia Anderson Pryor
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
(513) 38l-0205 (fax)