IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CARL G. SIMPSON, et al., | : | Case No. 1:00cv00014-SJD |
| | : | (Judge Susan J. Dlott) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **DEFENDANT CMI'S** |
| | : | **REPLY IN SUPPORT** |
| INTERMET CORPORATION, et al., | : | **OF ITS MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |
| Defendants. | : | |
| | : | |

Defendant Hayes Lemmerz International - Equipment & Engineering, Inc., d/b/a CMI - Equipment & Engineering, Inc. ("CMI"), submits this Reply in Support of its Motion for Summary Judgment.

## I. INTRODUCTION

In its motion for summary judgment, CMI provided uncontroverted evidence that (1) the coring machine in which Plaintiffs' decedent, Carl D. Simpson ("Simpson") was fatally crushed was not defective when it left CMI's hands, and (2) Simpson's fatal injuries were proximately caused by the substantial alterations which Simpson's employer, Defendant Intermet Corporation ("Intermet"), allowed its employees to make to the coring machine.

In their memorandum in opposition to CMI's motion for summary judgment ("Plaintiffs' Response"), Plaintiffs contend that the coring machine was defective when it left CMI because it lacked a number of possible safeguards. The uncontroverted evidence, however, establishes that even if each of these possible safeguards had been on the machine on the day of Simpson's accident, Simpson would have had to remove or disengage them in order to enter the machine, or would have been unable to access them from the inside of the machine. It follows that, if the

safeguards would have been disengaged or inaccessible anyway, their nonexistence could not have proximately caused Simpson's accident. Without proximate cause, CMI cannot be held liable, as a matter of law. Furthermore, Intermet's substantial alteration of the machine after it left the hands of CMI - a fact that Plaintiffs wholly fail to controvert in their response - absolves CMI of liability for any defect, as a matter of law.

For these reasons, summary judgment for CMI is appropriate.

## II. ARGUMENT

### A. CMI Is Entitled To Summary Judgment Because Plaintiffs Have Failed To Meet Their Burden To Produce Specific Facts Showing There Is A Genuine Issue For Trial.

Under Fed. R. Civ. R. 56(c), a court must enter summary judgment when the nonmoving party "after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party is not required to support its motion with evidence "negating the opponent's claim." Id. at 323. The movant's responsibility is fulfilled simply by pointing out the absence of evidence supporting an essential element of the non-moving party's case. Id. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. A party cannot survive summary judgment simply by presenting conclusory allegations or denials. Instead, the opposing party must establish the existence of "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249-50 [citations omitted].

As explained below, CMI is entitled to summary judgment because Plaintiffs lack sufficient evidence to establish essential elements of their claims and cannot present a genuine dispute as to the material facts upon which CMI's defenses are based.

> B. **The Uncontroverted Evidence Establishes That Simpson's Accident Was Not Proximately Caused By Any Defect In The Coring Machine.**

Plaintiffs assert that the coring machine was defective, as manufactured by CMI, because it lacked a number of safety devices, such as guards, swing stops, die blocks, light curtains, or an emergency stop button.[1] Plaintiffs' Response, pp. 3, 6-11. As a matter of law, CMI cannot be liable for failing to install these safeguards unless Plaintiffs can prove that the lack of the safeguards was the proximate cause of Simpson's injury. See Sikorski v. Link Elec. & Safety Control Co., 691 N.E.2d 749, 756 (Ohio Ct. App. 1997); Kobza v. General Motors Corp., 580 N.E.2d 47, 48-49 (Ohio Ct. App. 1989). Plaintiffs fail to come forward with any evidence that could lead a reasonable jury to conclude that the lack of safeguards was the proximate cause of Simpson's accident. To the contrary, the uncontroverted evidence which includes the testimony of Plaintiffs' own expert witnesses - establishes that none of the suggested safety devices would have prevented the accident. Consequently, the lack of such safety devices could not have been the proximate cause of the accident.

---

[1] Plaintiffs do not attempt to controvert CMI's evidence that it provided adequate and proper warnings regarding the safe operation of the coring machine and the lockout/tagout procedure. Indeed, Plaintiffs concede this point. Plaintiffs' Response, p. 3. Thus, there is no dispute that the coring machine was not defective in terms of warnings when it left CMI's control.

3

**Guards**. Plaintiffs contend that the coring machine was defective because it lacked adequate guards to protect employees from pinch points. Plaintiffs' Response, pp. 3, 6-11. According to the uncontroverted testimony of former Internet employees as well as Plaintiffs' own experts, however, an employee must <u>remove</u> any guards before entering the coring machine to remove stickers - the precise function Simpson was performing at the time of the accident. Former Internet employees, Thomas Stapleton and Paul Kelley, testified to this. <u>See</u> Stapleton Dep., p. 71 (Exh. A); Kelley Dep., p. 33 (Exh. B).

Plaintiffs' own experts, Perry Jones and Gary Maul, gave similar testimony. As Jones explained, "If you are going to get into the machine to perform any kind of work and you have to -- in order to do that, **you have got to remove the guarding**." Jones Dep., pp. 99-100 (emphasis added) (Exh. C). Jones further testified that safety guards are used to protect employees when they do their jobs outside of the machine, but the lockout/tagout procedure serves the contrasting purpose to protect employees when they are working inside of the machine. <u>Id</u>., pp. 100-101. Gary Maul admitted the following:

> Q: Well, if you're going to put yourself inside of a pinch point purposefully for the purposes of necessity, however you want to characterize it, you need a lockout/tagout system, don't you?
> A: You could. But -
> Q: The guards have - The guard's no longer going to protect you, is it?
> A: The guard will no longer protect me . . . .

Maul Dep., p. 125 (Exh. D).

Maul also admitted, "if you fire something up and somebody's in the machine, a guard isn't going to take care of that situation." Maul Dep., p. 99.

4

Simpson was injured when he was inside the coring machine, removing "stickers." The uncontroverted evidence establishes that, even if the coring machine had the guards proposed by Plaintiffs, Simpson would have had to remove those guards in order to climb into the machine to remove the stickers. Therefore, the proximate cause of Simpson's injury <u>was not</u> the lack of Plaintiffs' proposed guards.

**Swing Stops**. Plaintiffs' own pleadings establish that the use of swing stops would not have prevented Simpson's accident. Exhibit 6 to Plaintiffs' Response reveals that swing stops are intended to prevent the accidental, rather than intentional, closing of the coring machine. Plaintiffs' Response, Exh. 6 at ¶3 (stating that swing stops would be manually operated to "prevent the accidental closing of the tooling"). Although there is no dispute that Brammer acted without malice, there is also no dispute that he intentionally, rather than accidentally, raised the cope to the gas head, thereby closing the tooling while Simpson was inside. Brammer Dep., p. 48 (Exh. E). Further, Plaintiffs acknowledge that swing stops are used to prevent accidental closing of the machine during cleaning or maintenance (Plaintiffs' Response, p. 7), yet it is undisputed that Brammer was operating the machine, not conducting maintenance, when he activated it with Simpson inside. Plaintiffs have failed to meet their burden of producing specific facts to show that swing stops would have prevented the intentional closing of the coring machine during operation and, correspondingly, that the lack of swing stops could have proximately caused an accident that occurred during the intentional operation of the machine.

**Die Blocks**. Die blocks are inserted into the coring machine while it is being serviced. Plaintiffs' Response, p. 7. The safety bars used by Intermet served the same function as die blocks. Gould Dep., p. 39 (Exh. F). As with guards, before activating the coring machine,

5

operators must <u>remove</u> the safety bars. Stapleton Dep., pp. 19-23. Therefore, as with guards, the use of die blocks could not have prevented Simpson's accident and, consequently, the lack of die blocks could not have proximately caused the accident.[2]

**Light Curtains**. According to Plaintiffs' own expert, Gary Maul, light curtains protect employees only when they operate machines from the outside, not when they enter machines to perform maintenance. Maul Dep., pp. 124-126. Intermet's manager of corporate energy management, Tom Dershem, corroborated this testimony, stating that "a light curtain would not have prevented anyone from manually operating a valve." Dershem Dep., p. 154 (Exh. G). Plaintiffs have not offered any evidence to controvert Mr. Dershem's testimony. Because it is uncontroverted that the existence of light curtains would not have prevented this accident, there is no basis for a jury to find that the lack of light curtains was the proximate cause of the accident.

**Emergency Stop Button**. The uncontroverted evidence establishes that an emergency stop button could not have prevented Simpson's accident for the simple reason that Simpson would not have been able to reach such a button from inside of the coring machine. Plaintiffs' own expert, Gary Maul, testified:

> Q. If Mr. Simpson had both hands, his body and both arms inside the machine when it actuated, then he could not reach the stop button, could he?
> A. I'd have to say probably, no.

Maul Dep., p. 100.

---

[2] It is undisputed that Brammer and Simpson failed to use the safety bars (Brammer Dep., pp. 43-44) and, therefore, there is absolutely no reason to believe they would have used die blocks.

The uncontroverted evidence - including the testimony of Plaintiffs' own witnesses - establishes that none of the suggested safety devices would have prevented Simpson's tragic injury. Accordingly, Plaintiffs have completely failed to meet their burden of producing specific facts that would support a jury finding that the lack of these hypothetical safety devices was the proximate cause of this accident. For this reason, summary judgment for CMI is appropriate on all of Plaintiffs' claims.

C.  **The Uncontroverted Evidence Establishes That Intermet's Substantial Alteration Of The Coring Machine Proximately Caused Simpson's Accident**.

As a matter of law, CMI is relieved from liability on Plaintiffs' strict product liability, negligence, breach of express and implied warranties, and wrongful death claims because the uncontroverted evidence shows that Intermet substantially altered the coring machine by altering the activation of the machine and ignoring lockout/tagout, causing Simpson's death. See Kobza v. General Motors Corp., 580 N.E.2d 47, 48-49 (Ohio Ct. App. 1989) (a manufacturer is entitled to summary judgment if an alleged defective product has been substantially altered, and that alteration is the proximate cause of the injury); Espinoza v. Napoleon Spring Works, Inc., No. F-87-22, 1988 WL 84361, at *1-*2 (Ohio Ct. App. Aug. 12, 1988) (manufacturer entitled to summary judgment despite alleged defect of failing to provide point of operation guards because plaintiff failed to meet threshold requirement demonstrating that the activation mechanism on the punch press was not substantially altered) (attached as Exh. H); Zeek v. Taylor-Dunn, No. CA97-07-133, 1998 WL 372418, at *3-*6 (attached as Exh. I) (manufacturer relieved from liability where a plaintiff's employer ignores the manufacturer's instructions or ignores proper safety precautions); Castle v. Leach Co., 4 F. Supp. 2d 128, 131 (N.D. N.Y. 1998) (holding that

defectively designed collection and compaction unit in garbage truck was not a substantial factor in repairman's death; rather, manufacturer avoided liability because repairman failed to follow lockout/tagout procedures). In its summary judgment memorandum, CMI presented ample evidence that, at some point after the coring machine's installation in 1992, Intermet substantially altered the machine by altering its activation mechanism (permitting employees to activate the machine from the back, at the solenoid valve, instead of from the control panel) and by ignoring CMI's lockout/tagout instructions.[3] Plaintiffs fail to come forward with sufficient evidence to raise a fact issue on this point. Indeed, the "contrary evidence" that Plaintiffs cite to on this issue - the testimony of former Intermet employee Thomas Stapleton - actually supports CMI's contention that substantial alterations were made. According to Plaintiffs, Stapleton testified that <u>he remembers activating the solenoid valve from the rear of the machine in late 1993</u>. Plaintiffs' Response, pp. 12-13.

### III. CONCLUSION

CMI has presented uncontroverted evidence - including the testimony of former Intermet employees and of Plaintiffs' own expert witnesses - to establish that no defect on the coring machine proximately caused Simpson's accident and that, rather, the tragic event was proximately caused by Intermet's substantial alteration of the machine after it left CMI's control.

---

[3] Plaintiffs incorrectly assert, on page 12 of their response brief, that CMI relies only on James Brammer's deposition to show that Intermet substantially altered the coring machine. In fact, CMI cited the testimony of Al Gould, Intermet's Thomas Dershem and Intermet's Robert McMillan, in addition to Brammer. Plaintiffs, on the other hand, fail to come forward with any evidence that would contradict these witnesses' testimony that at some point after the installation of the coring machine, Intermet employees ran the machine by overriding the solenoid valve on the back of the machine rather than running the machine from the control panel.

8

Plaintiffs have failed to meet their burden to produce specific facts to permit a jury to return a verdict in their favor. Accordingly, CMI is entitled to summary judgment. CMI respectfully requests that this Court grant summary judgment in favor of CMI on all of Plaintiffs' claims and all of Intermet's cross-claims, and grant CMI such further relief to which it may be justly entitled.

Respectfully submitted,

s/ Mark T. Hayden
Mark T. Hayden (00661620
Nancy J. Bride (0068559)
GREENEBAUM DOLL & McDONALD PLLC
2800 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 455-7600
Facsimile: (513) 455-8500

Attorneys for Defendant Hayes Lemmerz
International - Equipment & Engineering, Inc.,
d/b/a/ CMI - Equipment and Engineering, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel who have participated in the system.

I hereby certify that I have mailed by regular U.S. mail, postage prepaid, the foregoing to counsel whom are not participating in the CM/ECF system.

                                                          s/ Mark T. Hayden
                                                          Attorney for Defendant Hayes Lemmerz
                                                          International - Equipment & Engineering, Inc.,
                                                          d/b/a/ CMI - Equipment and Engineering, Inc.

CIN:601047.1