# EXHIBIT I



Not Reported in N.E.2d  
(Cite as: 1998 WL 372418 (Ohio App. 12 Dist.))

Page 1

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Ohio, Twelfth District, Butler County.

Michael ZEEK, et al., Plaintiffs-Appellants,  
v.  
TAYLOR-DUNN, et al., Defendants-Appellees.

No. CA97-07-133.

July 6, 1998.

Casper & Casper, Arthur B. Casper, One North Main Street, P.O. Box 510, Middletown, Ohio 45042, for plaintiffs-appellants, Michael Zeek and Mary Zeek.

Gregory C. Gibson, 1305 Kettering Tower, Dayton, Ohio 45423, for defendant- appellee, Taylor-Dunn.

OPINION

POWELL, J.

*1 On October 4, 1993, plaintiff-appellant, Michael Zeek, was operating a motorized cart known as a stockchaser at his place of employment, Hamilton- Stephens, when he approached a freight elevator with a closed gate. Zeek testified that as he approached the elevator he tried to stop the stockchaser but the cart would not brake. Zeek stated that he tried to exit the cart, but that his foot was stuck between the treadle pedal that activated both the accelerator and the brake on the truck's platform floor. Since Zeek was unable to stop the stockchaser or exit the cart, the stockchaser, with Zeek still aboard, crashed through the elevator gate and fell approximately thirteen feet to the basement level. Zeek suffered serious injuries as a result of the accident.

Zeek filed a lawsuit against the manufacturer of the stockchaser, defendant- appellee, Taylor-Dunn, under Ohio's Product Liability Statute and sought imposition of liability against Taylor-Dunn for injuries sustained. Zeek alleges that Taylor-Dunn defectively designed the stockchaser's treadle pedal. Taylor-Dunn asserts that the stockchaser was not defectively designed or manufactured, but that a faulty repair by Hamilton-Stephens was the proximate cause of Zeek's injuries. It is uncontroverted that Hamilton-Stephens performed repairs to the treadle pedal prior to Zeek's accident.

Taylor-Dunn filed a motion for summary judgment on the grounds that no issue existed as to any material fact regarding its liability. The trial court sustained Taylor-Dunn's motion for summary judgment on June 4, 1997. On July 1, 1997, Zeek filed the instant appeal, setting forth four assignments of error.

Assignment of Error No. 1:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS REASONABLE MINDS COULD CONCLUDE THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE STOCKCHASER WAS DEFECTIVELY DESIGNED PURSUANT TO O.R.C. SECTION 2307.75.

Zeek argues that Taylor-Dunn defectively designed the foot treadle of the stockchaser and that the trial court erred in granting summary judgment. Civ.R. 56(C) provides in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                                                           Page 2
(Cite as: 1998 WL 372418 (Ohio App. 12 Dist.))

evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion of summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

In construing Civ.R. 56(C) the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law and (3) reasonable minds, construing evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 375 N.E.2d 46. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court set forth the burden that is placed on each party in a summary judgment action:

> *2 A party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for its motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial, and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Id.* at 293, 662 N.E.2d 264. An appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision while making its own judgment. *Schwartz v. Bank One* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

Under strict tort liability principles for the design of a product, a manufacturer need not anticipate all uses to which its product may be put, nor guarantee that the product is incapable of causing injury in all of its possible uses. *Menifee v. Ohio Welding Products* (1984), 15 Ohio St.3d 75, 472 N.E.2d 707, at syllabus. A product is considered defective in design if either the foreseeable risks associated with the design exceed the benefits associated with that design, or the product is more dangerous that an ordinary consumer would expect when used in a reasonably foreseeable manner. R.C. 2307.75(A) and 2307.75(B).

A product is not defective in design if an inherent characteristic of the product caused harm and cannot be eliminated without substantially compromising the usefulness of the product in the eyes of an ordinary person. R.C. 2307.75(E). Only "those circumstances which the manufacturer perceived or should have perceived at the time of their respective actions should be considered." *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707. The foreseeable risks associated with the design of a product are determined by considering, among other factors, "the likelihood that the design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product." R.C. 2307.75(B)(3).

*3 Furthermore, if a design defect exists, it must also be shown that the manufacturer sold the defectively designed product and that the defect was the proximate cause of the harm. *State Farm & Fire Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489. Summary judgment is only appropriate where a product is used in a capacity which is clearly unforeseeable by the manufacturer and completely incompatible with the product's design. *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 534 N.E.2d 855.

In the instant case, Dr. Thomas Huston, Professor of Engineering at the University of Cincinnati, testified on behalf of Zeek that the design of the stockchaser's treadle pedal created a mechanical hazard. Dr. Huston explained that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                      Page 3
(Cite as: 1998 WL 372418 (Ohio App. 12 Dist.))

the treadle was designed to control both the braking and the acceleration of the stockchaser/order picker. By depressing the foot treadle forward, the brakes on the stockchaser/order picker were released and the vehicle would then accelerate. Whereas, a rearward rotation of the foot treadle will apply the brakes of the stockchaser/order picker. Moreover, with the removal of pressure from the foot treadle, the foot treadle was designed via spring activation to apply the brakes to the stockchaser/order picker.

In the instant case, Zeek argues that Taylor-Dunn should have foreseen that the linkage and foot treadle would have to eventually be replaced. The evidence shows that Taylor-Dunn did foresee this occurrence and included the following instructions for proper installation of a new linkage and foot treadle in the owner's manual of the stockchaser:
> 3. Position and hold the speed control arm so that the speed control J-Hook is in full contact with the high speed power bar.
> 4. Position and hold the treadle so that it is horizontal or pitched slightly forward or horizontal.
> 5. With the speed control J-Hook and treadle positioned as indicated in Steps 3 & 4, place the front end of the bar in proper relation to the speed control arm, and match drill a 3/8 diameter hole in the connecting bar to mate with the holes at the bottom of the speed control arm.

Dr. Huston testified that Taylor-Dunn should have pre-drilled the holes which were explained in step 5, stating: "I feel that's not an adequate way to do it; that hole should be pre-drilled so that you wouldn't have the opportunity then for procedural error attaching this then to the rocker pedal and the rest of the linkage."

As the party moving for summary judgment, Taylor-Dunn set forth evidence by way of deposition testimony that the installation of the treadle pedal was not done in accordance with the manufacturer's recommendation since the treadle was misaligned with the linkage permitting the linkage to go below the floorboard. Taylor-Dunn asserted in its motion for summary judgment that the proximate cause of Zeek's injury was the faulty repair/improper alteration of the product by Hamilton-Stephens. Furthermore, Zeek's own expert, Dr. Huston, stated that "[t]here was a procedural error as to where they drilled the hole."

*4 In *Temple v. Wean* (1977), 50 Ohio St.2d 317, 364 N.E.2d 267, the Supreme Court held that where there was evidence of a substantial change in a product, and there was no evidence tending to prove that the product was defectively designed when manufactured, a directed verdict was proper.

Under the *Dresher* analysis, it is clear that Taylor-Dunn has met their burden of specifically pointing to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that Taylor-Dunn was not the proximate cause of Zeek's accident. The burden now shifts to Zeek to set forth specific facts showing that there is a genuine issue for trial.

In response to Taylor-Dunn's motion for summary judgment, Zeek filed a memorandum in opposition asserting that the stockchaser was defectively designed because the holes should have been pre-drilled and that the stockchaser was not equipped with the appropriate guarding. However, Zeek's own expert, Dr. Huston, testified that it was the modification by Hamilton-Stephens which permitted the lip of the treadle pedal to drop by two or three inches, allowing Zeek's foot to become caught. Accordingly, the trial court properly found that Zeek had not presented any evidence which proved that Taylor-Dunn negligently designed the stockchaser. Appellant's first assignment of error is not well taken and is overruled.
> Assignment of Error No. 2:
> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS REASONABLE MINDS COULD CONCLUDE THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE STOCKCHASER WAS DEFECTIVE DUE TO INADEQUATE WARNINGS AND/OR INSTRUCTIONS PURSUANT TO O.R.C. 2307.76.

In determining whether there exists a duty to warn, the key issue is the foreseeability of the injury. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. "The test for foreseeability is whether a reasonably prudent person would have anticipated the injury."*Id.* In the instant case, the critical issue is whether a reasonably prudent manufacturer would anticipate the likelihood of injury resulting from an improper repair. Zeek claims that Taylor-Dunn failed to instruct its customers to use only Taylor-Dunn parts

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d  
(Cite as: 1998 WL 372418 (Ohio App. 12 Dist.))

Page 4

in their repairs and failed to warn its customers of the danger of not using Taylor-Dunn parts for repairs. This argument fails on several levels.

Zeek's expert witness, Dr. Huston, testified that it was not critical to use Taylor-Dunn parts in order to repair the stockchaser. Dr. Huston stated that "I don't believe that it's critical that you use Taylor-Dunn parts. I believe that it's critical that parts be used such that the linkage be done correctly." Furthermore, Zeek has presented no evidence that Taylor-Dunn was under a duty to provide a warning that negligent repair of its products may result in harm. The factors to be considered in determining the foreseeability of risk are delineated in R.C. 2307.75(B) as follows:

*5 (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that the design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which the design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.

We find that faulty repair of a product is not reasonably foreseeable pursuant to R.C. 2307.75(B). The instruction manual provided with the stockchaser specifically set forth the proper repair procedure. Jon Gribble, a professional engineer employed by Taylor-Dunn, testified that "I believe this rod was installed not per instruction from the manual which allowed the treadle to travel further down which in turn allowed Mr. Zeek to get his foot stuck and not allow the brake to come back on." This court cannot find that Taylor-Dunn was under a duty to warn of the consequences of a faulty repair performed by Hamilton-Stephens. Accordingly, Zeek's second assignment of error is not well taken and is overruled.

Assignment of Error No. 3:  
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS REASONABLE MINDS COULD CONCLUDE THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE STOCKCHASER WAS NOT SUBSTANTIALLY MODIFIED WITHIN THE MEANING OF O.R.C. 2307.75.

Zeek contends that the faulty repair made by Hamilton-Stephens was not a "substantial product modification" and therefore, Taylor-Dunn is not relieved from liability. We find this argument to be not well-taken. In *Temple v. Wean,* 50 Ohio St.2d 317, 364 N.E.2d 267, the Supreme Court held:

One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property if: (a) the seller is engaged in the business of selling such product and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

In the instant case, there is no dispute that Hamilton-Stephens performed a faulty repair which resulted in the injuries to Zeek. It is well settled that a substantial alteration subsequent to the manufacture and sale of the product will relieve the manufacturer from liability and will support summary judgment in favor of the manufacturer. *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App.3d 28, 30-31, 534 N.E.2d 855. Furthermore, in *Kobza v. General Motors Corp.* (1989), 63 Ohio App.3d 742, 745, 580 N.E.2d 47, the court stated:

*6 [A] claim for strict liability in tort cannot be maintained if there has been a material alteration to the defective product once it has left the manufacturer's control, and if the material alteration significantly contributed to the plaintiff's injury. (Citations omitted.) * * * Substantial change is defined as any change which increases the likelihood of malfunction which is the proximate cause of the harm complained of, and which is independent of the expected and intended use to which the product is put.

We find that the faulty repair made to the stockchaser by Hamilton-Stephens is a substantial change which relieves Taylor-Dunn from liability. We disagree with Zeek that there exists a question of fact which precludes summary judgment. It is uncontroverted that Hamilton-Stephens made a repair to the stockchaser which was the proximate cause of Zeek's injuries. The repair was independent

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 1998 WL 372418 (Ohio App. 12 Dist.))

Page 5

of the expected and intended use of the stockchaser as manufactured by Taylor-Dunn. Accordingly, since Hamilton-Stephens substantially altered the stockchaser by misaligning the linkage, summary judgment was properly granted. Zeek's third assignment of error is not well taken and is overruled.

> Assignment of Error No. 4:
> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANT, TAYLOR- DUNN, FOR THE REASON THERE WERE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE DEFENDANT-MANUFACTURER, TAYLOR-DUNN, WAS NEGLIGENT.

Zeek asserts that even if all of his product liability claims against Taylor- Dunn fail, his claim of negligence should survive. Even if we were to assume, *arguendo,* that Taylor-Dunn was negligent, in determining whether an intervening cause breaks the causal chain in a negligence action, courts consider whether the intervening cause was reasonably foreseeable by the party guilty of the negligence. *Hitch v. Ohio Dept. of Mental Health* (1996), 114 Ohio App.3d 229, 243, 683 N.E.2d 38. We have already held that Hamilton-Stephens faulty repair was a substantial change which acts as an intervening and superseding cause. Accordingly, summary judgment was properly granted as to the negligence claim against Taylor-Dunn. Appellant's fourth assignment of error is overruled.

Judgment affirmed.

YOUNG, P.J., and KOEHLER, J., concur.

1998 WL 372418 (Ohio App. 12 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works