IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARL G. SIMPSON AND BONNIE REED
SIMPSON, CO-ADMINISTRATORS OF          CASE NO.:  1:00-cv-14
THE ESTATE OF CARL D. SIMPSON

     PLAINTIFFS                         JUDGE BERTELSMAN

VS.

NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA

     DEFENDANT
_____

*PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT*
*AND MOTION FOR SUMMARY JUDGMENT*

Now come Plaintiffs, by and through counsel, moving the Court for Declaratory Judgment on the issue of insurance coverage as to the policy issued by Defendant National Union to Intermet Corporation. Further, Plaintiffs move for summary judgment on the issue of damages Plaintiffs are entitled pursuant to a judgment entered against Defendant National Union's insured, Intermet Corporation.

**INTRODUCTION**

Prior to trial, a settlement was achieved between Plaintiffs and Intermet Corporation (hereinafter referred to as "Intermet"). As part of the settlement with Intermet, Plaintiffs received an assignment to pursue this claim for insurance coverage against National Union Fire Insurance of PA, (hereinafter referred to as "National Union".) A copy of the Settlement Agreement with Intermet is attached as "Exhibit 1". National Union provided an excess coverage policy (umbrella) to Intermet. A copy of said policy is attached

hereto as "Exhibit 2".  National Union's policy was to provide excess coverage over the $1,000,000.00 policy provided by Liberty Insurance Co.  Liberty Insurance Co.'s coverage is identified in National Union's policy under the "SCHEDULE OF UNDERLYING INSURANCE".

## STATEMENT OF FACTS

Decedent, Carl D. Simpson, was employed by Intermet at its Ironton Iron, Inc. plant in Ironton, Ohio.  For more than four (4) years prior to his death, Mr. Simpson was an operator and/or helper on a mold-manufacturing machine called a Sutter machine.

Decedent, Carl D. Simpson, was the helper on one of the Sutter machines on September 21, 1999.  The Sutter machines inject a sand and resin mixture into a mold to be later filled with iron to create the I-beams, which are the end product used in automotive manufacturing.  Numerous times each shift, the injection ports in the molds would become clogged and require the operator and/or helper to enter into the pinch-points of the Sutter machine to remove the clog, which the employees called stickers.  It was during one of these sticker removal procedures that Mr. Simpson became trapped within one of the Sutter's pinch points and Mr. Simpson was crushed, which resulted in his death four (4) hours later.

While Intermet disputed some allegations of Plaintiffs' case, Intermet obviously acknowledged the strength and potential exposure of the case as filed by the Plaintiffs and sought a reasonable settlement.

Though notice of the claim was provided to National

Union, the insurer denied coverage and refused to participate in the settlement and/or further defense of the case against its insured, Intermet. Such failure has precluded National Union from now arguing whether the facts met the Ohio's employer's intentional tort exception to the immunity provided in the Ohio Workers' Compensation Act. The question now before the Court is whether National Union's policy provides coverage for a claim based on Ohio's employers' intentional tort claim. Once the Court has determined the coverage issue in the affirmative, Plaintiffs are also seeking the Court enter a Judgment against National Union for the unpaid portion of Plaintiffs' Judgment against Intermet.

### *LAW AND ARGUMENT*

**I.    CHOICE OF LAW**

This case was commenced in Ohio and Ohio's substantive law applies to this case. <u>Klaxon Co. v. Stentor Electric Mfg.</u>, 313 U.S. 487, 496 (1941). Ohio has adopted the approach of the Restatement (Second) of Conflict of Laws. <u>Saglioccolo v. Eagle Ins. Co.</u>, 112 F.3d 226, 230 n.3 (6th Cir. 1997); <u>Lewis v. Steinreich</u>, 652 N.E.2d 981, 984'85 (Ohio 1995). Accordingly, this court should determine which state has the most significant contacts. *See <u>Saglioccolo</u>, 112 F.3d at 230 n.3; <u>Lewis</u>, 652 N.E.2d at 984'85*[1].

---

[1] Restatement, <u>Section 188</u>, enumerates factors that courts should consider in the absence of a choice of law provision. The Ohio Supreme Court expressly adopted <u>Section 188</u> in <u>Gries Sports Ent., Inc. v Modell</u>, 15 Ohio

In this case, Plaintiffs are Ohio residents; the decedent was an Ohio resident working in a foundry in Ohio and was killed in Ohio.  National Union's policy is silent as to a choice of law provision.  Therefore, Ohio law applies to this action.

## II.    OHIO'S EMPLOYER INTENTIONAL TORT LIABILITY

The Ohio Workers' Compensation Act significantly limits the rights to employees and/or their heirs from suing employers for injuries sustained in the workplace.  Under Ohio Revised Code Section 4123.74, employers such as Intermet that comply with Section 4123.35 of the Revised Code "shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition. . ." O.R.C. §4123.74.

An exception exists from the immunity provided to Intermet under Section 4123.74 for injuries caused by an employer's intentional tort.

Currently, under Ohio law, to establish an intentional tort claim Plaintiffs must establish:  (1) knowledge by employers of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by employers that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will

St.3d 284, 473 N.E.2d 807 (1984), *syllabus*.   See also, Ohayon v. Safeco Ins. Co. of Illinois, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001).

be a substantial certainty; and (3) that the employer under such circumstances and with such knowledge did act to require the employee to continue to perform the dangerous task. <u>Fyffe v. Jeno's Inc.</u>, 50 Ohio St.3d 115, 570 N.E.2d 1108 (1991) (syllabus).

The law first changed in 1982 when the Ohio Supreme Court held employees could sue employers for intentional torts. <u>Blankenship v. Cincinnati Milacron Chemicals, Inc.</u>, 69 Ohio St.2d 608 (1982). As a result of the change in the law, insurance policies covering injuries sustained in the scope and course of one's employment became prolific and were sometimes referred to as "stop-gap coverage" or "employers liability coverage". As Intermet did in this case, many employers began buying insurance policies covering injuries sustained by employees during the course and scope of their employment in an attempt to protect themselves against employer intentional torts. Shortly after writing such policies, insurers began arguing in the Ohio courts that it was against public policy to provide insurance coverage for an employer's direct intent tort. Initially, the Supreme Court found that insurance for intentional torts was against public policy. <u>Wedge Products, Inc. v. Hartford Equity Sales Co.</u> 31 Ohio St.3d 65, 509 N.E.2d 74 (1987). However, the Ohio Supreme Court's Decision in <u>Harasyn v. Normandy Metals, Inc.</u>, 49 Ohio St.3d 173, 551 N.E.2d 962 (1990), found a distinction existed between "direct intent" intentional torts and "substantially certain" intentional torts. The applicable portions of the policy analyzed in <u>Harasyn</u> also contained the definition of "occurrence" nearly identical to the one at

issue in this case. Ultimately, Harasyn, in addition defined the distinction between "direct intent" and "substantially certain" intentional torts and recognized that the policy in Wedge Products specifically "*excluded* coverage for claims by employees arising out the course of their employment." Id. at 178. The Harasyn Court concluded "public policy does not prohibit an employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with the knowledge that the injury was substantially certain to occur." Id. (syllabus).

In Physicians Ins. Co. of Ohio v. Swanson, 58 Ohio St.3d 189, 569 N.E.2d 906 (1991), the Supreme Court held that the purpose of "expected or intended" clauses is to "prevent individuals from purchasing insurance as a shield for their anticipated intentional conduct," not to foreclose coverage for claims sounding in employer intentional tort.

Afterwards, some confusion was created in Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 34, 665 N.E.2d 1115 (1996), when the Ohio Supreme Court again addressed similar issues. In Gearing, the Ohio Supreme Court appeared to have changed its stance on intentional tort coverage in insurance policies, moving away from Harasyn. However, in 1996, after the Gearing decision, the Ohio Supreme Court, after accepting an appeal in Miller v. Midwestern Indemn. Co. (Feb. 23, 1996), Montgomery App. No. 15360, 1996 WL 397450, copy attached hereto as "Exhibit 3", the Ohio Supreme Court ultimately dismissed the Miller appeal and reiterated that the controlling law was stated in Harasyn, *supra*. Miller v. Midwestern Indemn. Co.,

77 Ohio St.3d 1261, 674 N.E.2d 367 (1997). The Court found that, although it was against public policy to insure against "direct intent" torts, it was not against Ohio public policy to insure against "substantially certain" employer intentional torts. Id.

Most recently, the Ohio Supreme Court again examined the issue of whether substantially certain intentional torts are barred by exclusions in insurance policies or Ohio public policy in Penn Traffic Co. v. AIU Ins. Co., 99 Ohio St.3d 227, 790 N.E.2d 1199 (2003). As in this case, Penn Traffic involved an injury to an employee arising out of an Ohio substantial certainty intentional tort and whether this tort was covered by either of two separate insurance policies that had been issued to the employer. Id. One of the insurance policies was a commercial general liability policy that contained a coverage enhancement endorsement. Id. In additional to the commercial general liability policy containing an exclusion for injury to employees arising out of or in the course of employment, the endorsement excluded coverage for injury "expected or intended from the standpoint of the insured," specially excluding "any liability for acts committed by or at the direction of an insured in which the act is substantially certain to cause 'bodily injury.'" Id. (emphasis added). The court read the endorsement in conjunction with the commercial general liability policy provisions. Id. Pointing to the commercial general liability policy provision that excluded injuries arising out of the course of employment, the court determined that the policy did not provide coverage for an employer's liability for

substantial certainty intentional torts.  _Id._

      The second insurance policy at issue in _Penn Traffic_ was an excess umbrella policy that provided the injury had to be caused by an "occurrence", which the policy defined as "an event, including continuous and repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the insured." _Id._  The Ohio Supreme Court held that the genuine issue of material fact remained as to whether the substantial certainty intentional tort was covered by the umbrella policy and remanded the case to the trial court.  _Id._

      Since _Penn Traffic_, the Ohio appellate courts have addressed the issue a few times.  In _Talbert v. Continental Cas. Co.,_ 157 Ohio App.3d 469 (2004), the Second District Court of Appeals examined a set of facts nearly identical to the one in this case.  The _Talbert_ Court also provides an extensive history of the employer's liability insurance coverage issues.  In _Talbert_, the employer had purchased employer's liability coverage.  The insurer in _Talbert_ argued that the injury to the employee was a result of a substantially certain intentional tort and could not be an "occurrence defined as an accident".  The _Talbert_ Court concluded in Ohio, pursuant to _Harasyn_, the only intentional tort that an employer can insure against without violating Ohio public policy is substantial certainty intentional tort. _Id._ at 478.  The _Talbert_ Court also concluded that the insurer's argument would render the policy illusory.  _Id._  _Talbert_ added, like the courts in _Harasyn_ and _Miller_, "we are not inclined to give the insurance policy a reading that would

render it useless." Id. at 478-479.

The insurer in Talbert also argued that the injury to the employee was not covered by the policy because of the policy's exclusion for "bodily injury intentionally caused" by the insured. The Talbert Court compared the "direct intent" exclusion to be the court's analysis in Swanson, Miller, Gearing, Penn Traffic, and Buckeye (Hereinafter) and concluded that in order for an intentional-tort exclusion to apply, it must be shown that the injury or harm was intended by the insured. *See:* Buckeye Union Ins. Co. v. New England Ins. Co., 87 Ohio St.3d 280, 720 N.E.2d 495 (1999). In Buckeye, the Supreme Court explained that Gearing was a limited factual-specific case dealing with sexual molestation wherein the court could infer an intent to harm from a criminal act. Ultimately, the Talbert Court reversed the trial court's granting of summary judgment to the insurer and granted

summary judgment on behalf of the employee finding there was insurance coverage, as a result of this employer's intentional tort injury.

However, since _Penn Traffic_, the Tenth District Court of Appeals, has on two occasions placed a significant amount of weight on dicta contained within _Penn Traffic_ to come to different interpretations. _See:_ _Altvater v. Ohio Casualty Ins. Co._, 2003 WL 22077728, 2003-Ohio-4758 (Ohio App. Tenth Dist. 2003), attached hereto as "Exhibit 4" and _Chavis v. AIG Technical Services, Inc.,_ 2005 WL 1177929, 2005-Ohio-2427 (Ohio App. Tenth Dist. 2005), attached hereto as "Exhibit 5".

In _Altvater_, the Tenth Appellate District analyzed commercial umbrella liability policy issued to an employer. Although the policy analyzed by the court in _Altvater_ contained an exclusion for injuries arising out of or in the course of employment, the _Altvater_ Court rather chose the "expected or intended" exclusions to preclude coverage to an injured employee. The _Altvater_ decision is in line with _Penn Traffic_ in holding "that an insurance policy that contains an exclusion from **coverage** for bodily injury to an employee arising out of or in the course of employment does not provide **coverage** for an employer's liability for substantial-certainty **intentional torts**." _Altvater_ _citing_ _Penn Traffic_ at 42, 790 N.E.2d 199. However, where the Tenth District Court of Appeals runs afoul with _Penn Traffic_ is in its conclusion that the Ohio Supreme Court's _Penn Traffic_ decision precludes coverage to employer intentional torts when a policy contains an exclusion for "expected or intended" injury. _Altvater_ appears to take the portion of dicta contained in _Penn Traffic_

when the Supreme Court quoted from Buckeye, at 289, 720 N.E.2d 495 (Cook, J., concurring in judgment only), "[w]here substantial certainty exists, intent to harm will be inferred as a matter of law." Based upon this statement contained in Penn Traffic, Altvater has apparently chosen to eliminate coverage with the "expected or intended" language within the policy. However, this flies in the face of the Supreme Court's ultimate decision when it remanded a coverage issue to the trial court with a policy containing the "expected or intended" language involving an employer's intentional tort action.

The Tenth District has again solidified their misapplication of Penn Traffic more recently in Chavis v. AIG Technical Services, Inc., *supra,* see "Exhibit 5".

Unbeknownst to the Tenth District Court of Appeals, other jurisdictions have appreciated the Penn Traffic decision for the ultimate conclusion in that the purpose of stop-gap coverage is to overcome the workers' compensation employee exclusions in certain situations, thereby providing coverage

to an employer for injuries to its employee. *See: Caliber One Indemnity Co. v. O & M Construction Co.*, 2004 WL 2538646 (S.D. Ind. 2004), attached hereto as "Exhibit 6".

### i. National Union Policy

The relevant portion of the National Union policy reads identical to the policy in Penn Traffic, which the Ohio Supreme Court remanded. The relevant portion of National Union policy reads as follows:

**I.    Coverage**

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury. . .** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.

> \*            \*            \*            \*

> An Occurrence is defined to mean:

> 1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

> \*            \*            \*            \*

**V.    EXCLUSIONS**

> This insurance does not apply to:

> \*            \*            \*            \*

> O. **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the

Insured.

        *        *        *        *

Since National Union's commercial umbrella policy also lists Liberty Mutual's employer liability policy under its "SCHEDULE OF UNDERLYING INSURANCE", it is also important that a brief analysis of the Liberty Mutual policy take place.  Most obvious in the Liberty Mutual policy is the caption, which reads "Excess Insurance Policy for Self-Insurer of Workers' Compensation and Employers Liability".  Liberty Mutual policy attached hereto as "Exhibit 7".  The relevant portion of the Employers Liability Endorsement reads:

A.  How This Insurance Applies

This insurance applies to bodily injury by accident or bodily injury by disease.  Bodily injury includes resulting death.

1.  The bodily injury must be sustained by an employee. . .

2.  The bodily injury must occur in the course of employment. . .

  *        *         *         *        *

The Liberty Mutual policy also has similar language standard in all insurance policies regarding intentional torts such as:

C.  Exclusions

  *        *         *         *        *

2.  any injury intentionally caused or aggravated by you.

  *        *         *         *        *

As noted previously, Liberty Mutual has paid its policy

limits to the Plaintiffs in this case.

National Union may argue that its policy failed to contain such an endorsement that would provide "stop-gap" coverage. However, the fact cannot be overlooked that the National Union policy is excess to the coverages as provided by the Liberty Mutual policy and identified in the "SCHEDULE OF UNDERLYING INSURANCE". Further, no such Endorsement is required pursuant to the National Union policy as coverage for Ohio's intentional tort is not excluded. Both policies contain similar language as to the exclusions related to injury intentionally caused or aggravated by the insured. It is clear in the Liberty Mutual policy, coverage is provided for injuries occurring during the course and scope of employment. Further, the National Union policy does not contain an exclusion for injury or death occurring within the course and scope of employment.

Also of importance in determining coverage, Item 2 of the Declaration Sheet indicates the policy period was from November 1, 1998 to November 1, 1999. Carl D. Simpson was killed on September 21, 1999. Further, the retention amount for this claim has been satisfied by the Plaintiffs holding an allowed unsecured, non-priority claim against Ironton Iron's bankrupt estate in the amount of $25,000.00. This method of satisfying the remaining retention amount under the primary carrier, Liberty Mutual, was also done in an identical fashion under Paragraph 2.4 of the parties' Amended and Restated Settlement Agreement and Release.

The remaining Judgment should be satisfied by the commercial umbrella policy and National Union is also within the

limits of insurance as set forth under Item 3 of the Declaration Page.

An objective reading of Penn Traffic should persuade this Court that the National Union policy at issue failed to provide an exclusion to which the Ohio Supreme Court has denied coverage to injured employees. Such a conclusion is also supported by Talbert's application of Penn Traffic. As for the Tenth District's mishandling of this issue in Altvater and Chavis, *supra,* this Court is obligated to apply the law from the highest court in Ohio and follow the holdings in Penn Traffic. Specifically, this Court must apply the substantive law of Ohio "in accordance with the then-controlling decision of the highest court in the State." Imperial Hotels Corp. v. Dore, 257 F.3d 615, 620 (6th Cir. 2001) (quoting Pedigo v. UNUM Life Ins. Co., 145 F.3d 804, 808 (6th Cir. 1998).

Additional facts that would support coverage in this case can be found in the Affidavit by Alan Miller, Vice President and General Counsel for the insured, Intermet. The employment situation which ultimately caused Mr. Simpson's death was a continuous and repeated exposure to a manufacturing process which resulted in fatal injury neither expected nor intended by Intermet Corporation. (Paragraphs 3, 4, and 5 of Alan Miller Affidavit attached hereto as "Exhibit 8"). This sworn statement, in addition to policy language identical to that which the Supreme Court in Penn Traffic remanded, creates coverage, as a matter of law, as to the claim set forth herein. Finally, Intermet's reasonable expectation supports coverage of this claim. (See Paragraph 6 of "Exhibit 8").

Prior to Penn Traffic, appellate courts would typically

not require general liability insurance polices to provide coverage when the policy excluded liability for claims for bodily injury to an employee of the insured arising out of or in the course of performing duties related to the conduct of the insured's business. See, e.g., <u>Midwestern Indemnity Company v. Savage</u>, 149 Ohio App.3d 596, 778 N.E.2d 141 (2002). To eliminate any potential ambiguity, National Union could have easily included an exclusion similar to the one found in the case of <u>The Cincinnati Insurance Company v. Tauro Brothers Trucking Co.</u>, 2002 WL 1270030 (Ohio App. 11 Dist.), 2002-Ohio-2958, which contains an example of an exclusion that clearly outlines the <u>Fry</u> standard. A copy of <u>The Cincinnati Insurance Company v. Tauro Brothers Trucking Co.</u> is attached hereto as "Exhibit 9". The exclusion in <u>Tauro Bros.</u> reads as follows:

> **Coverage** D, the Ohio liability **Coverage** Endorsement, modifies Section I, *supra*, as follows:
>
> *        *          *          *
>
> 2. Exclusions:
>
> "This **Insurance** does not apply to:
>
> (h) 'bodily injury' expected or intended from the standpoint of the **insured.** This exclusion includes but is not limited to:
>
>> (1) any liability for acts committed by or at the direction of an **insured** with the deliberate **intent** to injure; and
>>
>> (2) any liability for acts committed at the direct of an **insured** in which the act is substantially certain to cause 'bodily injury.' For purposes of this **insurance**, an act is substantially certain to cause 'bodily injury' when all three of the following conditions are met:
>>
>>> *(a) an **insured** knows of the existence of a dangerous process, procedure, instrumentality or condition*

16

*within its business operation.*

    *(b)    an **insured** knows that if an employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be substantially certain; and*
    *(c)    an **insured** under such circumstances and with such knowledge does, act to require the employee to continue to perform the dangerous task; . . ."*

      *            *            *            *

[Italics not in original and is emphasized herein to reflect the current requirements for an Ohio employers intentional tort seen in <u>Fry, supra.</u>]

Obviously, by the policy in <u>Tauro Bros.</u> setting forth the <u>Fry</u> standard, the Eleventh Appellate District concluded the exclusion of employer intentional torts from insurance coverage is effective when the exclusionary language is clear and unambiguous.  Further, it was the <u>Fry</u> exclusionary language, in addition to the exclusion for employees of the insured arising out of or in the course of his or her employment, which the <u>Penn Traffic</u> Court determined the enhancement endorsement expressly excludes the coverage for a substantial certainty intentional tort.  <u>Penn Traffic</u>, 99 Ohio St.3d at 231-32.

In Ohio, insurance contracts must be construed under the same rules as other written contracts.  <u>Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp.</u>, 16 F.3d 684 (6th Cir. 1994) (citations omitted).  The intent of parties to a contract is presumed to reside in the language of the contract itself.  In interpreting these policies, the court must look first and primarily to the express terms and conditions found on the face of the policies.  <u>Id.</u>  See also: <u>Universal Underwriters Ins. Co. v. Shuff</u>, 67 Ohio St.2d 172, 423 N.E.2d 417 (1981);

Skivolocki v. East Ohio Gas Co., 38 Ohio St.2d 244, 247, 313 N.E.2d 374 (1974).

Ohio case law also follows the central cannon of insurance contract construction wherein language "reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." U. S. Fidelity & Guar. Co. v. Lightning Rod Mut. Ins. Co., 80 Ohio St.3d 584, 586, 687 N.E.2d 717 (1987); State Farm Mut. Ins. Co. v. Blevins, 49 Ohio St.3d 165, 551 N.E.2d 955 (1990). Here, National Union has failed to include a specific exclusion such as that found in Tauro Bros. (See "Exhibit 9") and the first policy analyzed in Penn Traffic. National Union has also failed to provide an exclusion for coverage "in the course and scope of employment". As a result, coverage should be afforded to these claims as a matter of law.

### ii. National Union is Bound by the Amended and Restated Settlement Agreement and Release and Subsequent Judgment Entered by this Court.

While Intermet's defense was provided through and by the primary policy with Liberty Mutual, National Union refused to participate at any level in the settlement process and unjustifiably refused to further defend and/or indemnify Intermet. This refusal precludes any attack against the settlement between Plaintiffs and Intermet. The Ohio Supreme Court held in Sanderson v. Ohio Edison Co., 69 Ohio St.3d 582, 586, 635 N.E.2d, 19 (1994), as follows:

> [W]here an insurer unjustifiably refused to
> defend an action, leaving the insureds to
> fend for themselves, the insureds are at
> liberty to make a reasonable settlement
> without prejudice to their rights under the

> contract. By abandoning the insureds to
> their own devices in resolving the suit, the
> insurer voluntarily forgoes the right to
> control the litigation and, consequently,
> will not be heard to complain concerning the
> resolution of the action in the absence of a
> showing of fraud, even if liability is
> conceded by the insureds as a part of
> settlement negotiations.

National Union could have just as easily denied coverage, but retained some obligation to defend Intermet, thus making _Sanderson_ inapplicable. See, e.g., _Romstadt v. Allstate Ins. Co._, 59 F.3d 608, 613-614 (1995), "[w]here the insurer did not refuse to defend its insured, we hold that the rule in _Sanderson_ does not apply".

In _Willoughby Hills v. Cincinnati Ins. Co._, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), the Ohio Supreme Court stated:

> Where insurer's duty to defend is not
> apparent from the pleadings in the case
> against the insured, but the allegations do
> state a claim which is potentially or
> arguably within policy coverage, or there is
> some doubt as to whether a theory of recovery
> within policy coverage has been pleaded, the
> insurer must accept the defense of the claim.

_Id._ at syllabus.

Therefore, National Union's refusal to participate either in the defense and/or the indemnification of its insured precludes National Union from now arguing the reasonableness of the settlement as embodied in Settlement between Plaintiffs and Intermet. (See Exhibit 1.)

**III.    DAMGES**

Judgment in the amount of $3,500,000.00 has been entered in favor of Plaintiffs. (See Docket #121). Further, the retention amount has been met by the $25,000.00 allowed unsecured, nonpriority claim against Ironton Iron's bankrupt

estate.    (See  Paragraph  2.4  of  the  Amended  and  Restated
Settlement  Agreement  and  Release  attached  hereto  as  "Exhibit
1").  Plaintiffs  are  entitled  to  collect  the  difference  between
the  Judgment  amount  and  the  total  amount  received  pursuant  to
Liberty  Mutual's  policy  and  the  allowed  retention  amount  of
$275,000.00.

Therefore,  Plaintiffs  are  entitled  to  Judgment  against
National  Union  in  the  amount  of  Two  Million  Two  Hundred  Twenty-
Five  Thousand  Dollars  ($2,225,000.00).

**Respectfully Submitted,**

LAMBERT, McWHORTER & BOWLING

/s/ D. Scott Bowling
RANDALL L. LAMBERT (0017987)
D. SCOTT BOWLING (0067617)
ATTORNEY FOR PLAINTIFFS
P. O. BOX 725
IRONTON, OH 45638
sbowling@lmb-attorneys.com
740-532-4333
740-532-7341 fax

### _CERTIFICATE OF SERVICE_

I  hereby  certify  that  a  copy  of  the  foregoing  Motion
was  forwarded  on  this  the  _28th_  day  of  July,  2005  by  electronic
filing  to  the  United  States  District  Court.    Notice  of  this
filing  will  be  sent  to  all  parties  by  operation  of  the  Court's
electronic  filing  system.    Parties  may  access  this  filing
through  the  Court's  system.    Exhibits  to  this  motion  will
filed  manually  with  the  Court  and  a  copy  of  this  motion  with
exhibits  attached  will  be  mailed  on  this  day  to  Samuel  M.
Pipino,  Attorney  for  Defendant  National  Union,  at  300  Spruce
Street,  Floor  One,  Columbus,  OH  43215-1173.

LAMBERT, McWHORTER & BOWLING

/s/ D. Scott Bowling
RANDALL L. LAMBERT (0017987)
D. SCOTT BOWLING (0067617)
ATTORNEY FOR PLAINTIFFS