**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Carl G. Simpson and Bonnie Reed Simpson, Co-Administrators of the Estate of Carl D. Simpson, | : | |
| | : | Case No. 1:00-CV-14 |
| Plaintiffs, | : | Judge Bertelsman |
| -vs- | : | |
| National Union Fire Insurance Company Of Pittsburgh, PA, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT & DECLARATORY RELIEF**

**NOW COMES** Defendant, National Union Fire Insurance Company of Pittsburgh, PA ["National Union"], and pursuant to Rule 56 of the Federal Rules of Civil Procedure, opposes the Motion for Summary Judgment of Plaintiffs, Carl G. Simpson, et al., and further respectfully moves this Court for Summary Judgment in its own favor, as there are no genuine issues of material fact; and National Union is entitled to judgment as a matter of law. This Motion is based on pleadings and exhibits filed with the Court, and an accompanying *Memorandum in Support*.

        Respectfully submitted,

        **WILES, BOYLE, BURKHOLDER**
        **& BRINGARDNER CO., L.P.A.**


        s/ Samuel M. Pipino
        Samuel M. Pipino (0061634)
        300 Spruce Street, Floor One
        Columbus, Ohio 43215
        (614) 221-5216
        FAX: (614) 221-4541
        *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, PA*

## MEMORANDUM IN SUPPORT

**I. INTRODUCTION & FACTS**

As currently postured, this case involves a *Supplemental Complaint* brought by Plaintiffs, Carl G. Simpson and Bonnie Reed Simpson, Co-Administrators of the Estate of Carl D. Simpson, Deceased ["Plaintiffs"], against National Union. Specifically, Plaintiffs seek indemnity for $2,225,000, part of a $3.5 Million Dollar settlement and assignment of claim(s) previously entered into between Plaintiffs and National Union's insured, Intermet. Plaintiffs now seek declaratory relief on their claim for insurance coverage from National Union, pursuant to a *Motion for Summary Judgment* recently filed with this Court.

National Union opposes the relief requested by Plaintiffs, and asserts it is entitled to Declaratory Relief in its own right by and through a legal determination that no coverage exists for Plaintiffs' claims, pursuant to Rule 57 of the Federal Rules of Civil Procedure ["FRCP"] and 28 U.S.C. §2201. In the instant *Motion for Summary Judgment* under FRCP 56, National Union asks the Court to declare that a *Commercial Umbrella Policy* of insurance issued by National Union to Intermet under Policy No. 701-08-15, effective November 1, 1998 through November

1, 1999 with limits of $30,000,000,[1] does not obligate National Union to indemnify Plaintiffs or provide insurance coverage for the *Settlement Agreement* previously entered into between Plaintiffs and Intermet (and as attached as Exhibit 1 to Plaintiff's *Index of Exhibits*).

Plaintiffs' decedent, Carl D. Simpson, was fatally injured while working at Intermet's foundry in Ironton, Ohio, on September 21, 1999 ["Accident"]. Plaintiffs proceeded to commence this action as a "substantial certainty" employer intentional tort case against Intermet under the three-prong common-law standard set forth by the Ohio Supreme Court in Fyffe v. Jeno's Inc. (1991), 50 Ohio St.3d 115. Intermet in turn provided notice of the lawsuit to its liability insurers, including its excess carrier, National Union. National Union's *Commercial Umbrella Policy* provides in pertinent part as follows:

**I.   COVERAGE**

We will pay on behalf of the insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world." * * *
\*          \*          \*          \*
**H**. Occurrence means:

1.   As respects Bodily Injury or Property Damage, an accident, including
     Continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence.
\*          \*          \*          \*
**EXCLUSIONS**
This insurance does not apply to:
\*          \*          \*          \*
**O.**   Bodily Injury or Property Damage expected or intended from the standpoint of the insured.
\*          \*          \*          \*

---

[1] A copy of the *Policy* has been previously attached to Plaintiffs' *Supplemental Complaint* and *Index of Exhibits (Exhibit 2)*.

3

[*Commercial Umbrella Policy, Insuring Agreements, §1, Coverage, p.1; §IV, Definitions, sub¶H, p.5; and §V, Exclusions, sub¶ O, p. 9*]. The *Commercial Umbrella Policy* does not include any Employer's Liability "Stop Gap" insurance coverage, or any other coverage that provides indemnity for employer intentional tort claims.

Following notice of the claim, National Union (by and through its Claims Administrator, AIG Domestic Claims, Inc., formerly AIG Technical Services, Inc.) denied coverage in written correspondence dated April 3, 2002 [*See Exhibit to National Union's Verified Answers to Interrogatories & Responses to Requests for Documents, attached hereto as Exhibit A*]. Plaintiffs proceeded to prosecute their action against Intermet, culminating in an *Amended and Restated Settlement Agreement and Release* wherein Plaintiffs took an assignment of any claims for insurance coverage under the National Union policy for Intermet, which may be applicable to the Accident.

As maintained in National Union's April 3, 2002 *Coverage Denial Letter*, and set forth further herein, National Union asserts that the *Commercial Umbrella Policy* does not provide coverage or indemnity to Plaintiffs for the *Settlement Agreement* due to the following:[2]

> 1) An employer intentional tort is not an "Occurrence" as defined and required therein; and
> 2) An employer intentional tort is excluded as an injury expected or intended from the standpoint of the insured.

## II. LAW & ARGUMENT

### (A) Standard of Law - Motions for Summary Judgment - Civ.R.56

"Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Plotner v. Swanton Local Board of Education (N.D.

---

[2] In seeking summary judgment on these grounds, National Union does not waive any additional defenses it may have to the claims presented.

Ohio 2000), 85 F.Supp.2d 747, 751 (quoting <u>Celotex Corp. v. Cartrett</u> (1986), 477 U.S. 317, 322). The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Id</u>. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." <u>Id</u>. (quoting <u>Anderson v. Liberty Lobby, Inc.</u> (1986), 477 U.S. 242). Once the burden of production has shifted, the party opposing summary judgment cannot rest upon its pleadings or reassert its previous allegations, but instead it must "present some type of evidentiary material in support of its position." <u>Id</u>. (citing <u>Celotex</u>, 477 U.S. at 324).

### (B) Ohio Law Should Apply to this Declaratory Judgment Action

A federal court in a case arising from diversity of citizenship must apply the choice of law rules of the state in which it sits. <u>Klaxon v. Stentor Electric Manufacturing Co.</u> (1941), 313 U.S. 487. The Ohio Supreme Court has clarified that for insurance coverage disputes, the choice-of-law principles for contract, not tort, under §§187, 188, Restatement of Law 2d, Conflict of Laws, is appropriate. <u>Ohayon v. Safeco Ins. Co.</u> (2001), 91 Ohio St.3d 474. Section 188 of the *Restatement* provides in pertinent part as follows:

> **Law Governing in Absence of Effective Choice by the Parties**
> \*     \*     \*     \*
> (2) In the absence of an effective choice of law by the parties…the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

5

In this case, Plaintiffs and National Union agree that Ohio law should apply to this action insofar as Plaintiffs are Ohio residents; the decedent was an Ohio resident working in a foundry in Ohio at the time of his fatal injuries; and the legal coverage issues derive from an Ohio common-law claim (a "substantial certainty" employer intentional tort).  Accordingly, National Union respectfully submits that Ohio law should be applied in this action.

In considering questions of liability insurance coverage law presented in this action, this Court is bound by the decisions of the highest court in the state, in this case the Ohio Supreme Court.  Ruth v. Bituminous Casualty Corp. (6th Cir. 1970), 427 F.2d 290.  Additionally, for issues not specifically addressed by the Ohio Supreme Court, it is appropriate for this Court to rely upon authority from Ohio appellate decisions.  Kurczi v. Eli Lilly & Co. (6th Cir. 1997), 113 F.3d 1426 [Federal courts sitting in diversity should treat decision of intermediate appellate courts as authoritative, absent a strong showing that the state's highest court would decide the issue differently].

### (C) Plaintiffs' Assignment for an Insurance Claim for Employer Intentional Tort is Not a Covered "Occurrence" under National Union's *Policy,* and is Excluded as "Expected or Intended" Injury.

In this case, National Union's *Commercial Umbrella Policy* requires an "Occurrence" for coverage; excludes "expected or intended injury"; and does *not* contain any "Stop-Gap" endorsements or provisions for employers' liability coverage.  The Ohio Supreme Court has held that under policies with similar definitions, provisions, and exclusions, there is no coverage for a "substantial certainty" employer intentional tort claim.  In the seminal case of Wedge Products v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, injured employees of the insured, Wedge [Pariseau and Walls], filed employer intentional tort claims, for which Wedge sought liability coverage under its policy with its insurer, Hartford.  Hartford had issued only a

6

CGL policy without any "Employer's Liability Endorsement" [ELE] or similar coverage. Hartford's policy contained the same standard CGL definition of occurrence as an "accident" as in the policy here, as well as, again as here, exclusions relating to injury "expected or intended" from the standpoint of the insured; exclusions for liability arising from obligations under Workers' Compensation law; and exclusions for bodily injury to employees in the course and scope of employment. Hartford denied a duty to defend or indemnify Wedge on this basis, and a declaratory judgment action ensued. In agreeing that Hartford did *not* have any obligations to defend or indemnify its insured under a CGL policy for employer intentional tort claims, the Ohio Supreme Court held:

> Under the [Jones v. V.I.P. Development Co. (1984), 15 Ohio St.3d 90] test an intentional tort by Wedge must necessarily involve either an intent to injure or a belief that injury is substantially certain to occur. Clearly, no coverage is provided if Wedge intended to injure Pariseau and Walls. More importantly, we are unable to see how Wedge could have committed any acts with the belief that Pariseau or Walls were substantially certain to be injured, yet not have 'expected' such injuries to occur.
> \*    \*    \*    \*
> Additionally, the insurance contract in the case sub judice provides no coverage for claims by the employees which arise out of and in the course of their employment. By this provision, a claim which does not rise to the level of intentional tort is excluded. Because there is no possibility of coverage under the policy for either the actions filed against Wedge, it follows that Hartford has no duty to defend those actions.

Id. At 67. Similarly in the case of New Hampshire Ins. Group v. Frost (1995), 110 Ohio App.3d 514, the Eighth District Court of Appeals confirmed that it would follow Wedge Products as the law of Ohio concerning basic CGL or Umbrella liability coverage for employer intentional tort claims. Citing the three (3) prong common law intentional tort standard under Jones, supra, the Cuyahoga County Court of Appeals held:

> Thus, while desire to cause consequences is imputed, actual knowledge that consequences are substantially certain is required.* * * Consequently, where an employer is the insured, a finding of intent for purposes of employer intentional tort necessarily means that the insured 'expected or intended' the injuries.
> \*    \*    \*    \*

7

> We hold that, where an employer is the insured, an intentional tort committed by the employer against an employee results in injuries 'expected or intended from the standpoint of the insured.'

Id. At 1190-91. Thus, the court concluded that New Hampshire Insurance Group had no obligation to defend or indemnify its insured(s) [Industrial Steeple Jack Co.] for employer intentional tort claims made vis a vis a CGL policy. See also Budacov v. Thomarios Painting Co. (Unreported, decided July 19, 1995), Summit Cty. App. No. 16962, Ninth App. Dist. (Ohio), [*Copy attached, Ex. B,* p. *2] ["In the present case, the language in Northbrook's business umbrella policy is more akin to the general liability policy language in Wedge Products than the specific stop-gap language in Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173[3]. As a result, we find that Harasyn is inapplicable and that Wedge Products is controlling...[the employer's] intentional tort is not an 'accidental happening' for which Northbrook must provide coverage under the business umbrella policy']; Karlen v. Salem Blanking Corp. (Unreported, Decided June 24, 1998), Columbiana Cty. App. Ct. Case No. 96-CO-63 [Seventh App. Dist. (Ohio)] [*Copy attached, Ex. C*] [Applying Wedge and prior 7th District decisions (Westfield Ins. Co. v. Malvern Wood Products, Inc. (Sept. 12, 1994), Carroll App Nos. 633, 634 and Westfield Ins. Co. v. Jarrett Reclamation Services, Inc. (1996), 114 Ohio Spp.3d 492 ) in determining that liability policy issued by Cincinnati Insurance, which contained standard "Occurrence" definition and exclusion for "expected or intended injury," did not provide coverage for employer intentional tort claims].

Indeed, this very issue was directly addressed in a manner favorable to National Union, by a number of decisions from the 10th Appellate District. The first such decision, in Baker v. Aetna Cas. & Sur. Co. (1995), 107 Ohio App.3d 835, involved two (2) policies issued by Aetna

---

[3] Harasyn, which has been cited by Plaintiffs, is inapposite to the instant case, as is discussed, *infra,* pp. 12-13.

to an insured employer (Brookshire).  The first was a primary policy which included "Stop-Gap" coverage without any exclusion for "substantial certainty" torts; the second was an excess umbrella policy that contained <u>no</u> stop-gap endorsement or employers liability coverage.  The court held that while coverage was available under the primary policy, it did not exist under the excess forms.  In finding that an exclusion for "expected or intended bodily injury" in the umbrella policy precluded coverage for an employer intentional tort claim, the Franklin County Court of Appeals held as follows:

> Finally, defendant issued not only the general policy and endorsement already discussed, but also an excess liability, or umbrella policy.  The endorsement modifying the general policy does not purport to modify the umbrella policy.
>
> While the umbrella policy provides coverage for bodily injury caused by an occurrence during the policy period, it contains no reference to claims arising out of or in the course of employment.  Further, the umbrella policy excludes from coverage bodily injury 'expected or intended from the standpoint of the insured.'  Under the analysis employed in *Wedge*, the exclusion for expected or intended injury precludes coverage under the umbrella policy.
>
> For the foregoing reasons, we sustain plaintiff's assignments of error with respect to the general policy and endorsement, but overrule them as to the umbrella policy.

<u>Id</u>. At 845.

Subsequent to <u>Baker</u>, *supra*, the Franklin County Court of Appeals reaffirmed this rationale in cases decided <u>after</u> the Ohio Supreme Court's decision in <u>Penn Traffic v. AIU Ins. Co.</u> (2003), 99 Ohio St.3d 227.  Thus, contrary to Plaintiffs' assertions, <u>Penn Traffic</u> does not signal a departure from the Ohio Supreme Court's decision in <u>Wedge Products</u>, *supra*, but instead continues to follow and apply the <u>Wedge Products</u> Court's precedent.  That precedent established that a standard primary or excess liability insurance policy, which requires an "Occurrence" and excludes coverage for "expected or intended injury," does *not* cover a

9

"substantial certainty" employer intentional tort claim where there is no "Stop-Gap" endorsement or employers' liability coverage included in the policy.

First in this line of post-Penn Traffic decisions was Altvater v. Ohio Cas. Ins. Co. (Unreported, Decided September 9, 2003), Franklin Cty. App. No. 02-AP-422, 10th App. Dist. (Ohio), 2003-Ohio-4758) [*Copy attached in Plaintiffs' Index of Exhibits, Ex. 4*]. In Altvater, the Administrator of a decedent's estate attempted to satisfy a wrongful death judgment, arising from an employer intentional tort, with proceeds from the employer's insurance carriers. Although the employer (Claycraft) had maintained liability insurance (including excess policies) with Ohio Casualty Insurance Company, there were no "Stop-Gap" employers liability endorsements or coverage. As a result, the fatally injured employee's estate obtained a verdict against Claycraft, and then sought indemnity pursuant to a Supplemental Petition filed against Ohio Casualty under R.C. §3929.06.

The court rejected the Administrator's arguments that there was coverage for such a claim under a policy containing an "expected or intended" injury exclusion, citing in support of its decision the Ohio Supreme Court's opinion in Penn Traffic v. AIU Ins. Co. (2003), 99 Ohio St.3d 227. The court stated:

> Although the language in the present policies does not expressly exclude coverage for substantial-certainty employer intentional torts, as did the policy in Penn Traffic, these policies do contain the same proscription against coverage for any bodily injury 'expected or intended.' Thus, we apply the following concepts from Penn Traffic to the present case: (1) where substantial certainty exists, intent to harm will be inferred as a matter of law, and (2) there is no coverage for bodily injury 'expected or intended' from the standpoint of the insured. Because the jury in the current case found Claycraft knew that harm to Robert was substantially certain to occur, and the Ohio Supreme Court held in Penn Traffic that intent to harm will be inferred in substantial-certainty intentional tort cases, it must inferred as a matter of law that Claycraft intended to injure Robert. Therefore, Robert's bodily injury was 'expected and intended' from the standpoint of Claycraft. As Robert's bodily injury was expected and intended, his injury cannot be considered an 'occurrence' under any of the policies presently at issue. Accordingly, because Robert's injury was not an 'occurrence' under any of the policies, there can be

10

no genuine issue remaining as to whether the policies provided insurance coverage for Robert's death. Consequently, summary judgment was proper.

[*p.5*] As demonstrated above, Altvater is directly on point with respect to the instant case, and is fully dispositive of the coverage issues raised in this appeal.

More recently, the 10th District reaffirmed this rationale in Chavis v. AIG Technical Services, Inc. (Unreported, Decided May 19, 2005), Franklin Cty. App. No. 04AP-1019, 2005 WL 1177929, 2005-Ohio-2427 [*Copy attached in Plaintiffs' Index of Exhibits, Ex. 5*]. In that case, the Estate of an employee (Chavis), who was fatally injured in an industrial accident, obtained a consent judgment agreement from the employer (DSI), which carried excess insurance coverage with National Union. The Estate proceeded to file a supplemental petition against National Union, seeking indemnity for that portion of the consent judgment within the carrier's excess limits. Even though the insured's primary carrier provided "Stop-Gap" coverage for employer's liability claims, the National Union excess policy was found not to afford coverage for "substantial certainty" employer intentional tort claims, based upon the excess policy's requirement that there be an "Occurrence," and based as well upon the excess policy's "Expected or Intended Injury" Exclusion. Significant to this analysis was the court's determination that the excess policy did not include any "Stop-Gap" or employer's liability coverage or endorsements. Also deemed significant was the court's proper reading of Penn Traffic as not deviating from the precedent originally set forth by the Ohio Supreme Court in Wedge Products. The court stated:

> The present circumstances are virtually identical to those in Altvater. In the present case, the policy contains the same coverage for an 'occurrence,' which is defined by Section IV(H)(1) as being bodily injury not expected or intended from the standpoint of the insured. Further, as in Altvater, although the employer did not specifically intend to injure the employee, the employer's actions constituted a substantial certainty employer intentional tort. Accordingly, as in Altvater, we must follow in the present case the Ohio Supreme Court's decision in Penn Traffic adopting Justice Cook's concurring opinion in

11

>Buckeye Union and find that, where substantial certainty exists, intent to harm will be inferred as a matter of law. Penn Traffic, at ¶6, quoting Buckeye Union at 289. Although the Ohio Supreme Court did not offer any analysis in Penn Traffic beyond the bare citation to this single sentence in Justice Cook's concurring opinion, we are compelled to follow its mandates. Thus, following our prior determination in Altvater and the Ohio Supreme Court's decision in Penn Traffic, we find that, because DSI's actions constituted a substantial certainty intentional tort, intent to injure must be inferred as a matter of law. Therefore, Chavis' bodily injury was 'expected or intended' from the standpoint of DSI. As Chavis' bodily injury was expected or intended, his injury could not be considered an 'occurrence' under the policy at issue, and there can be no genuine issue remaining as to whether the policy provided insurance coverage for Chavis's death. Consequently, summary judgment in favor of National Union was appropriate. Appellant's assignment of error is overruled.

*Id*. at p. 4.

National Union respectfully submits that the same rationale and result found in Wedge Products, *supra*, is applicable and warranted in the instant case and, further, that Penn Traffic has not departed from this rationale, as has been recognized in subsequent Ohio court decisions including Altvater and Chavis, *supra*. Additionally, the case law argued by Plaintiffs in their *Motion for Summary Judgment* is inapposite. In Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, the Ohio Supreme Court addressed an insurance policy that included "Stop-Gap" employers liability coverage. Because that coverage did not specifically exclude "substantial certainty" employer intentional tort claims, coverage was found to exist. The court reasoned that the insured's purchase of a specific "Stop-Gap" endorsement, for an additional premium, entitled it to coverage absent such a direct "substantial certainty" exclusion. This rationale has been followed by Ohio appellate courts in cases such as The Cincinnati Ins. Co. v. Tauro Bros. Trucking (Unreported, Decided June 7, 2002), Trumbull Cty. App. No. 2001-T-0037, 2002 WL 1270030, 2002-Ohio-2958 [*Plaintiffs' Index of Exhibits, Ex. 9*]; and Talbert v. Continental Cas. Co. (2004), 157 Ohio App.3d 469 (as cited in Plaintiffs' *Motion for Summary Judgment* at page 8).

Yet, absent such a "Stop-Gap" endorsement, no insurance policy with a definition of "Occurrence" like that in the instant case has been found to afford coverage for an injury that was a "substantial certainty." Nor has any subsequent Ohio Supreme Court or appellate decision viewed <u>Harasyn</u> as having overruled or having altered the established precedent of <u>Wedge Products</u>. <u>Harasyn</u> thus fails to support Plaintiffs' claims with respect to "substantial certainty" employer intentional tort claims under the National Union *Policy* presented in the case *sub judice*.

**(D)    The Court Should Hold in Abeyance Consideration of Plaintiffs' Arguments Regarding the Binding Effect of the *Settlement Agreement* and Reasonableness of Damages.**

Plaintiffs' *Motion for Summary Judgment* concludes with brief arguments concerning the binding effect of the *Settlement Agreement* between Plaintiffs and Internet on National Union, and the reasonableness of the damages for which Plaintiffs seek indemnification under National Union's *Policy*. However, it is respectfully submitted that a complete and proper analysis of these issues would require extensive additional discovery by National Union. Furthermore, these issues would be rendered moot in the event that the Court should grant summary judgment in National Union's favor on the paramount issue of whether its *Policy* covers "substantial certainty" employer intentional tort claims. Accordingly, National Union respectfully requests that this Court hold in abeyance any consideration of Plaintiffs' arguments regarding the binding effect of the *Settlement Agreement* and the reasonableness of damages, until such time as the lynchpin issue of insurance coverage is determined.

In the first respect, National Union's *Policy* expressly prohibits any assignment of claims as asserted by Plaintiffs. Under the policy *Conditions, §VI*, the following is provided:

> **H.**    Legal Action Against Us
> There will be no right of action against us under this insurance unless:

13

      1.      You have complied with all the terms of this policy; and
      2.      The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

    \*           \*           \*           \*

**O.**    Transfer of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent. \* \* \*

[*See Policy, Conditions, §VI, ¶s H and O, pp. 13 and 15*]. These are valid and enforceable conditions precedent to coverage under National Union's *Policy*. Plaintiffs are unable to meet these conditions, since there has been neither consent by National Union, nor a judgment against Intermet following a full and complete trial on the merits of Plaintiffs' employer intentional tort claims. Accordingly, Plaintiffs' failure to comply with these conditions further serves to bar coverage for their claims. See Lexington Ins. Co. v. Simkins Industries, Inc. (Fla. 1998), 704 So.2d 1384 [Nonassignment clauses prohibited insured from assigning commercial property insurance policy to mortgagee without insurer's consent and, therefore, precluded mortgagee from recovering for loss of business income]; Pennsylvania Millers Mutual Ins. Co. v. The Commerce Ins. Co. (Mass. 1998), 8 Mass.L.Rptr. 74, 1998 WL 92495 [holding that liability insurance policy provision stating "your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured" was a valid condition precedent to coverage; and that absent written consent of insurer, insured could not validly assign its rights to coverage to a third-party].

Furthermore, any assessment of whether National Union is bound by Plaintiffs' *Settlement Agreement* would require in-depth discovery relating to all aspects of the parties' conduct and communications leading up to, and resulting in the consummation of, that agreement. National Union notes that Plaintiffs' *Settlement Agreement* with Intermet does not

constitute a Consent Decree or Judgment approved by this Honorable Court. Whereas generally a Consent Decree is binding on a liability insurer that has denied coverage absent evidence of fraud or collusion (*See, e.g.,* City of Columbus v. Alden E. Stilson & Assoc. (1993), 90 Ohio App.3d 608; and Midwestern Indemnity Co. v. Laikin (S.D.Ind. 2000), 119 F.Supp.2d 831), this rule has not been applied to unapproved settlement agreements executed between the insured and a third-party tort claimant. At a minimum, National Union would be entitled to explore the basis of the *Settlement Agreement* and to determine whether it was properly reached under all the circumstances presented.

National Union should therefore be properly afforded additional opportunity to investigate the *Settlement Agreement* and its effect, if any, on National Union's obligations under its *Policy*. However, because a finding of no coverage for employer intentional tort claims would render such analysis moot, it is respectfully requested that this Court hold consideration of such further issues in abeyance pending a determination of the "substantial certainty" tort coverage issues.

## CONCLUSION

National Union is entitled to summary judgment because the assignment of the claim for which Plaintiff seeks indemnity, does not involve an "Occurrence" as defined by and required for coverage under the *Policy*. Furthermore, coverage is barred by the exclusion for "expected or intended" injury.

**WHEREFORE,** Defendant National Union Fire Insurance Company of Pittsburgh, PA, respectfully requests that this Court GRANT summary judgment in its favor, on all claims made against it in Plaintiffs' *Supplemental Complaint* and on Defendants' *Counterclaim*.

        Respectfully submitted,

        **WILES, BOYLE, BURKHOLDER**
        **& BRINGARDNER CO., L.P.A.**


        s/ Samuel M. Pipino
        Samuel M. Pipino (0061634)
        300 Spruce Street, Floor One
        Columbus, Ohio 43215
        (614) 221-5216
        FAX: (614) 221-4541
        *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, PA*


## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system and a copy of the foregoing was mailed to the following by regular U.S. Mail:

Randall L. Lambert, Esq.
D. Scott Bowling, Esq.
LAMBERT, McWHORTER & BOWLING
215 South 4th Street
P.O. Box 725
Ironton, Ohio 45638

*Attorney for Plaintiffs*


        s/ Samuel M. Pipino
        Samuel M. Pipino, Esq.

#128617 v1 – AIG 61244