Westlaw.

Not Reported in N.E.2d

Page 1

1995 WL 434411 (Ohio App. 9 Dist.)

(Cite as: 1995 WL 434411 (Ohio App. 9 Dist.))

▷
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Ninth District, Summit County.
Constantin BUDACOV, et al., Appellants,
v.
THOMARIOS PAINTING CO., INC., et al., Appellees.
16962.

July 19, 1995.

Appeal from Judgment Entered in the Common Pleas Court County of Summit, No. 90 02 0490.

John J. McCarthy, Sandra J. Rosenthal & Richard C. Alkire, Cleveland, for appellants, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A.

Steven L. Yashnik, Akron, for appellee, Thomarios Painting Co.

Stanley S. Keller & Phillip A. Kuri, Akron, for appellee, Northbrook Property & Cas. Ins. Co., Keller & Curtin Co., L.P.A.

George Wukovich, Cleveland, for appellants, Julian Kahan & Assoc. Co., L.P.A.

*DECISION AND JOURNAL ENTRY*

REECE, Judge.

\*1 Appellants, Constantin Budacov, Brenda Budacov, and Dumitru Avram, appeal from the trial court's entry of summary judgment finding that Northbrook Property and Casualty Insurance Company (Northbrook) was not contractually obligated to provide liability coverage for an employer intentional tort. We affirm.

On August 26, 1986, Constantin Budacov and Dumitru Avram were seriously injured after falling from a scaffolding while working for Thomarios Painting Company (Thomarios). On February 9, 1990, the appellants instituted this lawsuit, claiming that Thomarios had intentionally injured Budacov and Avram because it had removed a safety brake from the scaffolding, knowing that, without the safety brake, injury to workers on the scaffolding was substantially certain to occur. On December 31, 1992, Thomarios entered into a consent judgment with the appellants in which it agreed to pay the appellants $1,000,000 in damages.

At the time of the injuries, Thomarios was insured under a general liability policy and a business umbrella policy issued by the appellee Northbrook. Each policy had a $1,000,000 limit of liability. The appellants demanded payment from Northbrook under the policies. Northbrook denied payment, and the appellants filed a supplemental complaint with the trial court, pursuant to R.C. 3929.06, demanding judgment against Northbrook for $1,000,000. Both parties moved for summary judgment, and the trial court entered summary judgment in favor of Northbrook. In their single assignment of error, the appellants challenge the trial court's entry of summary judgment. The appellants advance separate arguments for coverage with respect to the general liability policy and the business umbrella policy. We begin with the general liability policy.

Pursuant to the terms of the general liability policy, Northbrook agreed to insure Thomarios for all bodily injury damages caused by an "occurrence." The general liability policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Page 2

1995 WL 434411 (Ohio App. 9 Dist.)

**(Cite as: 1995 WL 434411 (Ohio App. 9 Dist.))**

*intended* from the standpoint of the Insured." (Emphasis added.)

In the case of *Wedge Products, Inc. v. Hartford Equity Sales Co* (1987), 31 Ohio St.3d 65, the Ohio Supreme Court interpreted identical contract language and held in the syllabus that "[a]n intentional tort allegedly committed by an employer against its employee is not covered by an insurance policy which provides protection for bodily injuries 'neither expected nor intended' by the employer." On the authority of *Wedge Products,* Thomarios's intentional tort against the appellants is not an "occurrence" for which Northbrook must provide coverage under the general liability policy. See, also, *Westfield Ins Co. v. Malvern Wood Products, Inc* (Sept. 12, 1994), Carroll App. Nos. 633/634, unreported.

The appellants additionally argue that they are entitled to coverage under the "Personal Injury and Advertising Injury" section of the general liability policy. That section defines "personal injury" as:

*2 "[An] injury arising out of one or more of the following offenses committed during the policy period:
"(1) false arrest, detention, imprisonment, or malicious prosecution;
"(2) wrongful entry or eviction or other invasion of the right of private occupancy;
"(3) a publication or utterance: (a) of a libel or slander or other defamatory or disparaging material, or (b) in violation of an individual's right of privacy ***."

The appellants contend that the definition of "personal injury" is neither clear nor conspicuously located within the "Personal Injury and Advertising Injury" section of the general liability policy. Contrary to the appellants' view of the policy language and structure, the foregoing definition of "personal injury" is clear and easily understood, and the term is highlighted in bold print and conspicuously located within the body of the "Personal Injury and Advertising Injury" section of the policy. Consequently, we reject the appellants' argument and find that the trial court properly entered summary judgment in favor of Northbrook with respect to the general liability policy.

Pursuant to the terms of the business umbrella policy, Northbrook agreed to insure Thomarios for all bodily injury damages caused by an "occurrence." The business umbrella policy defines "occurrence" as "bodily injury or property damage sustained during the policy period from an *accidental happening,* including continuous or repeated exposure to conditions[.]" (Emphasis added.) The appellants argue that the term "accidental happening" encompasses employer intentional torts. In support of their argument, the appellants cite *Harasyn v. Normandy Metals, Inc* (1990), 49 Ohio St.3d 173.

After reviewing *Harasyn,* we agree with the trial court that *Harasyn* is distinguishable from the present case. In *Harasyn,* in addition to a general liability policy, the employer had paid a separate premium for an "Employers' Liability Stop-Gap Coverage Endorsement," which the insurer subtitled as a supplementary state endorsement for Ohio. *Id* at 173. In light of the additional stop-gap endorsement, the Supreme Court held that, unlike the general liability policy before the court in *Wedge Products,* the stop-gap endorsement in *Harasyn* had been written "specifically for Ohio employers" and extended coverage to employer intentional torts. *Id.* at 177.

In the present case, the language in Northbrook's business umbrella policy is more akin to the general liability policy language in *Wedge Products* than the specific stop-gap language in *Harasyn.* As a result, we find that *Harasyn* is inapplicable and that *Wedge Products* is the controlling case law. Pursuant to *Wedge Products,* the remaining question for this court is whether the term "accidental happening" provides coverage for acts, such as employer intentional torts, which result in expected or intended injuries. On this question, we find the Eleventh District's analysis in *Sanborn Plastics Corp. v. St. Paul Fire & Marine Ins Co.* (1993), 84 Ohio App.3d 302, to be persuasive.

*3 In *Sanborn,* the insurer, St. Paul Insurance, issued four separate policies to the insured. The first

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

1995 WL 434411 (Ohio App. 9 Dist.)

(Cite as: 1995 WL 434411 (Ohio App. 9 Dist.))

Page 3

policy defined "occurrence" as an accident which results in bodily injury or property damage "neither expected nor intended" from the standpoint of the insured. *Id.* at 309. The fourth policy contained similar language. The second and third policies, however, did not contain the "neither expected nor intended" language; instead, these policies provided coverage for "accidental event[s]." As to the scope of these policies, the *Sanborn* court found that:

> "The second and third policies did not employ the term 'occurrence.' Instead, these policies provided that the bodily injury or property damage had to be the result of an 'accidental event.' Neither of these policies defined this particular term. However, as it is commonly used, the word 'accidental' typically refers to something which was not expected or intended. Thus, the meaning of the word is similar to that which was given to the term 'occurrence' in the other two policies." (Citation omitted.) *Id.*

We agree with the reasoning of the *Sanborn* court. Accordingly, we conclude that the term "accidental happening" in Northbrook's business umbrella policy has a similar meaning to that given to the term "occurrence" in Northbrook's general liability policy. Since Thomarios's intentional tort is not an "occurrence" for which Northbrook must provide coverage under the general liability policy, it follows that Thomarios's intentional tort is not an "accidental happening" for which Northbrook must provide coverage under the business umbrella policy. The trial court properly entered summary judgment in favor of Northbrook with respect to the business umbrella policy.

Based on the foregoing, the other arguments raised by the parties in their briefs and their post-oral argument motions are rendered moot. The assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).

Costs taxed to Appellants.

Exceptions.

QUILLIN, P.J., and SLABY, J., concur.

1995 WL 434411 (Ohio App. 9 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.