Page 2 of 8

Westlaw.

Not Reported in N.E.2d

Page 1

1998 WL 355860 (Ohio App. 7 Dist.)

**(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))**

**H**
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Seventh District, Columbiana County.
David S. KARLEN, Plaintiff-Appellant,
v.
SALEM BLANKING CORPORATION, Defendant-Appellant,
v.
THE CINCINNATI INSURANCE COMPANY, Defendant-Appellee.
**No. 96-CO-63.**

June 24, 1998.

Civil Appeal from Common Pleas Court Case No. 95CIV43. Affirmed.

Atty. Richard M. Boyce, Atty. Joyce A. Lamb, Alliance, for Plaintiff-Appellant.

Atty. John M. Manos, Atty. Michael A. Iacobelli, Jr., Willoughby Hills, for Defendant-Appellant.

Atty. David S. Barbee, Youngstown, for Defendant-Appellee.

OPINION

DONOFRIO, P.J.

*1 Defendant-appellant, Salem Blanking Corporation ("Salem"), appeals from the May 28, 1996 Columbiana County Court of Common Pleas decision denying Salem's motion for summary judgment. This entry became final on September 12, 1996, when the trial court entered its final judgment.

On January 20, 1995, plaintiff-appellant, David E. Karlen ("Karlen"), filed a cause of action against Salem, alleging an intentional tort theory of recovery. On October 2, 1995, Salem filed a third-party complaint against defendant-appellee, The Cincinnati Insurance Company ("Cincinnati"), seeking a declaratory judgment from the trial court ordering Cincinnati to defend and indemnify Salem against Karlen's intentional tort claim. On December 19, 1995, Cincinnati filed a motion for summary judgment against Salem stating that based on the insurance agreement, definitions, and exclusions contained in the umbrella policy, coverage should be denied. On January 18, 1996, Salem filed its brief in opposition to Cincinnati's motion for summary judgment along with a cross motion for summary judgment stating that as a matter of law Cincinnati must defend and indemnify Salem based on the insurance policy in question.

On May 28, 1996, the trial court rendered its opinion and judgment entry summarily denying Salem's cross motion for summary judgment and granting Cincinnati's motion for summary judgment. On September 12, 1996, the trial court entered final judgment on all pending matters. Karlen and Salem each filed a notice of appeal from the final judgment entered by the trial court. Karlen, however, did not file an appellate brief, but chose to join in the brief of Salem.

This case arises from an industrial injury occurring on April 13, 1993. David E. Karlen, an employee of Salem Blanking Corporation, was operating a press machine for Salem when four fingers on his left hand were severed. (Complaint Paragraph 9). At the time of the incident, Salem was a "complying employer" pursuant to R.C. 4123, et al. (Cincinnati's Request for Admission No. 3). Accordingly, Karlen filed a claim seeking workers' compensation benefits, which was ultimately

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d    Page 2
1998 WL 355860 (Ohio App. 7 Dist.)

**(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))**

allowed (Cincinnati's Request for Admission No. 4).

Karlen then commenced a civil action against Salem on January 20, 1995 alleging his injuries were intentionally caused by Salem. Specifically, Karlen alleged he was assigned to a press machine in order to place flat round steel onto a die and press the material to form small rims. (Complaint Paragraph 5). Karlen further alleged that there were no safety devices on the press machine to prevent his hands from reaching the point of operation and that Salem was fully aware there were no safety devices present on the machine. (Complaint Paragraph 7 and 8). Karlen further alleged Salem knew the machine was dangerous, was substantially certain to result in harm to an employee, and that Salem intentionally injured him. (Complaint Paragraph 10).

At the time of Karlen's injury, Salem had a general liability policy of insurance with the Westfield Insurance Company ("Westfield") and an umbrella policy with Cincinnati. Upon receipt of Karlen's summons and complaint, Salem placed both Westfield and Cincinnati on notice of Karlen's claim. However, based upon the insuring agreement, definitions, and exclusions contained in the umbrella policy, Cincinnati denied coverage, claiming it had no duty to defend or indemnify Salem for the claims presented by Karlen. On October 2, 1995, Salem instituted a third-party complaint against Cincinnati requesting the trial court to declare that Cincinnati must defend and indemnify Salem against Karlen's intentional tort claim.

*2 Salem and Cincinnati both moved for summary judgment upon the coverage issue. The tort claim was also addressed in cross motions for summary judgment between Karlen and Salem. Cincinnati prevailed in its motion for summary judgment involving its denial of coverage. The trial court, however, denied Karlen's motion for summary judgment holding that " * * * a genuine issue of material fact exists as to whether the employer in this case should be charged with knowing that an injury was substantially certain to occur to the plaintiff [Karlen]." Subsequently, Salem entered into negotiations with Karlen and eventually settled Karlen's claim for $500,000.

In their sole assignment of error, Salem argues:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT SALEM BY GRANTING THE DEFENDANT-APPELLEE CINCINNATI'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT-APPELLANT SALEM'S MOTION FOR SUMMARY JUDGMENT."

Salem contends that in order to avoid coverage for intentional torts an insurer must demonstrate subjective intent of the insured to cause injury and that insuring against an employer's intentional torts does not violate public policy. Salem then sets forth three issues for review.

In their first issue for review, Salem avers:
"The Motion for Summary Judgment Of Cincinnati Should Have Been Denied And Salem's Granted Since No Genuine Issues Of Material Fact Exist As To The Subjective Intent Of Salem To Cause Karlen's Injuries."

After a thorough review of the standard for summary judgment, Salem claims Cincinnati could only prevail on a summary judgment motion by establishing that Salem had the subjective intent to injure Karlen. Salem, however, fails to cite any authority to support its proposition under its first issue presented for review, and chooses to fully address the issue in its second issue presented for review, which states:
"Cincinnati Has A Duty To Defend Salem since Public Policy Has Extended Liability Coverage To Employer Intentional Torts When The Insurer Fails To Demonstrate That The Insured Subjectively Intended Or Expected The Employee's Injuries."

Salem contends that based on the Ohio Supreme Court's decision in *Harasyn v. Normandy Metals, Inc* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, it is no longer contrary to public policy for an employer to secure insurance against injuries

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                    Page 3
1998 WL 355860 (Ohio App. 7 Dist.)

(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))

resulting from alleged intentional torts. Salem goes on to argue that in order to avoid coverage on the basis of an exclusion for an expected or intentional injury, the insurer must demonstrate that the injury itself was expected or intended, and not merely that the act was intentional, citing *Physicians Insurance Co of Ohio v Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906.

Salem acknowledges an employee's right to pursue a claim against an employer for an intentional tort, but claims an employee is not required to show that the employer had a subjective intent and desire to cause injury to succeed on such a claim, citing *Fyffe v Jeno's, Inc* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108. Salem concludes that by removing the subjective intent element from employer intentional tort cases an employee can pursue an intentional tort claim for injuries which in the context of a liability policy are considered accidents.

*3 Salem recognizes the problem as one of semantics, the *Fyffe, supra,* intentional tort standard not being synonymous with the "expected or intended" standard of *Swanson.*

Cincinnati counters with the following argument: Salem was a "complying employer" under Ohio Workers' Compensation law; the Ohio Workers' Compensation Act provides employers immunity from suits for negligence brought by employees arising out the course of employment, but does not bar intentional tort suits, citing *Blankenship v. Cincinnati Millacron Chemicals, Inc.* (1982), 69 Ohio St.2d 609; Karlen is thereby precluded from bringing a separate lawsuit against Salem except in the context of a *Blankenship, supra,* intentional tort claim; that in order to state a cause of action for an intentional tort against the employer, the employee must allege and prove that the employer either intended to injure the employee or acted despite a perceived threat of harm to the employee which was substantially certain to occur, citing *Van Fossen v. Babcock and Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; the language of the insurance policy in question covers "occurrences" that are unexpected or unintended; and that based on said language, Karlen's intentional tort claim, which requires the expectation or intent to harm, is outside of the scope of Cincinnati's insurance coverage. Cincinnati cites to *Wedge Products, Inc v Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 509 N.E.2d 74, and *Westfield Ins. Co. v. Malvern Wood Products, et al.* (Sept. 12, 1994), Carroll App. No. 633, unreported, to support its contentions.

Pursuant to Civ.R. 56(C), summary judgment shall be rendered if there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. The Ohio Supreme Court, in *Dresher v Burt* (1996), 75 Ohio St.3d 280, at 293, 662 N.E.2d 264, held:

" * * * The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." (Emphasis *sic*.)

Provisions of insurance contracts that are reasonably susceptible to more than one interpretation will be construed strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380. However, if a contract of insurance is clear and unambiguous its interpretation is a question of law to be decided by the judge. *Leber v. Smith* (1994), 70 Ohio St.3d 548, 639 N.E.2d 1159. Exclusions in insurance policies must be clear and exact in order to give effect. *Lane v Grange Mutual* (1989), 45 Ohio St.3d 63, 543 N.E.2d 488.

*4 A common law right of an employee to maintain an intentional tort action against an employer was recognized by the Ohio Supreme Court in *Blankenship v. Cincinnati Millacron Chemicals* (1982), 69 Ohio St.2d 608, 433 N.E.2d 572. The Ohio Supreme Court has enunciated the standard of proof required to establish that an employer has committed an intentional tort against an employee in *Fyffe v Jeno's, Inc.* (1991), 59 Ohio St.3d 115,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

1998 WL 355860 (Ohio App. 7 Dist.)

(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))

Page 4

570 N.E.2d 1108, in paragraph one of the syllabus:
"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)"

Thus, the proof required to establish that an employer has committed intentional tort against an employee is somewhat less than actual intent. Knowledge that injury to the employee is substantially certain to occur is all that is required, and not actual intent to harm the employee.

Next, it must be established whether or not it is against public policy for an employer to be able to maintain liability insurance for intentional torts as defined by *Fyffe, supra*. It has long been held in Ohio that intentional tort insurance was contrary to public policy. See *Blankenship, supra*, at 615, 433 N.E.2d 572. However, the Supreme Court had altered this position in *Harasyn, supra*, at 176-177, 551 N.E.2d 962, stating:
"It is often said that public policy prohibits liability insurance for intentional torts. * * * This statement is based on 'the assumption that such conduct would be encouraged if insurance were available to shift the financial cost of the loss from the wrongdoer to his insurer. * * * ' * * * However, this blanket prohibition 'makes no distinctions as to the various forms of intentional wrongdoing and does not admit the possibility that some torts might not be particularly encouraged if insurance were available for them.' * * * The better view is to prohibit insurance only for those intentional torts where 'the fact of insurance coverage can be related in some substantial way to the commission of wrongful acts of that character. * * * ' * * * In the case of a 'direct intent' tort, the presence of insurance would encourage those who deliberately harm another. In torts where intent is inferred from 'substantial certainty' of injury, the presence of insurance has less effect on the tortfeasor's actions because it was not the tortfeasor's purpose to cause the harm for which liability is imposed. * * * In the latter situation, the policy of assuring victim compensation should prevail.
*5 * * * *
"Accordingly, we hold that public policy does not prohibit an employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with knowledge that injury was substantially certain to occur."

However, some courts have questioned whether *Harasyn, supra*, is still good law. In *Royal Paper Stock Co. v. Meridian Ins.* (1994), 94 Ohio App.3d 327, 640 N.E.2d 886, the Franklin County Court of Appeals discredited the decision in *Harasyn, supra*, stating:
"*Harasyn*, however, was premised on the legislative enactment of R.C. 4121.80, which created a statewide fund to pay claims arising out of employer intentional torts. The Supreme Court noted that this enactment was an expression by the public's elected officials that such insurance is not against public policy. R.C. 4121.80, however, was repealed in 1992; therefore, insurance coverage of employer intentional torts is truly contrary to public policy."

Other courts disagree. In *Presrite Corp. v. Commercial Union Ins. Co* (1996), 113 Ohio App.3d 38, 680 N.E.2d 216, the Cuyahoga County Court of Appeals found *Harasyn* to still be good law. The *Presrite* court found that in making its decision the court in *Harasyn* did not rely solely on R.C. 4121.80. The *Presrite* court cites a U.S. Sixth

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

1998 WL 355860 (Ohio App. 7 Dist.)

(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))

Page 5

Circuit Court of Appeals decision reviewing Ohio law in this area as support. *Lumbermens Mut. Cas. Co. v Southwest Industries, Inc.* (6th Cir.1994), 39 F.3d 1324.

The view taken by the *Presrite, supra,* court is correct. The *Harasyn, supra,* court distinguished the different policy considerations in denying insurance for torts directly intended and in allowing insurance for those substantially certain to occur, finding insurance coverage for torts substantially certain to occur not to be against public policy. This analysis is still applicable to the current state of the law, and the reasoning in *Harasyn* should be followed.

Next, it must be determined whether the insurance coverage offered by Cincinnati is applicable to the claim in question. The insurance policy issued by Cincinnati states as follows:
"PART II --THE COVERAGE
"A. WE WILL PAY
"We will pay on behalf of the Insured the ultimate net loss for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by this policy which are either excluded or not covered by underlying insurance because of Personal Injury, Property Damage, or Advertising Liability anywhere in the world.
"B. THIS POLICY DOES NOT APPLY--EXCLUSIONS
"This policy does not apply:
"(a) to any obligation for which the Insured or any of its Insurers may be held liable under any worker's or unemployment compensation, disability benefits or similar law; provided, however, that this exclusion does not apply to liability of others assumed by you under any valid contract in being at the time of an occurrence;
*6 " * * * "

The insurance policy provided by Cincinnati defines occurrence as:
" 'occurrence' means an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability."

The insurance policy in question is similar to the policy at issue in *Wedge Products, Inc v Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 509 N.E.2d 74. *Wedge, supra,* concerned a general liability policy which limited coverage to injuries "neither expected nor intended" by the employer, and specifically excluded coverage for claims by employees arising out of the course of their employment. *Id.,* at 67, 509 N.E.2d 74. The Ohio Supreme Court held that this policy did *not* provide coverage for employer intentional torts that where either specifically intended or substantially certain to occur. *Id.,* at 67, 509 N.E.2d 74.

This court has also recently determined the scope of coverage on a similar insurance policy in *Westfield Ins. Co v Malvern Wood Products, Inc* (Sept. 12, 1994), Carroll App. Nos. 633, 634, unreported. In *Malvern, supra,* the employee alleged that the employer knew that injury to him was certain or substantially certain to occur. The employer, at the time of the incident, was insured under a commercial liability policy. The insurance policy excluded coverage for injuries "expected or intended from the standpoint of the insured" and for workers compensation claims. Citing *Wedge, supra,* this Honorable Court held that the insurance policy involved did not provide the employer coverage for the employee's claim. Also see our decision in *Westfield Ins. Co. v. Jarrett Reclamation Services, Inc.* (1996), 114 Ohio App.3d 492, 683 N.E.2d 415, discretionary appeal not allowed (1997), 78 Ohio St.3d 1515, 679 N.E.2d 311.

Salem claims that the *Wedge, supra,* decision was essentially overruled by the *Harasyn, supra,* decision. This is simply not the case. The *Harasyn* court recognized that the insurance policy in *Harasyn* was distinguishable from the insurance policy in *Wedge,* stating:
"*Wedge* concerned a general liability policy which limited coverage to injuries 'neither expected nor intended' by the employer, and specifically *excluded* coverage for claims by employees arising out of the course of their employment. * * * We held that this policy did

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

Page 6

1998 WL 355860 (Ohio App. 7 Dist.)

**(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))**

not provide coverage for employer intentional torts. * * * The policy in *Wedge* did not contain the supplemental endorsement at issue in the instant case." (Emphasis *sic.*) (Citations omitted.) *Harasyn, supra,* at 178, 551 N.E.2d 962

For the foregoing reasons, it is not against public policy to provide an employer insurance against compensatory damages sought by an employee in tort where the employer's tortious acts were performed with knowledge that injury was substantially certain to occur, and not with actual intent. However, the insurance policy provided by Cincinnati did not provide coverage for torts directly intended or for those torts substantially certain to occur.

*7 Appellant's second issue presented for review is without merit.

In its final issue presented for review, Salem argues that:
"As A Matter Of Law Cincinnati Owes A Duty To Indemnify Salem For The Claims Asserted Against Salem By Karlen."

Salem essentially argues that Cincinnati has contractually assumed a duty to indemnify Salem for the $500,000 settlement entered into with Karlen. Salem avers that it is within the rights of the insured to make a reasonable settlement without prejudicing their rights under an insurance contract if an insurer unjustifiably refuses to defend an action for which it is contractually obligated to defend, citing *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19. Salem concludes that Cincinnati was obligated to defend Karlen's claim, refused to do so, and is therefore obligated to indemnify Salem for the $500,000 settlement entered into with Karlen.

Cincinnati contends *Sanderson, supra,* held that insurers breach their contractual duties when they *unjustifiably* refuse to defend, that Cincinnati's refusal to defend Salem was justified, and that Salem has no right to indemnification for its settlement with Karlen.

Ohio case law states:
" 'Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." ' *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 585-586, 635 N.E.2d 19, quoting *Willoughby Hills v Cincinnati Ins Co.* (1984), 9 Ohio St.3d 177, 459 N.E.2d 555
" * * * where an insurer *unjustifiably* refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of the settlement negotiations." *Sanderson, supra,* at 586, 635 N.E.2d 19 (Emphasis added.)

In his complaint, Karlen claimed Salem knew the machine was dangerous, was substantially certain to result in harm to an employee, and that Salem intentionally injured him. (Complaint Paragraph 10). As previously discussed, it is against public policy for an employer to maintain liability insurance for torts that are directly intended, while it is not against public policy to maintain liability insurance for those torts substantially certain to occur. Therefore, taking in public policy considerations Cincinnati could only be obligated to provide liability insurance for torts that are substantially certain to occur. However, as previously discussed, the liability policy itself excluded such torts. Therefore, no theory of recovery within the policy coverage has been pled.

*8 Appellant's third issue presented for review is without merit.

Appellant's sole assignment of error is without merit.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d

1998 WL 355860 (Ohio App. 7 Dist.)

**(Cite as: 1998 WL 355860 (Ohio App. 7 Dist.))**

Page 7

The decision of the trial court is hereby affirmed.

VUKOVICH and WAITE, JJ., concur.

1998 WL 355860 (Ohio App. 7 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.