IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CARL G. SIMPSON AND BONNIE REED
SIMPSON, CO-ADMINISTRATORS OF          CASE NO.: <u>1:00-cv-14</u>
THE ESTATE OF CARL D. SIMPSON

           PLAINTIFFS                          JUDGE BERTELSMAN

VS.

NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA

       DEFENDANT
       _____

*PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT, NATIONAL
UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND DECLARATORY RELIEF AND MEMORANDUM IN
REPLY TO DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINITFF'S
MOTION FOR SUMMARY JUDGMENT*

Now come Plaintiffs, by and through counsel, in
opposition to the Cross-Motion for Summary Judgment and
Declaratory Relief of Defendant, National Union and in
response to Defendant's Memorandum in Opposition to
Plaintiffs' Motion for Declaratory Judgment and Plaintiffs'
Motion for Summary Judgment.


<u>*MEMORANDUM*</u>


<u>I.</u>      <u>CHOICE OF LAW</u>

The parties herein are in agreement that Ohio law
applies in this action. *See* Defendant's Memorandum, p. 6.
Further, the parties are in agreement that this Court is bound
by the decisions of the highest court in the state, in this
case, the Ohio Supreme Court. *See* <u>Ruth v. Bituminous Casualty
Corp.</u>, 427 F.2d 290 (6th Cir. 1970). Defendant further cites
<u>Kurczi v. Eli Lilly & Co.</u> 113 F.3d 1426 (6th Cir. 1997), for the

1

proposition that federal courts sitting in diversity should treat decision of intermediate appellate courts as authoritative, absent a strong showing that the state's highest court would decide the issue differently. *See* Defendant's Memorandum, p. 6.

In the instant case, this Court need look no further than the Ohio Supreme Court decision of <u>Penn Traffic v. AIU Insurance Co.</u> 99 Ohio St.3d 227 (2003) for a recent, authoritative decision of the Ohio Supreme Court dealing with the issue before this Court.

## II.    <u>ARGUMENT</u>

Defendant National Union contends that <u>Wedge Products v. Hartford Equity Sales Co.</u>, 31 Ohio St.3d 65 (1987), is the "seminal case" regarding insurance coverage for employer intentional tort claims.    <u>Wedge Products</u> declined coverage primarily based on three issues:    (1) that coverage was precluded pursuant to public policy; (2) the policy's expected and intended language precluded coverage; and (3) the policy exclusion for claims for employees in the course and scope of employment.    However, <u>Wedge Products'</u> usefulness was short-lived in that <u>Harasyn v. Normandy Metals, Inc.</u>, 49 Ohio St.3d 173 (1990), eliminated the proposition that insurance for employer intentional torts was contrary to public policy and further determined that coverage was available when the policy defined "Occurrence" in the identical fashion as the policy found in this case.    <u>Harasyn</u> specifically distinguished <u>Wedge Products</u> in that <u>Wedge Products</u> examined a general liability policy, which limited coverage to injuries "neither expected nor intended" by the employer and specifically "*excluded* coverage" for claims by

2

employees arising out of the course and scope of their employment. Harasyn, 49 Ohio St.3d at 178, emphasis in the original. Therefore, while Wedge Products may have been the "seminal case" for Defendant National Union's argument in this case, its life after conception was effectively aborted by Harasyn.

Harasyn concluded in its decision that had the insurer "meant to exclude employer intention torts from its coverage, it should have said so". See Harasyn, 49 Ohio St.3d at 178. The Harasyn conclusion is apropos to the National Union policy; had they truly intended to exclude coverage for this claim and put their insured on notice of the exclusion, they should have done so.

Plaintiffs have attempted to assist the Court in a detailed analysis of the various Supreme Court and appellate decisions as addressed by the parties. "Exhibit 1" herein and Plaintiffs' Motion for Summary Judgment provide several such examples of unambiguous policies examined by Ohio courts that contain a clear and concise exclusion of employer intentional torts.

"Exhibit 1" to this Memorandum is an analysis of the Ohio courts' treatment of this issue. What is easily demonstrated by "Exhibit 1" is the fact that each and every insurance contract provides an exclusion for expected or intended acts on the part of its insured (i.e. Column 1). Further, unlike National Union's contention, the presence of a "stop-gap" or an endorsement for employers intentional tort liability coverage was not a prerequisite for the Ohio Supreme Court to determine in Penn Traffic that the Federal Insurance

umbrella policy needed to be remanded to determine whether the injury met the definition of "Occurrence." In this case, no additional facts are required and the Affidavit of General Counsel and Vice President, Alan J. Miller, addresses those issues. (See "Exhibit 8" to Plaintiff's Motion for Declaratory Judgment).

The Defendant's vehement reliance upon the necessity of a "stop-gap" endorsement is also made ineffective by the appellate court's analysis on this issue. *See* Sifco v. Safety National Casualty, 2002 WL 31667851, attached hereto as "Exhibit 2", and Talbert v. Continental Insurance, 157 Ohio App.3d 469 (2004).

What Plaintiffs' counsel finds most disturbing in this case are the repeated, blatant misrepresentations of the facts. On page 7 of Defendant National Union's Memorandum, Defendant's counsel attempts to compare the policy at issue in this case with the Hartford policy as discussed in Wedge Products. Defendant National Union, on page 7 of its Memorandum, states that:

> Hartford's policy contained the same standard CGL definition of occurrence as an "accident" as in the policy here, as well as, *again as here*, exclusions relating to injury "expected or intended" from the standpoint of the insured; exclusions for liability arising from obligations under Workers' Compensation law; and exclusions for bodily injury to employees in the course and scope of employment."

Page 7 of Defendant's Memorandum. *Emphasis added to "again as here".*

The first blatant misrepresentation lies in the fact that the National Union policy has an endorsement for employee benefits, which includes Workers Compensation. *See* Endorsement

1 as included in the policy and attached to Plaintiff's Motion for Summary Judgment as "Exhibit 2". More importantly, the Defendant alleges that the Defendant National Union policy contained exclusions for "bodily injury to employees in the course and scope of employment"; however, such exclusion is non-existent in the policy at issue in this case. Had such an exclusion been contained in the policy, it would have been reasonable for the Defendant National Union to provide this Court with a quotation and citation to the specific portion of the policy. Such a gross misrepresentation of the facts in this case should not be overlooked.

An additional misrepresentation is contained on page 12 of the Defendant's Memorandum when it contends the Ohio appellate courts have reasoned that the "insured's purchase of a specific "stop-gap" endorsement, for an additional premium, entitled it to coverage absent such a direct "substantial certainty" exclusion." Adding that this "rationale" was followed by The Cincinnati Ins. Co. v. Tauro Bros. Trucking, 2002 WL 1270030, attached to Plaintiff's Motion as "Exhibit 9," and Talbert v. Continental Cas. Co., 157 Ohio App.3d 469 (2004), as cited in Plaintiff's Motion at page 8.

Tauro Bros. did include a specific "stop-gap" endorsement, yet policy coverage was denied as the Ohio Liability Coverage Enhancement contained a clear and unambiguous exclusion for employer intentional torts. *See* "Exhibit 1" to this Memorandum and Tauro Bros. attached to Plaintiffs' Motion for Summary Judgment as "Exhibit 9." However, the Continental policy in Talbert did not contain a "stop-gap" endorsement. Talbert involved an employer's

liability indemnity policy much like the underlying policy as provided to Intermet by Liberty Mutual and listed in Defendant National Union's SCHEDULE OF UNDERLYING COVERAGES. Without a clear and unambiguous exclusion for a "substantial-certainty" tort and/or an exclusion for Ohio employers intentional tort, coverage should be provided to the Plaintiffs pursuant to the National Union policy. These facts regarding the actual rationale used by Ohio courts obliterates the Defendant's argument that a specific "stop-gap" endorsement is needed for Ohio courts to allow coverage for employer intentional torts. This more subtle mispresentation to the court is one reason Plaintiffs felt compelled to prepare "Exhibit 1" herein and attempt to provide this Court with a fair and accurate summary of Ohio courts' treatment of coverage for employer intentional torts. A review of Ohio appellate courts' treatment will reveal that only Chavis, attached as "Exhibit 5" to Plaintiffs' Motion for Summary Judgment, comes to the conclusion sought by Defendant National Union. As addressed in Plaintiffs' Motion for Summary Judgment, Plaintiffs contend that Chavis has misinterpreted the Ohio Supreme Court's Decision in Penn Traffic. Chavis is also distinguishable from the policy before this Court. As discussed, National Union provides excess coverage to Liberty Mutual's policy that specifically listed employers' intentional tort. The policy in Chavis was a general commercial policy. The presence of an underlying policy which clearly provides coverage for this claim places an additional requirement on National Union to have a clear and unambiguous exclusion. Chavis effectively eliminates coverage for all employers' intentional torts, as all insurance policies

contain an expected or intended exclusion.   Clearly, this is the objective of National Union, but not the holding of <u>Penn Traffic</u>.

Because Intermet/Ironton Iron had employer intentional tort coverage under the Liberty Mutual policy and purchased excess coverage to that policy from Nation Union, then Intermet/Ironton Iron would have a reasonable expectation of employer intentional tort coverage with Defendant National Union.   To exclude such coverage, National Union must be required to provide clear and unambiguous language, such as was found in the policy in the <u>Tauro Bros.</u> case and/or the Cincinnati Ins. Policy reviewed in <u>Penn Traffic</u>.

Defendant National Union again insinuates on page 12 of its Memorandum that an insured must purchase specific a "stop-gap" endorsement "for an additional premium" for Ohio courts to determine coverage should exist for a substantial certainty tort.   The fact that Defendant National Union incorporated a flat-rate pricing method in the amount of $71,598.00 should not now be used to its advantage when seeking to limit coverage for a claim specifically identified under the SCHEDULE OF UNDERLYING BENEFITS (i.e. Liberty Mutual) and not specifically excluded in Defendant National Union's policy.   Obviously, National Union has long since been educated by courts across the country that it cannot itemize the actual costs to Intermet for providing excess coverage to the Liberty Mutual policy, only to deny coverage for a claim clearly covered in a policy in the SCHEDULE OF UNDERLYING BENEFITS.   By incorporating the flat-rate policy, National Union is only attempting to eliminate an insured's argument that a portion of its premium

is illusory. There can be no doubt that Intermet paid an additional premium for the coverage now sought by the Plaintiffs.

Yet another attempted misrepresentation by Defendant National Union to this Court lies in its allegations that it in some way attempted to provide Intermet Corporation notice of National Union's intent to deny coverage of this claim by its April, 2002, correspondence as attached to Defendant's Memorandum as "Exhibit A." As demonstrated in the Affidavit attached hereto by General Counsel and Vice President, Alan J. Miller, neither he nor any other representatives for Intermet received a copy of the alleged formal denial letter until July, 2004. Further, the copy of the April, 2002, letter as provided to Alan J. Miller via facsimile on July 12, 2004, did not contain a specific date. See "Attachment A" to Affidavit of Alan J. Miller as compared to "Exhibit A" attached to Defendant's Memorandum. Neither "Exhibit A" to Defendant's Memorandum nor "Attachment A" to Alan J. Miller's Affidavit bears a signature of the author of the April, 2002, draft letter.

Alan J. Miller's Affidavit further states that continued efforts were made to update National Union with correspondence in 2003 and 2004. Correspondence in 2004 reflected Intermet's repeated request for utilization of up to $3,000,000.00 of the National Union policy for settlement purposes. Intermet received the denial notice in July, 2004, approximately one month before the parties were scheduled to mediate the case on August 12, 2004. The denial at such point in time effectively left Intermet to fend for itself, thus permitting Intermet to

make a reasonable settlement in this case. By abandoning Intermet and leaving it to its own devices to resolve this suit, Defendant National Union cannot be now heard to complain about the settlement. *See* <u>Sanderson v. Ohio Edison Co.</u>, 59 Ohio St.3d 582, as cited on page 21 of Plaintiff's Motion for Declaratory Judgment.

Further, the fact remains the ultimate judgment amount of $3,500,000.00 was less than the total amount sought in August, 2004, by Intermet. Efforts were made to secure $3,000,000.00 of National Union's policy for the August, 2004, mediation. As a result of the primary carrier providing the $1,000,000.00 coverage in this case and the ultimate setoffs as discussed in Plaintiff's Motion for Summary Judgment, Intermet has effectively reduced the total exposure as now sought by the Plaintiffs herein by $775,000.00.

Further, based on the reasonableness of the settlement and the effectiveness of Intermet's negotiations and ultimate settlement reached herein, there is no justification to hold in abeyance the consideration of Plaintiff's request for judgment against the Defendant for the remaining amount due.

Finally, the Defendant's reliance upon Florida and Massachusetts law is misplaced, as <u>Sanderson</u> would be the controlling law for this Court to apply on the issue of Intermet's settlement and assignment of rights that allow Plaintiffs to pursue this claim against Defendant National Union.

*CONCLUSION*

Once this Court gives the terms "expected nor intended" their plain and ordinary meaning, it becomes obvious the insured's reasonable understanding of this contract would afford coverage to this claim. *See* Penn Traffic at 229; citing Gomolka v. State Auto. Mut. Ins. Co., 70 Ohio St.2d 166, 436 N.E.2d 1347 (1982).

For the reasons set forth herein and in the Plaintiffs' Motion for Summary Judgment and Declaratory Relief, Plaintiffs are entitled to judgment against Defendant National Union in the amount of Two Million Two Hundred Twenty-Five Thousand Dollars ($2,225,000.00).

**Respectfully Submitted,**

LAMBERT, McWHORTER & BOWLING

/s/ D. Scott Bowling
RANDALL L. LAMBERT (0017987)
D. SCOTT BOWLING (0067617)
ATTORNEY FOR PLAINTIFFS
P. O. BOX 725
IRONTON, OH  45638
sbowling@lmb-attorneys.com
740-532-4333
740-532-7341 fax

*CERTIFICATE OF SERVICE*

I hereby certify that a copy of the foregoing Memorandum was forwarded on this the ___ day of August, 2005 by

electronic filing to the United States District Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Exhibits to this Memorandum will filed manually with the Court and a copy of this Memorandum with exhibits attached will be mailed on this day to Samuel M. Pipino, Attorney for Defendant National Union, at 300 Spruce Street, Floor One, Columbus, OH 43215-1173.

LAMBERT, McWHORTER & BOWLING

/s/ D. Scott Bowling
RANDALL L. LAMBERT (0017987)
D. SCOTT BOWLING (0067617)
ATTORNEY FOR PLAINTIFFS
