IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Carl G. Simpson and Bonnie Reed Simpson, Co-Administrators of the Estate of Carl D. Simpson, | : : : | Case No. 1:00-CV-14 |
| Plaintiffs, | : | Judge Bertelsman |
| -vs- | : | |
| National Union Fire Insurance Company Of Pittsburgh, PA, | : : | |
| Defendant. | : | |

**DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT**

**NOW COMES** Defendant, National Union Fire Insurance Company of Pittsburgh, PA ["National Union"], and in *Reply* to Plaintiffs, Carl G. Simpson, et al., *Memorandum in Opposition to National Union's Cross-Motion for Summary Judgment*, respectfully submits the following Memorandum for the Court's consideration.

**REPLY MEMORANDUM**

**1) Plaintiffs' Continue to Misconstrue Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, Which is Distinguishable from, and Inapplicable to, This Case.**

In opposing National Union's *Cross-Motion for Summary Judgment*, Plaintiffs continue to misconstrue the Ohio Supreme Court's holding in Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173. However, National Union invites this Honorable Court to undertake a close reading of that decision, as well as the authority in Wedge Products v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, and has provided the Court with copies of these decisions as,

respectively, Exhibit A and Exhibit B.  In view of these decisions, the National Union's *Policy* does not provide coverage for employer intentional tort claims.

First, Wedge Products is still valid precedent from the Ohio Supreme Court.  It has not been modified; it has not been overruled.  So, despite counsel's unwarranted statements that National Union has made "blatant representations" about the coverage issues, the status of the case law speaks for itself.  If anything, Plaintiffs' counsel has attempted to mislead this Court by arguing that Wedge Products "life after conception was effectively aborted by Harasyn." [*Plaintiffs' Memorandum in Opposition, p.3*].  This statement is false.  Wedge Products remains good law, and is applicable to, and dispositive of, the coverage issues in this case.

Harasyn is distinguishable because the liability insurer (Fireman's Fund) issued an "Employer's Liability Stop-Gap Coverage Endorsement" that provided additional employer liability coverage beyond the standard liability insuring agreement in Fireman's "General Liability Policy."  Harasyn at p. 173.  The Ohio Supreme Court specifically stated that such endorsement would mandate coverage, absent express exclusion of "substantial certainty" intentional torts:

> The Endorsement appears to have been written specifically for Ohio employers.  By its terms, it extends coverage to 'damages because of bodily injury* * *sustained by any employee of the Insured arising out of and in the course of employment by the Insured* * *'and deletes the exclusions in the Policy.  On its face, that coverage reaches the claim in this case.

Id. at 177.  The Court also specifically distinguished its analysis from Wedge Products:

> This case is distinguishable from Wedge Products v. Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, 31 OBR 180, 509 N.E.2d 74.  Wedge concerned a general liability policy which limited coverage to injuries 'neither expected nor intended' by the employer, and specifically *excluded* coverage for claims by employees arising out of the course of their employment.  Id. at 67, 31 OBR at 182, 509 N.E.2d at 76.  The policy in Wedge did not contain the supplemental endorsement at issue in the instant case.

Id. at 178.  This Honorable Court need only examine Harasyn [Exhibit A] to assess that National Union has not misrepresented the holdings of that case, and Wedge Products.  The Ohio Supreme Court has specifically held that a policy such as the one issued by National Union here, which does not contain any supplemental endorsement for employers liability coverage, does not indemnify "substantial certainty" employer intentional tort claims.

As previously noted, National Union's *Commercial Umbrella Policy* requires an "Occurrence" for coverage; excludes "expected or intended injury"; and does *not* contain any "Stop-Gap" endorsements or provisions for employers' liability coverage.  This is not supposition or creative argument; these are the plain facts.  Hartford's policy in Wedge Products contained the same standard CGL definition of occurrence as an "accident" and exclusion relating to injury "expected or intended" from the standpoint of the insured, as in the policy here.  The Ohio Supreme Court held:

> Under the [Jones v. V.I.P. Development Co. (1984), 15 Ohio St.3d 90] test an intentional tort by Wedge must necessarily involve either an intent to injure or a belief that injury is substantially certain to occur.  Clearly, no coverage is provided if Wedge intended to injure Pariseau and Walls.  More importantly, we are unable to see how Wedge could have committed any acts with the belief that Pariseau or Walls were substantially certain to be injured, yet not have 'expected' such injuries to occur.

Id. At 67.  Again, this holding has not been altered, modified or overruled by any subsequent Ohio Supreme Court decisions.

Regardless of whether Plaintiffs have intentionally or inadvertently confused Wedge Products and Harasyn, Ohio appellate courts have had no such difficulty.  National Union again specifically refers this Court to the authority cited in its *Cross-Motion for Summary Judgment,* including Budacov v. Thomarios Painting Co. (Unreported, decided July 19, 1995), Summit Cty. App. No. 16962, Ninth App. Dist. (Ohio), [*Copy previously attached to National Union's Cross-MSJ, Ex. B,* p. *2].  Therein the Ninth District Court of Appeals, Ohio, specifically noted that "In

the present case, the language in Northbrook's business umbrella policy is more akin to the general liability policy language in <u>Wedge Products</u> than the specific stop-gap language in <u>Harasyn v. Normandy Metals, Inc.</u> (1990), 49 Ohio St.3d 173.  As a result, we find that <u>Harasyn</u> is inapplicable and that <u>Wedge Products</u> is controlling...[the employer's] intentional tort is not an 'accidental happening' for which Northbrook must provide coverage under the business umbrella policy'."   The distinction was also noted in <u>Karlen v. Salem Blanking Corp.</u> (Unreported, Decided June 24, 1998), Columbiana Cty. App. Ct. Case No. 96-CO-63 [Seventh App. Dist. (Ohio)] [*Copy previously attached to National Union's Cross-MSJ, Ex. C*].  The court in <u>Karlen</u> applied <u>Wedge</u> and prior 7th District decisions:  to wit, <u>Westfield Ins. Co. v. Malvern Wood Products, Inc</u>. (Sept. 12, 1994), Carroll App Nos. 633, 634 and <u>Westfield Ins. Co. v. Jarrett Reclamation Services, Inc</u>. (1996), 114 Ohio Spp.3d 492 ), and determined that a liability policy issued by Cincinnati Insurance containing a standard "Occurrence" definition and an exclusion for "expected or intended injury," did not provide coverage for employer intentional tort claims.

Plaintiffs appear to argue that any excess coverage that sits above a general liability policy which includes an employers liability "stop-gap" coverage, is required to automatically follow form and provide that same coverage for "substantial certainty" employer intentional torts.  However, Ohio courts have rejected this proposition.  Significantly, the rule of law set forth in <u>Wedge Products</u> does not change even where there is an excess policy providing coverage over and above an employer's liability policy that includes "Stop-Gap" employer intentional tort coverage.  <u>Baker v. Aetna Cas. & Sur. Co.</u> (1995), 107 Ohio App.3d 835.  <u>Baker</u> involved two (2) policies issued by Aetna to an insured employer (Brookshire).  The first was a primary policy, which included "Stop-Gap" coverage without any exclusion for "substantial certainty" torts; the second was an excess umbrella policy that contained <u>no</u> stop-gap

4

endorsement or employers liability coverage. The court held that while coverage was available under the primary policy, it did not exist under the excess forms. In finding that an exclusion for "expected or intended bodily injury" in the umbrella policy precluded coverage for an employer intentional tort claim, the Franklin County Court of Appeals held as follows:

> Finally, defendant issued not only the general policy and endorsement already discussed, but also an excess liability, or umbrella policy. The endorsement modifying the general policy does not purport to modify the umbrella policy.
>
> While the umbrella policy provides coverage for bodily injury caused by an occurrence during the policy period, it contains no reference to claims arising out of or in the course of employment. Further, the umbrella policy excludes from coverage bodily injury 'expected or intended from the standpoint of the insured.' Under the analysis employed in Wedge, the exclusion for expected or intended injury precludes coverage under the umbrella policy.
>
> For the foregoing reasons, we sustain plaintiff's assignments of error with respect to the general policy and endorsement, but overrule them as to the umbrella policy.

Id. At 845.

In the instant case, National Union's *Policy* does not purport to cover employer intentional tort claims. The previously cited Ohio Supreme Courts as well as subsequent appellate decisions validate this position.

In a final, desperate attempt to avoid the impact of Wedge Products, Plaintiffs attempt to argue that an *Employee Benefits Liability Follow-Form Endorsement (Endorsement No.* 1) in National Union's *Policy*, covers Ohio common-law employer intentional tort claims. However, there is absolutely no case authority to support this untenable position. More importantly, the language of the endorsement itself makes manifest its design to cover a completely different risk. National Union invites the Court to inspect *Endorsement No. 1*. It applies to "any negligent act, error or omission* * *in the administration of the Insured's Employee Benefit Programs as defined herein." That definition states:

5

For the purposes of this endorsement, the following definitions apply:

1. **Employee Benefit Programs** shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation Unemployment Insurance, Social Security and Disability Benefits.

[*See National Union Commercial Umbrella Policy, Employee Benefits Liability Follow-Form Endorsement (Endorsement No.* 1), *as filed with the Court*].  This endorsement provides coverage for **negligent** act(s), error(s) or omission(s).  It does **not** provide coverage for Ohio employer **intentional** tort claims.  Furthermore, any covered negligence must arise from the administration of group insurance plans and the like—a risk completely distinct from, and wholly unrelated to, the claims asserted by Plaintiffs in this case.  Plaintiffs' reliance on *Endorsement No. 1* thus not only fails to advance their claims for insurance coverage in this case, but further, is so inapposite that it indicates the lack of any substantive support for their position.

**2) Penn Traffic v. AIU Ins. Co. (2003), 99 Ohio St.3d 227 Does Not Support Plaintiffs Claims.**

Plaintiffs' *Memorandum in Opposition* also cites Penn Traffic v. AIU Ins. Co. (2003), 99 Ohio St.3d 227, as supporting their claims.  However, contrary to Plaintiffs' assertions, Penn Traffic does not signal a departure from the Ohio Supreme Court's decision in Wedge Products, supra, but instead continues to follow and apply the Wedge Products Court's precedent.  That precedent established that a standard primary or excess liability insurance policy, which requires an "Occurrence" and excludes coverage for "expected or intended injury," does *not* cover a "substantial certainty" employer intentional tort claim where there is no "Stop-Gap" endorsement or employers' liability coverage included in the policy.

The first subsequent decision so holding was that reached in Altvater v. Ohio Cas. Ins. Co. (Unreported, Decided September 9, 2003), Franklin Cty. App. No. 02-AP-422, 10th App. Dist. (Ohio), 2003-Ohio-4758) [*Copy attached in Plaintiffs' Index of Exhibits, Ex. 4*].  As in the

6

instant case, the employer (Claycraft) had maintained liability insurance (including excess policies) with Ohio Casualty Insurance Company. However, there was no "Stop-Gap" employers liability endorsement or coverage. In finding that no coverage existed for the employer intentional tort claims, the Court of Appeals actually relied on the Ohio Supreme Court's opinion in Penn Traffic v. AIU Ins. Co. (2003), 99 Ohio St.3d 227. The court stated:

> Although the language in the present policies does not expressly exclude coverage for substantial-certainty employer intentional torts, as did the policy in Penn Traffic, these policies do contain the same proscription against coverage for any bodily injury 'expected or intended.' Thus, we apply the following concepts from Penn Traffic to the present case: (1) where substantial certainty exists, intent to harm will be inferred as a matter of law, and (2) there is no coverage for bodily injury 'expected or intended' from the standpoint of the insured. * * *As Robert's bodily injury was expected and intended, his injury cannot be considered an 'occurrence' under any of the policies presently at issue. Accordingly, because Robert's injury was not an 'occurrence' under any of the policies, there can be no genuine issue remaining as to whether the policies provided insurance coverage for Robert's death.

[*p.5*] As demonstrated above, Altvater is directly on point with respect to the instant case, and is fully dispositive of the coverage issues raised in this appeal.

This same basic rationale was applied more recently in Chavis v. AIG Technical Services, Inc. (Unreported, Decided May 19, 2005), Franklin Cty. App. No. 04AP-1019, 2005 WL 1177929, 2005-Ohio-2427 [*Copy attached in Plaintiffs' Index of Exhibits, Ex. 5*]. Plaintiffs attempts to distinguish Chavis are disingenuous because the same coverage issues, with the same excess insurer herein, were presented in that case. The 10th District Court of Appeals for Ohio held that even though the insured's primary carrier provided "Stop-Gap" coverage for employer's liability claims, the National Union excess policy was found not to afford coverage for "substantial certainty" employer intentional tort claims, based upon the excess policy's requirement that there be an "Occurrence," and based as well upon the excess policy's "Expected or Intended Injury" Exclusion. Significant to this analysis was the court's determination that the

7

excess policy did not include any "Stop-Gap" or employer's liability coverage or endorsements. Also deemed significant was the court's proper reading of Penn Traffic as not deviating from the precedent originally set forth by the Ohio Supreme Court in Wedge Products. The court stated:

> The present circumstances are virtually identical to those in Altvater. * * *Accordingly, as in Altvater, we must follow in the present case the Ohio Supreme Court's decision in Penn Traffic adopting Justice Cook's concurring opinion in Buckeye Union and find that, where substantial certainty exists, intent to harm will be inferred as a matter of law. Penn Traffic, at ¶6, quoting Buckeye Union at 289. * * * Thus, following our prior determination in Altvater and the Ohio Supreme Court's decision in Penn Traffic, we find that, because DSI's actions constituted a substantial certainty intentional tort, intent to injure must be inferred as a matter of law. Therefore, Chavis' bodily injury was 'expected or intended' from the standpoint of DSI. As Chavis' bodily injury was expected or intended, his injury could not be considered an 'occurrence' under the policy at issue, and there can be no genuine issue remaining as to whether the policy provided insurance coverage for Chavis's death. Consequently, summary judgment in favor of National Union was appropriate. Appellant's assignment of error is overruled.

*Id*. at p. 4.  Although Plaintiffs attempt to distinguish this analysis from the instant case, such arguments are neither persuasive nor accurate. Once again, the Court need only examine the text of this decision, as well as the other decisions in the cases cited by National Union and Plaintiffs, to ascertain that Plaintiffs—not National Union—have misrepresented the status of Ohio law on these issues. In fact, Plaintiffs tacitly concede this point, when they openly, and inappropriately, invite this Court to disregard the court's holding in Chavis.

The same rationale and result found in Wedge Products, supra, is applicable and warranted in the instant case. Nor has Penn Traffic departed from this rationale, as has been recognized in subsequent Ohio court decisions including Altvater and Chavis, supra. Additionally, the case law argued by Plaintiffs in their *Memorandum in Opposition* is not on point, as has been demonstrated above.

National Union has concomitantly demonstrated the inapplicability of Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173, in which the Ohio Supreme Court addressed

8

an insurance policy that included "Stop-Gap" employers liability coverage. Because that coverage did not specifically exclude "substantial certainty" employer intentional tort claims, coverage was found to exist. The court reasoned that the insured's purchase of a specific "Stop-Gap" endorsement, for an additional premium, entitled it to coverage absent such a direct "substantial certainty" exclusion. Again, National Union has provided a copy of the Harasyn decision for this Court's convenience.

This rationale has been followed by Ohio appellate courts in cases such as The Cincinnati Ins. Co. v. Tauro Bros. Trucking (Unreported, Decided June 7, 2002), Trumbull Cty. App. No. 2001-T-0037, 2002 WL 1270030, 2002-Ohio-2958 [*Plaintiffs' Index of Exhibits, Ex. 9*]; and Talbert v. Continental Cas. Co. (2004), 157 Ohio App.3d 469 (as cited in Plaintiffs' *Motion for Summary Judgment* at page 8).

The National Union *Policy* is thus distinguishable from the policy in Harasyn, since the National Union *Policy* does not fit contain a "Stop-Gap" endorsement. As such, it is an insurance policy with a definition of "Occurrence" that Ohio courts have determined does not afford coverage for an injury that was a "substantial certainty." Nor has any subsequent Ohio Supreme Court or appellate decision viewed Harasyn as having overruled or having altered the established precedent of Wedge Products.

In sum, neither Harasyn nor Penn Traffic supports Plaintiffs' claims with respect to "substantial certainty" employer intentional tort claims under the National Union *Policy* presented in this case. Plaintiffs' willful or inadvertent failure to understand why these cases are distinguishable cannot change the effect or import of these decisions.

**3)    The Court Should Hold in Abeyance Consideration of Plaintiffs' Arguments Regarding the Binding Effect of the *Settlement Agreement* and Reasonableness of Damages.**

9

Plaintiffs continue to argue ancillary legal issues that are not ripe for consideration by this Court. Rather than belabor this issue prematurely, National Union would again respectfully submit that additional discovery and briefing would be proper, in the event issues regarding the binding effect and/or reasonableness of Plaintiffs' assignment become appropriate for further determination. Plaintiffs' self-serving, and in this context irrelevant, statements concerning the settlement agreement's purported reasonableness suggest that proper resolution of discovery matters is within Plaintiffs' province, rather than within this Court's, a proposition that is completely untenable.

## CONCLUSION

National Union is entitled to summary judgment because the assignment of the claim for which Plaintiffs seek indemnity, does not involve an "Occurrence" as defined by and required for coverage under the *Policy*. Furthermore, coverage is barred by the exclusion for "expected or intended" injury.

**WHEREFORE,** Defendant National Union Fire Insurance Company of Pittsburgh, PA, respectfully requests that this Court GRANT summary judgment in its favor, on all claims made against it in Plaintiffs' *Supplemental Complaint* and on Defendants' *Counterclaim*.

Respectfully submitted,

**WILES, BOYLE, BURKHOLDER
& BRINGARDNER CO., L.P.A.**

s/ Samuel M. Pipino
Samuel M. Pipino (0061634)
300 Spruce Street, Floor One
Columbus, Ohio 43215
(614) 221-5216
FAX: (614) 221-4541
*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, PA*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 30th day of August 2005, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system and a copy of the foregoing was mailed to the following by regular U.S. Mail:

Randall L. Lambert, Esq.
D. Scott Bowling, Esq.
LAMBERT, McWHORTER & BOWLING
215 South 4th Street
P.O. Box 725
Ironton, Ohio 45638

*Attorney for Plaintiffs*

                                  s/ Samuel M. Pipino
                                  Samuel M. Pipino, Esq.

#130007 v1 – AIG 61244