UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CASE NO. 1:00cv00014-SJD


CARL G. SIMPSON, Co-Administrator
of the Estate of Carl D. Simpson,
et al                                                    PLAINTIFFS


v.                    MEMORANDUM OPINION AND ORDER


INTERMET CORPORATION, et al.                             DEFENDANTS


### *Procedural and Factual Background*

This matter is before the court on cross motions for summary judgment in this insurance declaratory judgment action. The relevant facts are not in dispute. The parties agree that Ohio law applies.

The court accepts the plaintiffs' statement of the facts and issues as follows: Prior to trial, a settlement was achieved between Plaintiffs and Intermet Corporation (hereinafter referred to as "Intermet"). As part of the settlement with Intermet, Plaintiffs received an assignment to pursue this claim for insurance coverage against National Union Fire Insurance of PA, (hereinafter referred to as "National Union"). National Union provided an excess coverage policy (umbrella) to Intermet.

1

National Union's policy was to provide excess converge over the $1,000,000.00 policy provided by Liberty Mutual Insurance Co. Liberty Mutual Co.'s coverage is identified in National Union's Policy under the "Schedule of Underlying Insurance."[1]

Decedent, Carl D. Simpson, was employed by Intermet at its Ironton Iron, Inc. plant in Ironton, Ohio. Or more than four (4) years prior to his death, Mr. Simpson was an operator and/or helper on a mold manufacturing machine called a Sutter machine.

Decedent, Carl D. Simpson, was the helper on one of the Sutter machines on September 21, 1999. The Sutter machines inject a sand and resin mixture into a mold to be later filled with iron to create the I-beams, which are the end production automotive manufacturing. Numerous times each shift, the injection ports in the molds would become clogged and require the operator and/or helper to enter into the pinch-points of the Sutter machine to remove the clog, which the employees called stickers. It was during one of these sticker removal procedures that Mr. Simpson became trapped within one of the Sutter's pinch points. Mr. Simpson was crushed and his death resulted four (4) hours later.

While Intermet disputed some allegations of the Plaintiffs' case, Intermet acknowledged the strength and potential exposure of the case as filed by the Plaintiffs and sought a reasonable

---

[1] Although the underlying Liberty Mutual policy contained an endorsement providing coverage for this accident, Plaintiff is not arguing that the umbrella policy at issue automatically follows the Liberty Mutual policy.

settlement.

Though notice of the claim was provided to National Union, the insurer denied coverage and refused to participate in the settlement and/or further defense of the case against its insured, Intermet. The question now before the Court is whether National Union's policy provides coverage for a claim based on Ohio's employers' intentional tort claim.

The relevant portions of the National Union policy provide as follows:

**I.    Coverage**

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of Bodily Injury. . . that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.

*******

An occurrence is defined to mean:

> 1. As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence**;

********

3

### *Legal Analysis*

The Ohio law on these issues is subject to various interpretations which able counsel have vigorously argued on behalf of their respective clients.   After careful consideration, the court has determined that there is no coverage under existing Ohio law.

The court will discuss only the most applicable authorities. A useful discussion of the progression of the long series of Ohio cases addressing the insurability of Ohio "substantial certainty" torts may be found in *Talbert v. Continental Cas. Co.,* 811 N.E.2d 1169,157 Ohio App.3d 469 (2004), although that case involved a different type of policy.

To determine the present state of Ohio law, it is best to proceed in chronological order.

In *Wedge Products, Inc., v. Hartford Equity Sales Co.,* 509 N.E.2d 74, 31 Ohio St. 3d 65 (1987), the Ohio Supreme Court held that a general liability policy which limited coverage to injuries "neither expected or intended" by the employer and contained an exclusion for claims by employees arising out of their employment provided no coverage for substantial certainty torts. *Id.* at 74 and 65.

In *Harasyn v. Normandy Metals Inc,* 551 N.E.2d 962, 49 Ohio St. 3d 173 (Ohio 1990), the Ohio Supreme Court held that a special endorsement in a policy that extended coverage to claims arising

4

out of the employment of the insured covered substantial certainty torts and it was not against public policy to insure against liability for such torts. *Id.* at 964-5 and 175-6.  The policy in the present case contains no such endorsement.  Plaintiff's rely on this case but it is not on point because of the special endorsement.

In *Gearing v. Nationwide Ins. Co.,* 665 N.E.2d 1115, 76 Ohio St.3d 34 (1996) the same court held that claims for sexual molestation of a minor, where the perpetrator swore that "he didn't mean to hurt anyone," were not covered by a homeowner's policy, because such acts were "substantially certain to result in injury." *Id.* at 1119 and 39..  Therefore, such acts did not constitute an "occurrence" under the policy.  *Id.* at 1120 and 40.

In *Buckeye Union Ins. Co. v. New England Ins. Co.,* 720 N.E.2d 495, 87 Ohio St.3d 280 (1999), an insurance bad faith case, in a concurring opinion later adopted by the Court, Justice Cook reviewed the above cases, inter alia, and went on to observe:

> In our most recent case on this issue, *Gearing v. Nationwide Ins. Co., supra*, we more fully developed the substantial certainty suggestion contained in Swanson. In *Gearing*, we expended the intentional tort exclusion beyond direct-intent torts, outlining a two part analysis.  The first part, as in *Harasyn,* requires subjective consideration of the tortfeasor's direct intent. Where direct intent does not exist, however, the analysis proceeds to the second step, which considers objectively whether the tortfeasor's intentional act was substantially certain to cause injury.  In such instances "determination of an insured's subjective intent, or lack of subjective intent, is not conclusive of the issue of coverage." *Id.*, 76 Ohio St. 3d at 39, 665 N.E.2d at 119.

> Rather, where substantial certainty exists, intent to harm will be inferred as a matter of law.

*Id.* at 502 and 287. (Emphasis added).

*Penn Traffic Co. v. AIU Ins. Co.,* 790 N.E.2d 1199, 99 Ohio St.3d 227 (Ohio 2003) is relied on heavily by plaintiffs. Unfortunately for their claims, the case supports the defendant's position.  There were several holdings in this case.  The main one was that "an exclusion from coverage for bodily injury to an employee arising out of or in the course of employment does not provide coverage for . . . substantial certainty torts." *Id.* at 1207 and 235.  Regarding a policy where there was no exclusion, the Court held that there was no coverage if the injury sued on was caused by conditions "expected or intended" by the insured.  *Id.* at 1206 and 233-4.

Counsel place various interpretations on this last holding by the court.  Counsel for Plaintiffs argue that *Gearing, supra,* is overruled by *Penn Traffic*.  This Court does not agree.  If *Gearing* had been overruled the Court would have said so.   Further the Court expressly approved the statement by Justice Cook in *Buckeye, supra,* that "where substantial certainty exists, intent to harm will be inferred as a matter of law."  *Id.* at 1201-2 and 228.

This court's reading of  *Gearing, Buckeye* and *Penn Traffic* are in accord with the weight of Ohio authority since the decision in *Penn Traffic. Chavis v. AIG Technical Services, 2005 WL* 1177929 (Ohio App. 10 Dist), 2005-Ohio-2427; *Altvater v. Ohio Cas. Ins.*

*Co.,* 2003 WL 22077728 (Ohio App. 10 Dist).

### *Conclusion*

To recover against Intermet, Plaintiffs had to prove a substantial certainty tort. They presented a substantial enough case that after intense negotiation Intermet and its insurer settled. However, there is no coverage for this tort under the policy now before the court under the Ohio cases discussed above, because if there was a "substantial certainty" that decedent would be injured, there was no "occurrence."

**THEREFORE**, the Court being advised, it is **ORDERED** as follows:

1.    That the Defendant's cross motion for summary judgment (Doc. #135) be and is hereby **GRANTED**;

2.    That the Plaintiff's motion for declaratory judgment and motion for summary judgment (Doc. # 133) be and is hereby **DENIED**;

3.    That the complaint herein shall be dismissed;

4.    That a separate judgment will be entered concurrently herewith.

IT IS SO ORDERED this 27th day of October, 2005.



Signed By:

**_William O. Bertelsman_** *WOB*

**United States District Judge**