INFORMATION COPY
MANDATE NOT YET ISSUED
DIS. CT. # 00-00014  STD/WOB

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 05-4536

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
JAN - 9 2007
LEONARD GREEN, Clerk

| | |
|---|---|
| CARL G. SIMPSON, Co-Administrator of the Estate of Carl D. Simpson; BONNIE REED SIMPSON, Co-Administrator of the Estate of Carl D. Simpson, | ) ) ) ) ) |
| Plaintiffs-Appellants, | ) ) ) |
| v. | ) ) |
| INTERMET CORPORATION, et al., | ) |
| Defendants, | ) ) |
| and | ) ) |
| NATIONAL UNION FIRE INSURANCE CO., | ) ) |
| Defendant-Appellee. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

**OPINION**

**BEFORE:**   COOK and McKEAGUE, Circuit Judges; and WILHOIT, District Judge.*

**McKEAGUE, Circuit Judge.**   This is an appeal from the denial of declaratory relief regarding insurance coverage for an employee's work-related death allegedly caused by the employer's intentional tort. Essentially, the question presented is whether, under Ohio law, an umbrella policy of insurance which provides coverage for liability for an occurrence in excess of the

---

* The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

limits of the insured's primary employer's liability coverage, and which does not exclude coverage for injury arising in the course of employment, but does exclude coverage for injury resulting from an accident expected or intended from the standpoint of the insured employer, effectively excludes coverage for what is known under Ohio law as a "substantial certainty" intentional tort. The district court, ruling on cross-motions for summary judgment, answered this question in the affirmative. Appellants contend the district court misapplied the controlling Ohio law. For the reasons that follow, we affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not disputed. Carl D. Simpson had been employed by Intermet Corporation ("Intermet") at its Ironton Iron, Inc. plant in Ironton, Ohio since 1992. For more than four years, Simpson was an operator of a mold manufacturing machine called a Sutter machine. The Sutter machine injects a sand and resin mixture into a mold to later be filled with iron to create I-beams, an end-product used in automotive manufacturing. Numerous times each shift, the injection ports in the molds would become clogged, requiring the operator to enter into the pinch-points of the machine to remove the clog. During one of these removal procedures on September 21, 1999, Simpson became trapped between the machine's pinch-points and was crushed, dying within four hours after the accident.

Co-Administrators of Simpson's estate, his father Carl G. Simpson and wife Bonnie Reed Simpson, brought an action against Intermet in the Southern District of Ohio, alleging Simpson's death was the result of an intentional tort. Plaintiffs alleged, in relevant part, that the conditions in which Simpson had worked were the product of intentional acts by Intermet and resulted in a

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

substantial certainty that he and other similarly situated employees would be injured. Prior to trial, a settlement of this underlying action was reached between the estate and Intermet and Intermet's primary insurer, Liberty Mutual Insurance Company ("Liberty Mutual"). Pursuant to the settlement, the estate received benefits from Liberty Mutual up to the limits of the primary insurance coverage. The settlement also included Intermet's assignment to the estate of its right to proceed against the umbrella policy insurer, National Union Fire Insurance Company ("National Union"), which had refused to defend or participate in the litigation and in the settlement negotiations.

This appeal stems from the Co-Administrators' exercise of this right of assignment. In the same underlying action in the Southern District of Ohio, they sought a declaratory judgment to the effect that Intermet's liability for Simpson's death pursuant to the "substantial certainty" intentional tort claim came within the coverage afforded Intermet under National Union's commercial umbrella policy. There being no genuine issue of material fact, the district court ruled on cross-motions for summary judgment. The district court concluded that National Union was not obligated to indemnify Intermet under the terms of the policy. It concluded that Intermet's assumed liability for Simpson's death, in response to a substantial certainty intentional tort claim, was necessarily based on the theory that the accident was, from the standpoint of Intermet, either expected or intended. Because the umbrella policy provided coverage only for an "occurrence," which is by definition "neither expected nor intended from the standpoint of the insured," the court held National Union owed no duty to indemnify. The court granted National Union's motion for summary judgment and denied the estate's motion for declaratory judgment and summary judgment. This appeal followed.

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

## II. ANALYSIS

In this diversity action, calling for interpretation of an insurance policy, the law of Ohio provides the governing substantive law. Under Ohio law, an insurance policy is a contract and its construction is a matter of law. *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St. 3d 227, 229 (2003). The court looks first to the policy language, giving terms their plain and ordinary meaning. *Id.* If the language is clear and unambiguous, then it must be enforced as written and the court may not resort to construction of the language. *Karabin v. State Automobile Mut. Ins. Co.*, 10 Ohio St. 3d 163, 167 (1984). If the language allows for more than one reasonable interpretation, then it must be strictly construed against the insurer. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 211 (1988).

There is no ambiguity on the face of National Union's policy language. National Union's Commercial Umbrella Policy provides in pertinent part:

I. Coverage

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury. . . . that takes place during the Policy Period and is caused by an *Occurrence* happening anywhere in the world.

IV. Definitions

H. Occurrence means:

1. As respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage *neither expected nor intended* from the standpoint of the Insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence.

- 4 -

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

V. Exclusions

This insurance does not apply to:

O. Bodily Injury or Property Damage *expected or intended* from the standpoint of the Insured.

Commercial Umbrella Policy Form pp. 1-9, JA 382-90 (emphasis added). Pursuant to the definition of "occurrence," coverage does not extend to bodily injury caused by an accident – including an accident consisting of continuous or repeated exposure to conditions – if the injury was expected or intended from the standpoint of Intermet. Consistent with this definition, removing any doubt about the scope of coverage, the policy language also, in Exclusion O, expressly excludes coverage for bodily injury expected or intended from the standpoint of Intermet. The instant controversy stems not from the language itself, but from its significance under Ohio law.

After briefly surveying the evolution of Ohio law on insurance coverage of liability for intentional torts, the district court essentially agreed with plaintiffs that *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St. 3d 227 (2003), represents the most recent relevant ruling on the subject by the state's highest court. Although *Penn Traffic* was then and continues to be the case primarily relied on by plaintiffs, the district court reached a different conclusion than plaintiffs regarding its import.

In *Penn Traffic*, the Ohio Supreme Court considered an umbrella policy similar to National Union's. The trial court had determined that the policy's definition of occurrence – similar but not identical to that found in National Union's policy – did not afford coverage for liability stemming from a substantial certainty intentional tort. *Id.* at 234. The trial court therefore awarded summary judgment to the insurer, holding it had no duty to indemnify the insured employer for bodily injury

- 5 -

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

sustained by an employee. The intermediate appellate court set aside the summary judgment. It focused on the "plain language" of the policy and concluded that, depending on development of the factual record, coverage could be available.

The umbrella policy issued to Penn Traffic defined occurrence to mean, "with respect to bodily injury or property damage liability, an event, including the continuous and repeated exposure to substantially the same general harmful conditions neither expected nor intended from the standpoint of the insured." *Id.* The appellate court read this definition of occurrence as encompassing an event like the employee's injury-producing fall *unless* it was found to have been caused by continuous and repeated exposure to the same conditions that were expected or intended by the employer, Penn Traffic. *See Penn Traffic Co. v. AIU Ins. Co.*, 2001 WL 1085242 (Ohio App. 4 Dist.) (unpublished). In other words, the court held that only injuries resulting from *continuous and repeated exposure* to harmful conditions were excluded from coverage, and only if the harmful conditions were expected or intended. *Id.* at *14-15. The court expressly observed that if a comma had been inserted after "conditions" in the above definition, the meaning would have been changed "such that *any* event which was expected or intended by the insured would be excluded from the definition of 'occurrence' and, consequently, not covered by the policy." *Id.* at *14 n.4 (emphasis added). Because the record did not disclose whether the employee's injury had resulted from continuous or repeated exposure to harmful conditions neither expected nor intended, the case was remanded to the trial court for further factual development.

The supreme court affirmed the appellate court's ruling on the same reasoning. *Penn Traffic*, 99 Ohio St.3d at 234. Appellants insist this case presents materially identical policy language and

-6-

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

contend the district court's award of summary judgment should, therefore, consistent with *Penn Traffic*, be reversed.

Appellants' argument lacks merit because its premise is erroneous. The language in the National Union policy is *not* materially identical to that presented in *Penn Traffic*. Most importantly, the National Union policy's definition of occurrence includes the critical comma omitted from the definition considered in *Penn Traffic*. Hence, the National Union policy expressly covers bodily injury caused by an accident – *irrespective* of whether it resulted from continuous or repeated exposure to conditions – only if it was neither expected nor intended by Intermet. Stated otherwise, the National Union definition of occurrence expressly excludes *any* bodily injury that was expected or intended by Intermet. In this crucial respect, the language of the National Union definition of occurrence, although similar to that presented in *Penn Traffic*, is materially different. Moreover, consistent with this clear and unambiguous definition of occurrence, the National Union policy, in Exclusion O, also expressly excludes coverage for any bodily injury expected or intended by Intermet. There simply is no ambiguity regarding the scope of coverage.

Fairly applying the teaching of *Penn Traffic* to the National Union policy language compels quite a different conclusion than that urged by appellants. Nothing in *Penn Traffic* hints at judicial unwillingness to enforce the umbrella policy in accordance with its plain language. Summary judgment in favor of the insurer was vacated in *Penn Traffic* only because there remained, in light of the relevant policy language, genuine issues of material fact regarding causation of the employee's injury. Here, in contrast, the record is sufficiently established, in light of the relevant policy language, to enable judgment as a matter of law.

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

The liability assumed by Intermet pursuant to the settlement agreement necessarily stemmed from plaintiffs' substantial certainty intentional tort claim. On this point, there is no dispute between the parties. That is, the liability assumed by Intermet necessarily stemmed from conditions in the workplace under which Intermet's intent to harm is inferred as a matter of law. *See Penn Traffic*, 99 Ohio St. 3d at 228 (observing that where substantial certainty exists, intent to harm is inferred as a matter of law). Or, as explained by the Ohio Court of Appeals in *Penn Traffic*, with reference to the elements of a substantial certainty tort, Intermet's intent to harm is inferred, notwithstanding lack of evidence of direct intent or desire to cause harm, based on its actions, which it must have expected would cause harm. 2001 WL 1085242 at *15. It is this necessarily inferred expectation of harm that at once establishes Intermet's intentional tort liability and disqualifies it from coverage for the liability under the National Union policy.

In light of the clear policy language, and the undisputed basis for Intermet's underlying liability to the Simpson estate, there is no genuine issue of material fact that would forestall summary judgment in favor of National Union. The district court's succinct ruling, "if there was a 'substantial certainty" that decedent would be injured, there was no 'occurrence,'" must therefore be affirmed.

The correctness of this analysis is demonstrated by rulings made by the Ohio courts in the wake of *Penn Traffic*. Similar controversies were presented in *McGuffin v. Zaremba Contracting*, 166 Ohio App. 3d 142 (Ohio App. 8 Dist. 2006); *Cincinnati Ins. Co. v. Schwerha*, 2006 WL 1868321 (Ohio App. 7 Dist. 2006); *Chavis v. AIG Technical Servs., Inc.*, 2005 WL 1177929 (Ohio App. 10 Dist. 2005); and *Altvater v. Ohio Cas. Ins. Co.*, 2003 WL 22077728 (Ohio App. 10 Dist. 2003). The insurance policy at issue in *McGuffin* contained a definition of occurrence virtually

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

identical to the National Union policy definition, *i.e.*, not including coverage for bodily injury "expected or intended." The court held that even though the policy did not expressly exclude coverage for substantial certainty intentional torts, the definition of occurrence had the same effect. Following *Penn Traffic*, the *McGuffin* court held that "(1) where substantial certainty exists, intent to harm will be inferred as a matter of law, and (2) there is no coverage for substantial-certainty employer intentional torts where an insurance policy excludes coverage for bodily injury 'expected or intended' from the standpoint of the insured." *McGuffin*, 166 Ohio App. 3d at 146-47, quoting *Altvater*, 2005 WL 1177929 at *4. The rulings in *Schwerha*, *Chavis*, and *Altvater* also apply this construction of *Penn Traffic*, enforcing the same definition of occurrence at issue in this case.

Appellants cite *Talbert v. Continental Cas. Co.*, 157 Ohio App. 3d 469 (Ohio App. 2 Dist. 2004), as a post-*Penn Traffic* decision in which summary judgment for the insurer was set aside and liability for a substantial certainty intentional tort was held not to be necessarily excluded from coverage. *Talbert* is distinguishable. In *Talbert*, the subject policy contained a definition of occurrence that did not expressly exclude bodily injury that was intended or expected. In addition, the policy contained an exclusion only for bodily injury *intentionally* caused by the insured. Unlike the provisions at issue in *McGuffin*, *Schwerha*, *Chavis* and *Altvater*, liability for injury that was merely "expected," as in a substantial certainty tort, rather than directly intended, was not expressly excluded from coverage. Inasmuch as the subject tort liability appeared not to result from a "direct intent" tort such as battery, but from conduct and knowledge by the employer that may have given rise to a substantial certainty and necessary expectation of injury, the *Talbert* court held that coverage was not necessarily excluded. *Id.* at 479. In its construction and enforcement of the policy language

*No. 05-4536*
*Simpson v. Intermet Corp., et al.*

presented, *Talbert* is thus consistent with *Penn Traffic*, *McGuffin*, *Schwerha*, *Chavis* and *Altvater*. *Talbert* does not, therefore, undermine the correctness of the district court's ruling on the scope of coverage under the language of the National Union policy.

Appellants maintain that *Penn Traffic* is instructive in yet another way. They point to language in the primary insurance policy presented in *Penn Traffic* expressly excluding coverage for "injury to an employee arising out of and in the course of employment by the insured." 99 Ohio St. 3d at 230. Whereas this exclusion was deemed effective to exclude coverage by the primary insurer for Penn Traffic's liability for the substantial certainty tort, Liberty Mutual's primary employer's liability policy in this case included no such "course of employment" exclusion. In fact, Liberty Mutual expressly provided coverage for bodily injury sustained by an employee in the course of employment, while excluding coverage for "injury intentionally caused or aggravated by [Intermet]," but not excluding coverage for a substantial certainty intentional tort. Consequently, Liberty Mutual has, pursuant to the settlement agreement, paid the policy limits to the Simpson estate. Appellants contend that National Union's policy, as an "umbrella" policy, should be construed as providing coverage as broad as, if not broader than, the underlying insurance. They argue that because an umbrella policy "typically" provides broader coverage than the primary coverage, the National Union policy should be construed, notwithstanding its clear and unambiguous language, as providing coverage at least as broad as the Liberty Mutual policy, to include coverage for substantial certainty torts.

Even an umbrella policy must be enforced under Ohio law so as to give effect to its plain language. The National Union policy is a stand alone policy that contains its own definitions and

No. 05-4536
*Simpson v. Intermet Corp., et al.*

exclusions. As explained above, pursuant to these clear and unambiguous terms, coverage for liability for a substantial certainty intentional tort under the umbrella policy is clearly not as broad as that afforded under the Liberty Mutual policy. Appellants' argument based on the "typical" scope of umbrella policies is meritless.

### III. CONCLUSION

For the above reasons, we find no error in the district court's judgment. The National Union policy language is unambiguous and the district court's enforcement of the language as written is proper under Ohio law. Accordingly, the district court's award of summary judgment in favor of appellee National Union is **AFFIRMED**.

Mr. James Bonini, Clerk
Southern District of Ohio at Cincinnati
100 E. Fifth Street
Suite 103 Potter Stewart U.S. Courthouse
Cincinnati, OH  45202

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

MS. MICHELLE M. DAVIS
(513) 564-7025
(FAX) 564-7098
www.ca6.uscourts.gov

Filed: January 9, 2007

D. Scott Bowling
Lambert, McWhorter & Bowling
215 S. Fourth Street
P.O. Box 725
Ironton, OH 45638

Samuel M. Pipino
Wiles, Boyle, Burkholder & Brindardner
300 Spruce Street
Floor One
Columbus, OH 43215

RE: 05-4536
Simpson vs. Intermet Corporation
District Court No. 00-00014

Enclosed is a copy of an order which was entered today in the above-styled case.

Very truly yours,
Leonard Green, Clerk

(Ms.) Michelle M. Davis
Case Manager

Enclosure

cc:

Honorable William O. Bertelsman
Mr. James Bonini

Case 1:00-cv-00014-WOB   Document 145   Filed 01/10/2007   Page 14 of 14